

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

SUSAN CHEN and

NAIXIANG LIAN

Case No. 2:16-CV-01877-JLR

Plaintiffs,

v.

DETECTIVE NATALIE D'AMICO

SECOND AMENDED COMPLAINT

Defendant

Now comes Susan Chen and Naixiang Lian, Plaintiffs herein, pro se, and hereby files this action under 42 U.S. C. & 1983 to redress her civil and legal rights, and alleges as follows:

Page 1 of _____

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief for the violation for her rights secured by 42 USC & 1983, & 1988, the Fourth and Fourteenth Amendments to the United States Constitution.

2. The claims arise from a December 9, 2013 police report (#13-019402) in which Officer of the Redmond City Police Department ("RCPD"), acting under the color of state law, intentionally and willfully subjected plaintiff to, inter alia, false arrest and false imprisonment.

3. Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs, and such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 28 USC &1331, 42 USC&1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

5. The amount in controversy exceeds $7,000,000.00 excluding interest and costs.

6. Venue in laid within the United States District Court for the Western District Of Washington in that Defendant City Of Redmond is located within, and a substantial part of the events giving rise to the claim occurred within the boundaries of the Western District of Washington.

## PARTIES

7. Plaintiff Susan Chen is a legal resident of the United States and at all times here relevant resided in King County, State of Washington.

8. Plaintiff Naixiang Lian is a legal resident of the United States and at all times here relevant resided in King County, State of Washington.

9. Detective Natalie. D'Amico was, at all times here relevant, a police officer of the RCPD, and as such was acting in the capacity of an agent, servant and employee of the City of Redmond. On information and belief, at all times relevant hereto, Officer N. D'Amico was plaintiff's assigned officer.

10. At all times Officer D'Amico was acting under color of state law, to wit, under color of the statues, ordinances, regulations, policies, customs and usages of the City of Redmond and State of Washington.

## FACTUAL ALLEGATIONS

11. Plaintiffs Susan Chen and Naixiang Lian are Chinese citizen, legally residing in the United States.

12. Plaintiffs' primary language is Chinese. They have some ability to communicate in English.

13. On the afternoon of Oct 23, 2013, Plaintiff Susan Chen brought her son, JL to have a follow up appointment with Dr. Kate Halamay at Pediatric Associates. Ms. Chen and Dr. Halamay had friction and Ms. Chen intended to complain the doctor but was treated with

Page 3 of _____

a CPS referral based on twisted facts in which the child was described as having "kidney failure" and "life threatening". (NOTE, on Aug 30, 2013, the child saw Dr. Halamay for the same situation, i.e. elevated creatinine. Repeated labs indicated that the elevated creatinine is due to the dehydration caused by diarrhea, but not any kidney disease). Additionally, the child was just discharged from ER of Seattle Children's Hospital as "medical stable, discharged home".

14. On the morning of Oct 23, 2013, Plaintiff Susan Chen brought her son, JL saw his regular doctor, Dr. Gbedawo who reached the same conclusion as the ER doctor from Seattle Children's Hospital that the child is medically stable, only needs to follow up in 10 days.

15. On the night of Oct 24, 2013, a CPS social work named Brian Davis was assigned to remove the child who described the child's situation as "sleep peacefully and soundly" based on his observation.

16. Plaintiffs' son, JL was removed to Seattle Children's Hospital based on Dr. Halamay's diagnosis as "kidney failure". One hours later, the repeated tests for creatinine (kidney function) indicated that the creatinine was 0.5, a normal number for kidney function, consistent with the ER doctor and Dr. Gbedawo's conclusion.

17. On Oct 24, 2013, Officer N. D'Amico was assigned to investigate a possible child abuse case for JL (the son of plaintiffs).

18. On Oct 24, 2013, according to police investigation report, Officer N. D'Amico went to Plaintiffs' home to check LL (plaintiffs' older son)) who explicitly said No to the officer's questions about any possible abuse from parents. LL also made it clearly to the officer that the parents that his parents did not hurt him and his brother. He responded "NOT hungry" to Detective D'Amico's question if he is getting enough to eat.

19. On the evening of Oct 24, 2013, Detective N. D'Amico met with Plaintiffs Susan Chen and Naixiang Lian at home. According to the investigation report, "It was apparent Susan spoke English as a second language and we had some trouble communicating". No interpreter was provided for the whole conversation. Plaintiff Naixiang Lian admitted that he prepares three meals a day for the family, but NOT Plaintiff Susan Chen. Plaintiff

Naixiang Lian admitted that he is responsible for feeding children twice a day (breakfast and dinner), NOT Plaintiff Susan Chen.

20. On Oct 25, 2013, Officer N. D'Amico assisted Child Protective Service to remove plaintiffs' older son, LL into state custody. No interpreter was provided.

21. From Oct 28 to Oct 30, 72 hours' hearing was held regarding the dependency case. JL's two main treating physicians, Dr. John Green and Dr. Hal Gbedawo, and also autism specialist, parent of autism family, Dr. Angela Hugebeck testified in support of the family. Dr. Green indicated that he was collaborating care with JL's local doctor, Dr. Gbedawo, and they know each other. Occupational therapist, Ms. Brooke provide a progress report to the court. Greiner, Ms. Greiner also is aware that the family sees the autism specialist besides some filling clinics/urgent care. Ms. Greiner previously wrote letter directly to Dr. Green. Ms. Greiner is aware that the family is seeing the speech therapist and as well as the ABA therapist.

22. On 72 hours' hearing, the judge was "outrageous" that the CPS doctors never tried to review the child's medical records, never tried to the talk with the child's main treating physician, and never tried to talk with parents. The judge ordered the CPS doctor (Dr. Migita) to talk with Dr. Green.

23. The judge concluded that he did not see parents pose any harms for the children, and "felt satisfied with LL back home" but placed JL out of home for 30 days only as "experimental purpose".

24. According the CPS discovery, on Nov 5, 2013, SCAN case conference was held, participants including 2 CPS supervisors, 2 CPS SW, Children's SW, Children's protection team, Natalie D'Amico, detective from Redmond PD. Records wrote that _"Naturopaths (referred to Dr. Gbedawo) working with the family recommended different diets for the parents for JL to follow."_

25. According to CPS discovery, on Nov 7, 2013, CPS social worker provided a list of witnesses to Officer N. D'Amico including names of occupational therapist Ms. Brooke Greiner, Dr. John Green (who is a MD but was mistakenly identified as "ND"), Dr. Gbedawo.

Page 5 of _____

26. According to CPS discovery, on Nov 12, 2013, CPS decided that ". **Both parents** are getting a FOUNDED finding for neglect."

27. On Nov 14, 2013, Occupational therapist Ms. Brooke Greiner received requests for information from Redmond Police. Ms. Greiner sent over the documents by certified mail to the police department.

28. On Nov 20, 2013, Dr. John Green's office sent over a package of medical records to Redmond City Police Department as requested, in which it was clearly stated that it was Dr. Green who prescribed the special diet for JL due to his digestive distress. Dr. Green told the detective through phone that he does not think parents ever abuse and neglect JL, but on the contrary, they are good parents, acting on the children's best interests. Dr. Gbedawo's office also sent medical records to the police department on Nov 18, 2013 per request. In Dr. Gbedawo's notes, it was clearly stated that it was Dr. Gbedawo who had prescribed diet treatment for JL.

29. Starting from Nov, 2013, CPS offered to return JL back home with conditions for parents, first orally later in writing. The attorney who handled CPS dependency case described the CPS conditions in that the case will be dismissed in six months if parents accepted these conditions. Plaintiff Naixiang Lian asked Plaintiff Susan Chen to explicitly say to these conditions and confronted with CPS caseworker directly.

30. On Dec. 9, 2013, Officer N. D'Amico signed a probable cause certification for the arrest of Plaintiff Ms. Chen with a police report and later filed a police report with the King County Prosecuting Attorney's Office in support of felony charges, both of which contained falsehoods and materials omissions about Plaintiff Ms. Chen's treatment of her children. Officer D'Amico selectively included information from Dr. Halamay and a resident from Seattle children's Hospital while the information in plaintiffs' favor from the child's main treating physicians Dr. Green, Dr. Gbedawo, Ms. Gbedawo were not included. The names of these witnesses were not even mentioned.

31. On Dec 9, 2013 police report, Officer N. D'Amico wrote that "Chen restricted JL from eating many things such as carbohydrates although she was never told JL could not have carbohydrates by any doctor". Based on medical records, removing carb from JL's diet is

the instruction from Dr. Green and Dr. Gbedawo. Based on evidence, JL's father (NOT JL's mother Susan Chen) is the main caregiver for JL for providing foods to two children. Based on evidence from CPS discovery, Officer D'Amico was fully aware that Dr. Gbedawo prescribed diet treatment (removing carb) for JL as early as Nov 5, 2013.

32. On Dec. 9, 2013 police report, Officer N. D'Amico wrote "All other causes of JL's condition aside from malnutrition had been ruled out". However, based on the medical records from Seattle Children's Hospital, Dr. Green, Dr. Gbedawo, Pediatric Associates, the child has failure to gain weight due to at least two years' history of digestive distress and the family had been seeking medical cares.

33. On Dec 9, 2013 police report, Officer D'Amico wrote that "she (plaintiff Susan Chen) refused to share information amongst these providers. It is a common knowledge that a referral is needed to see specialist so the referring doctors and specialist know each other. Secondly, Dr. Green stated explicitly that he is collaborating care for J with Dr. Gbedawo, occupational therapist Ms. Greiner knows Dr. Green, ABA therapist, speech therapist.

34. Officer D'Amico claimed in her report that "There is a probable cause to believe Susan withheld basic necessities of life to include nutrition as J was diagnosed as grossly malnourished and dehydrated upon arrival at Seattle Children's Hospital". According to police investigation report, Officer D'Amico was fully aware that Plaintiff Naixiang Lian is the primary care giver for providing foods to the children.

35. Defendant D'Amico's police report was written on Dec. 9, 2013 while witnesses Dr. Green, Dr. Gbedawo, Ms. Greiner were contacted well before this date. Officer D'Amico collected extensive medical records regarding treatment for JL but the information for all these witnesses supporting plaintiffs were withheld from the court.

36. On Jan 31, 2014, an arrest warrant was issue for Susan Chen (case No. 14-2-00377-0 SEA). Plaintiff Susan Chen was charged with Criminal Mistreatment In The Second Degree". Plaintiff Naixiang Lian was NOT charged for any crimes.

37. On Feb 18, 2014, plaintiff Susan Chen was arrested, handcuffed, fingerprinted, and pictured in Seattle, Washington. Plaintiff was released later due to a conflicting court

Page 7 of _____

order from dependency court, with conditions of turning in passport and only staying in King county. Plaintiff Susan Chen's brother became very sick and shortly passed away in China but plaintiff was not allowed to leave the country to stay with him for last minute of his life and count not even attend his funeral. Plaintiff Susan Chen suffers from extreme mental anguish and stress.

38. The negligent investigation by Officer D'Amico led to adverse and prolonged placement to the disabled child, JL, a decision left in place through September 12, 2014 when the court dismissed the dependency action related to JL.

39. Due to the pending criminal charges, the dependency case had to be continued and delayed Plaintiff's son JL return home. JL was moved among more than eight times in foster homes, once stayed in a place in Bellingham for only 4 hours in the midnight. JL was mistreated in foster home, denied therapy treatment, withheld prescribed medications and experienced significant regression documented by treatment team.

40. Plaintiff Susan Chen's criminal defense attorney, Ms. Twyla Carter noticed that tons of information in Plaintiff's favor was omitted for this case. Ms. Carter thus submitted a complete file of information from the medical providers who have been working with Plaintiffs' family for a long time to the prosecutor's office to review. Plaintiff Susan Chen's dependency defense attorney, Ms. Lorraine Roberts sent over one copy of the file from Ms. Carter to Assistant Attorney General's office who responded quickly for considering a dismissal of the case.

41. On Sep 19, 2014, the criminal charges against Plaintiff Susan Chen was dismissed. The dismissal order wrote that "the state is unable to sustain its burden of proof in this case due to evidence discovered **after** the time filing". The dependency case was dismissed at almost the same time.

42. Ms. Chen was charged with criminal mistreatment, II degree based on materials provided by Defendant Officer D'Amico. The arrest warrant was issue based on Defendant D'Amico's report with selective data submitted to the prosecutor's office. Ms. Chen was arrested without probable cause.

43. As a result of the criminal charges and false arrest alleged herein, and due directly to the actions taken by the Defendant D'Amico, Ms. Chen suffered and continues to suffer physical pain, emotional trauma, discomfort, humiliation, fear, anxiety and embarrassment, among other things. Plaintiff Susan Chen was found to suffer continuous headache resulting from **cardiovascular disease (with no family history)**, a disease typically for people over 70 years old.

## DAMAGES

44. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

    a. Violation of Plaintiff Susan Chen's rights pursuant to the Fourth and Fourteen Amendments to the united States Constitution to be free from an unreasonable search and seizure of their person;

    b. Violation of their due process rights under Brady v. Maryland, 373 U. S. 83 (1963) that requires the disclosure of "evidence favorable to an accused upon request… where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). In Youngblood v. West Virginia, 547 U.S. 867, 870 (2006), the Supreme Court stated that Brady is violated when the government fails to turn over evidence that is "known only to police investigators and not to the prosecutor."

    c. Violations of their due process rights to interpreter. Under Title VI of the federal Civil Rights Act of 1964, discrimination on the basis of race, color or national origin is prohibited. Non-English speakers also has constitutional protections to interpreters, as the U.S. Supreme Court first held in Meyer v. Nebraska (1923).

    d. Violations of their "Miranda rights" because the law requires that the suspect must be given the opportunity to exercise these rights throughout the interrogation, not just upon arrest (Miranda v. Arizona, 1966, p. 479).

e.  Physical pain and suffering; Plaintiff Susan Chen suffered from continuous headache from cardiovascular disease from extreme stress, typically for people over 70 years old.

f.  Emotional trauma and suffering, including discomfort, humiliation, fear, anxiety, frustration, emotional distress, mental anguish.

g.  Plaintiff Susan Chen suffered from continuous headache from cardiovascular disease from extreme stress, typically for people over 70 years old.

h.  Loss of liberty for Plaintiff Susan Chen

i.  Deprived of parental rights to their children under 42 U. S. C & 1983.

j.  Adverse placement decision to Plaintiffs' child out of home for ten months and caused a 3-year old disabled child who encountered lasting damages in foster homes.

## FIRST CLAIM: FALSE ARREST

**DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 USC &1983**

46. The preceding paragraphs are here incorporated by reference.

47. Defendants have deprived plaintiff Susan Chen of her civil, constitutional and statutory rights under color of law and have conspired to deprive her of such rights and are liable to plaintiff under 42 USC & 1983.

48. Defendants' conduct deprived plaintiff Susan Chen of her rights to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendant's conduct also deprived plaintiffs of her right to due process of law, pursuant to the Fourteenth Amendment of the United States constitution.

49. Defendant's police report directly led to the false arrest of the plaintiff Susan Chen and had failed to submit a complete profile of the story to the court by withholding tons of the witnesses and evidence in favor of plaintiff. All these information withheld had been received well prior to the date of police report.

50. Plaintiff Susan Chen has been damaged as a result of defendant D'Amico's wrongful act.

## SECOND CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

51. Plaintiffs re-allege and incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

52. Defendant D'AMICO's conduct, in withholding information evidence favorable to plaintiff Susan Chen, without provocation or justification, was extreme, outrageous, and utterly intolerant in a civilized community; conduct which exceed all reasonable bounds of decency.

53. Defendant D'AMICO's conduct, described above, was intended to and did cause emotional distress to Plaintiffs Susan Chen and Naixiang Lian.

54. The conduct of Defendant D'AMICO was the direct and proximate cause of injury and damage to Plaintiffs Susan Chen and Naixiang Lian and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of Washington.

55. As a result of the foregoing, Plaintiff Susan Chen was deprived of her liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

## THIRD CLAIM: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

56. Plaintiffs re-allege and incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

57. Defendant D'AMICO's conduct, in withholding evidence favorable to Plaintiff Susan Chen, was careless and negligent as to the emotional health of Plaintiff Susan Chen, and caused severe emotional distress to Plaintiffs Susan Chen and Naixiang Lian.

58. The acts and conduct of Defendant D'AMICO was the direct and proximate cause of injury and damage to Plaintiff Susan Chen and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of Washington.

59. As a result of the foregoing, Plaintiff Susan Chen was deprived of her liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

### FOURTH CLAIM: NEGLGENCE

60. Plaintiffs re-allege and incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

61. Defendant D'AMICO, while acting as agent and employee for Defendant CITY OF REDMOND, in her capacity as a detective for the CITY OF REDMOND, owed a duty to Plaintiff to perform her police duties without withholding evidence favorable to Plaintiff Susan Chen. Defendant D'AMICO's withholding evidence caused Plaintiff Susan Chen to be charged with criminal mistreatment, II degree, when Plaintiff Chen did not commit this crime.

62. Defendant D'AMICO's misconduct of withholding evidence when Defendant D"AMICO had no lawful authority to cause Plaintiff Susan Chen's false arrest and imprisonment constitute negligence for which Defendant D'AMICO is individually liable.

63. As a proximate result of Defendant D'AMICO's negligence for withholding evidence in favor of Plaintiff Susan Chen, Plaintiff Chen sustained physical and emotional pain and suffering, and was otherwise damaged and injured.

64. Plaintiff Chen and Lian suffered and continue to suffer emotional distress and other damages as a result of Detective Officer D'Amico's negligence that continued through September 12, 2014 when the court dismissed the dependency action related to JL, and criminal charges were dismissed against Ms. Chen on September 19, 2014.

**WHEREFORE**, Plaintiffs demand the following relief jointly and severally against all of the defendants:

a. Compensatory damages in the amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. The conventing and empaneling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this Court may deem just and proper.


Respectfully submitted,

Susan Chen  *Susan Chen*

Naixiang Lian  *[signature]*


Dated this 18th day of January, 2017

Redmond, Washington