IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUSAN CHEN, an individual; NAIXIANG LIAN, an individual; J.L., a minor child; and L.L., a minor child;<br><br>                 Plaintiffs,<br><br>    vs.<br><br>NATALIE D'AMICO, in her individual capacity and official capacity as Redmond Police Department ("RPD") officer; CITY OF REDMOND, a municipality of State of Washington; REDMOND POLICE DEPARTMENT, an instrumentality of City of Redmond; RON GIBSON, in his individual capacity and official capacity as former chief of RPD; KRISTI WILSON, in her individual capacity, previous official capacity as assistant chief of RPD; JOHN DOES A-D, in his individual capacity and official capacity as unknown supervisor of Natalie D'Amico in RPD; Washington State Department of Social and Health Services ("DSHS"); KEVIN W. QUIGLEY, in his individual capacity and in his official capacity as former Washington State Secretary of DSHS; BILL MOSS, in his individual capacity and in his official capacity as Washington State Acting Secretary of DSHS; KIMBERLY R. DANNER, in her individual capacity and official capacity as DSHS social worker; JILL KEGEL, in her individual capacity and official capacity as DSHS social worker; | CIVIL ACTION NO. 16-cv-01877-JLR<br><br><br>**AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND NEGLIGENT INVESTIGATION**<br><br>**JURY TRIAL DEMANDED** |

AMENDED COMPLAINT - 1
16-cv-01877-JLR

TOM SOULE, in his individual capacity and official capacity as DSHS social worker; TIMOTHY EARWOOD, in his individual capacity and official capacity as DSHS social worker; JOHN DOES E through H, in their individuals capacities and official capacities as supervisors of DSHS social workers,

Defendants.

COMES NOW Plaintiffs Susan (Shiying) Chen ("Ms. Chen"), Naixiang Lian ("Mr. Lian"), and Plaintiffs J.L., and L.L., through their parents Ms. Chen and Mr. Lian, for their complaint against the above-listed Defendants, and state as follows.

## I.      INTRODUCTION

1.      This is a civil action under 42 U.S.C. § 1983 to seek redress against Defendants for their acts under color of law in violation of Plaintiffs' rights guaranteed under the U.S. Constitution and laws.  These claims arise from Defendants' unlawful removal of J.L. and L.L. from their home, and Defendants' unlawful arrest and prosecution of Ms. Chen.

2.      Plaintiffs also assert claims under the laws of Washington State relating to the aforementioned course of conduct by Defendants.

## II.      PARTIES

3.      Plaintiff Susan (Shiying) Chen is a resident of King County, Washington.  She is a native Chinese speaker with limited English skills.

4.      Plaintiff Naixiang Lian is a resident of King County, Washington.  He is a native Chinese speaker with limited English skills.

5.      Plaintiff L.L., born in 2008, is a minor child of Ms. Chen and Mr. Lian.

6.      Plaintiff J.L., born in 2010, is a minor child of Ms. Chen and Mr. Lian.

7.      Defendant City of Redmond ("Redmond") is a municipality in King County, Washington that is incorporated under the laws of the State of Washington.

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

8.    Defendant Redmond Police Department ("RPD") is a governmental instrumentality of Redmond.

9.    Defendant Natalie D'Amico ("D'Amico") is a police detective who is employed by RPD in its Investigation Division, and who has been subject to the supervision and direction of Redmond and RPD at all relevant times.

10.    Defendant Ron Gibson ("Gibson") was formerly the Police Chief of Redmond who supervised all activities of RPD, and formulated and implemented Redmond's policing policies and training at all relevant times.

11.    Defendant Kristi Wilson ("Wilson") was formerly the Assistant Police Chief of Redmond who supervised RPD's Investigations Division, and formulated and implemented Redmond's policing policies and training at all relevant times.  On information and belief, she is the current Police Chief of RPD who supervises all activities of RPD and formulates and implements Redmond's policing policies and training.

12.    Defendant John Does A through D are unknown employees of RPD who were, upon information and belief, responsible for supervising and training D'Amico at all relevant times.

13.    Defendant Washington State Department of Social and Health Services ("DSHS") is a governmental instrumentality of the State of Washington.

14.    Defendant Kevin W. Quigley ("Quigley") was formerly the Washington State Secretary of DSHS, who supervised and directed all activities and formulated and implemented all policies of DSHS at all relevant times.

15.    Defendant Bill Moss ("Moss") is the current Washington State Acting Secretary of DSHS who supervises and directs all activities and formulates and implements all policies of DSHS.

16.    Defendant Kimberly Danner ("Danner") is a social worker who is and was at all relevant times employed and supervised by DSHS in its Child Protective Services unit ("CPS").

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

17.     Defendant Jill Kegel ("Kegel") is a CPS social worker who is and was at all relevant times employed and supervised by DSHS in its CPS unit.

18.     Defendant Tom Soule ("Soule") is a CPS social worker who is and was at all relevant times employed and supervised by DSHS in its CPS unit.

19.     Defendant Timothy Earwood ("Earwood") is a CPS social worker who is and was at all relevant times employed and supervised by DSHS in its CPS unit.

20.     Defendants John Does E through H are unknown DSHS employees who, upon information and belief, supervised and directed the actions of Danner, Kegel, Soule and Earwood at all relevant times.

## III.     JURISDICTION AND VENUE

21.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  Plaintiffs' claims under 42 U.S.C. § 1983 raise federal questions.  Plaintiffs' state law claims are part of the same "case [and] controversy" as their federal claims.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because at least one Defendant is a resident of this judicial district and all the Defendants are residents of this state.  Alternatively, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events at issue occurred in this judicial district.

## IV.     FACTS

23.     Attached hereto as **Attachments A through C** are the Complaints previously filed in the two consolidated actions before this Court, and a Complaint filed in the Superior Court of the State of Washington for King County.  Plaintiffs re-allege each of the allegations stated therein, which allegations are fully incorporated into this Amended Complaint.

**J.L.'s Medical History Prior to October 2013.**

24.     In mid-2012, Ms. Chen and Mr. Lian discovered that J.L. exhibited abnormal traits for a child of his age, including but not limited to gastrointestinal ("GI") problems and delayed development.  From 2012 through late 2013, Ms. Chen and Mr. Lian took J.L. to numerous medical specialists in an effort to assess, treat, and improve J.L.'s condition.  Because

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Ms. Chen could not drive, she often relied on public transportation to take J.L. to these medical visits, which took significant time.

25.     On August 15, 2012, August 29, 2012, and September 6, 2012, J.L. underwent testing for Autism Spectrum Disorder at the Lakeside Autism Center.  At the end of September 2012, Beau Reilly, Ph. D. of the Lakeside Autism Center, diagnosed J.L. with Autism Spectrum Disorder.

26.     Gastrointestinal (GI) disorders are among the most common medical conditions associated with autism.  These issues range from chronic constipation or diarrhea to irritable and inflammatory bowel conditions.  The Centers for Disease Control and Prevention (CDC) has found that children with autism are more than 3.5 times more likely to suffer chronic diarrhea or constipation than are their normally developing peers.  Other researchers have likewise found a strong link between GI symptoms and autism severity in children.

27.     From September 2012 through October 2013, out of concern for J.L.'s delayed development and recurrent GI problems, Ms. Chen repeatedly took J.L. to various clinics at Seattle Children's Hospital ("SCH") in Seattle, Washington for evaluation and treatment regarding J.L.'s feeding problems and GI problems, including constipation and diarrhea.  SCH maintained records of J.L.'s visits, including J.L.'s weight, physical condition, and observed medical problems.

28.     In October 2012, Ms. Chen and Mr. Lian began taking J.L. to see John Green, M.D., an autism specialist, in Portland, Oregon.  They traveled there by bus for several visits over the next several months.  Dr. Green prescribed a dietary regime for J.L. to treat his GI problems, including limiting J.L.'s intake of certain carbohydrates.

29.     Sometime in 2013, Ms. Chen learned about Hatha Gbedawo, a naturopathic doctor, in Seattle because of her good reputation among Seattle-area parents with autistic children, and began taking J.L. to see Dr. Gbedawo on a regular basis.  Dr. Green recommends his out-of-state patients also coordinate care with local doctors, and Dr. Gbedawo has worked

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

with Dr. Green with other patients. Ms. Chen and Mr. Lian also continued to remain in contact with Dr. Green by telephone, Skype, and email from April 2013 through the latter half of 2013.

30. Throughout late 2012 and 2013, Ms. Chen and Mr. Lian continued to regularly consult with medical professionals and to comply with their instructions and recommendations for the appropriate care and treatment of J.L. in light of his autism, GI problems, and other issues. They also regularly had his blood checked to monitor his health.

31. At the end of August 2013, Dr. Green contacted Ms. Chen and Mr. Lian regarding J.L.'s latest blood test results. Dr. Green noted elevated creatinine levels, which could indicate kidney problems, and recommended that Ms. Chen and Mr. Lian take J.L. for testing.

32. Accordingly, on August 31, 2013, Ms. Chen took J.L. to Pediatric Associates. Kate Halamay, M.D. was the attending physician. Dr. Halamay conducted new blood work and recommended that J.L. follow up with the Nephrology Clinic at SCH in Seattle because of J.L.'s elevated creatinine levels.

33. Accordingly, on September 5, 2013, Ms. Chen took J.L. to the Nephrology Clinic at SCH in Seattle. J.L.'s weight was recorded as 12.8 kg (28.2 pounds). The attending physician noted that J.L.'s creatinine levels from testing on August 31, 2013 had declined from the August 24, 2013 results, and believed that the previously elevated creatinine may have been due to streptococcus. The treating physician noted the "fact that his creatinine is improving is reassuring as is the fact that his renal ultrasound is normal."

**J.L.'s Medical Issues in October 2013.**

34. On or around October 19, 2013, J.L. was suffering a bout of significant diarrhea and other GI issues, and appeared sick to his parents. Dr. Gbedawo had previously instructed Ms. Chen and Mr. Lian that, if J.L. displayed unusual signs such as these, they should take him for blood tests right away, and had provided a lab order for blood work if needed for such a scenario. Since it was a weekend day, and Dr. Gbedawo did not work on the weekends, Ms. Chen and Mr. Lian took J.L. to Mercer Island Pediatrics on October 19, 2013, for the blood work so they could obtain results more quickly. Ms. Chen and Mr. Lian were particularly concerned

AMENDED COMPLAINT - 6
16-cv-01877-JLR

DORSEY & WHITNEY LLP
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

about J.L.'s kidney function given their recent experience with him having elevated creatine levels. The treating physician did not perform the requested blood test, and so Ms. Chen and Mr. Lian took J.L. to find another pediatrician who would perform the blood test, because of Ms. Chen and Mr. Lian's concern for J.L.'s health. Ms. Chen and Mr. Lian did not understand why the doctor would not conduct the tests they requested to assess J.L's condition.

35. Ms. Chen and Mr. Lian then took J.L. to Pediatric Associates that same day. The attending physician, Roberta Winch, M.D., noted that "they would like other labs done that are rec by another MD per mom." However, Pediatric Associates did not perform the tests. Again, Ms. Chen and Mr. Lian did not understand why the doctor would not conduct the tests they requested to assess J.L's condition. Dr. Winch noted that English was Ms. Chen's second language.

36. That same day, Ms. Chen and Mr. Lian then took J.L. to the SCH "Urgent Care Clinic" in Bellevue, Washington in order to have the blood test performed, because of Ms. Chen and Mr. Lian's concern for J.L.'s health. This was the third medical office they had visited that day, all in an effort to have someone thoroughly examine J.L's condition and conduct blood work because they knew he was sick. The laboratory technician at the Urgent Care Clinic agreed to take J.L.'s blood work. Ms. Chen and Mr. Lian asked the laboratory technician to notify them right away if J.L.'s blood work results looked serious. Nobody contacted them further that night.

37. According to Pediatric Associates' notes, on the morning of October 20, 2013, a nurse spoke with Ms. Chen by telephone to discuss the fact that J.L. did not report to the "ER" on October 19, 2013. The nurse noted "it was hard to communicate with mom" due to the language barrier. The nurse noted, "[n]ot sure if mom understood everything." The nurse was not aware that Ms. Chen and Mr. Lian had taken J.L. to the SCH Urgent Care Clinic the previous night.

38. In the afternoon of October 20, 2013, out of concern for J.L.'s condition and lack of any updates regarding the blood test results, Ms. Chen took J.L. back to the Urgent Care Clinic at SCH in Bellevue to retrieve his blood test results from the previous day. Ms. Chen

DORSEY & WHITNEY LLP
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

immediately noticed that J.L.'s creatinine level appeared dangerously high and she was furious with the medical staff at the Clinic, whom she believed to have been negligent in not calling her back the previous night in light of his results, as she had requested. The clinic recommended that J.L. be taken to the "ER."

39.     Mr. Lian and Ms. Chen then took J.L. to the emergency room at SCH in Seattle. After they arrived, the SCH staff kept J.L. under observation for several hours and discharged J.L. later that evening. The medical staff noted, "[h]e does not have hypertensive emergency at this time and does not meet the eminent risk criteria for medical hold." Accordingly, the SCH staff discharged J.L. with proposed follow-up with Dr. Halamay within one to three days (apparently ignoring the fact that Dr. Gbedawo was J.L.'s primary care doctor, not Dr. Halamay), and further follow-up with SCH Nephrology Clinic within one to two weeks.

40.     Ms. Chen and Mr. Lian were thoroughly relieved to be told that J.L's condition was not emergent and agreed to follow up as recommended.

41.     Per the instructions from the SCH Seattle staff, on October 23, 2013, Ms. Chen took J.L. to see Dr. Halamay at Pediatric Associates. During the visit, Ms. Chen felt that Dr. Halamay was needlessly rough with J.L. and rude in her approach and demeanor. Dr. Halamay apparently took the position that Ms. Chen should take J.L. to the SCH emergency department for admission. To formulate that assessment, Dr. Halamay consulted a physician at Mercer Island Pediatrics, who inaccurately believed that Ms. Chen and Mr. Lian did not take J.L. to the emergency room after their visit on October 19, 2013 – when in fact they did take him to SCH Urgent Care Clinic that day and then the emergency room the next day, as soon as they learned of his test results (only for J.L. to be discharged because SCH found his condition to be non-emergent).

42.     After Ms. Chen expressed her dissatisfaction with Dr. Halamay's treatment of her and J.L., and left with the receptionist a complaint about poor service addressed to Dr. Halamay's superiors, Dr. Halamay referred Plaintiffs' matter to CPS.

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

**J.L.'s Removal from Home.**

43.     On the night of October 23, 2013, Brian Davis ("Davis"), a CPS social worker, arrived at Ms. Chen and Mr. Lian's residence in Redmond, Washington in order to remove J.L. based on Dr. Halamay's referral.  Davis observed that both children were sleeping soundly and the home environment appeared normal.  Based on his observations, Davis equivocated on the need to remove J.L. and take him to the emergency room, but his DSHS supervisor, "AE," insisted that a visit to the hospital was necessary, based on information received from Dr. Halamay.  Davis persuaded the parents to allow Davis to transport Ms. Chen and J.L. to SCH in Seattle.

44.     Sometime after midnight on October 24, 2013, the staff at SCH, including members of the SCAN team, determined that J.L. was malnourished, and should be placed on medical hold.  SCH called Seattle Police to place J.L. in protective custody.  Ms. Chen became irate but calmed down after being threatened with removal by police.

**RPD's Warrantless Search of Ms. Chen and Mr. Lian's Residence.**

45.     On October 24, 2013, at approximately 5:00 a.m., two male uniformed RPD officers appeared at Ms. Chen and Mr. Lian's residence without an interpreter or warrant and knocked on the door.  Ms. Chen was not home at the time, as she was still at the hospital with J.L.  Mr. Lian opened the door.  The two RPD officers walked into the apartment.  The officers asked Mr. Lian to point to L.L.'s location.  The officers roused L.L. from sleep and asked whether L.L. was hungry and whether he had food.  L.L. answered that he was not hungry and he had food.  As they left, the RPD officers told Mr. Lian that he was going to be in serious trouble without explaining the reason.

46.     On October 24, 2013, at approximately 9:00 a.m., a male RPD officer and Defendant D'Amico appeared at Ms. Chen and Mr. Lian's residence and knocked on the door. The two RPD officers were not in uniform, and they did not have an interpreter or warrant with them.  They entered the apartment and examined the interior of the apartment.  The officers asked Mr. Lian how he and Ms. Chen fed J.L.  The officers searched the interior of the

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

refrigerator. Mr. Lian indicated to the officers that he had made breakfast for J.L., which was still sitting in the pot because J.L. had not returned home to eat it. Mr. Lian told Defendant D'Amico that he usually prepared breakfast for J.L. before he went to the office; that he prepared dinner for J.L. when he returned from work; and that he prepared meals for J.L. during weekends.

47.     After D'Amico and the RPD officer left, Defendant Danner arrived to inform Ms. Chen and Mr. Lian that she had arranged for L.L. to see Dr. Quinn at Mercer Island Pediatrics.

**L.L.'s Removal from Home.**

48.     On October 25, 2013, Ms. Chen and Mr. Lian went to the CPS office pursuant to instructions for a planned meeting. CPS presented Ms. Chen and Mr. Lian with a plan for J.L.'s care. Ms. Chen and Mr. Lian informed CPS about Dr. Green's dietary advice at that meeting in the presence of an interpreter. Defendant D'Amico was present at that meeting.

49.     Later that day, two uniformed RPD officers and Defendant Danner arrived at Ms. Chen and Mr. Lian's residence. The RPD officers removed L.L. from the home.

**72 Hour Shelter Care Hearing.**

50.     On October 25, 2013, Defendant Danner signed two Dependency Petitions to initiate dependency proceedings with respect to J.L. and L.L.

51.     The Dependency Petition with respect to J.L. alleged that J.L. had been "abused or neglected," and that he had "no parent … capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." These allegations were unfounded.

52.     In the petition with respect to J.L., Danner alleged that "this child's brother, 3-year old [J.], was admitted to Children's Hospital, with immediate medical concerns," which indicated a confusion of the two children. Danner alleged that "the child is suffering from Gross Malnutrition, and developmental delays caused by malnutrition," without accounting for J.L.'s prior autism diagnosis or history of associated and comorbid GI problems. Danner alleged, "[u]pon arriving at the home and seeing the condition of the child, social worker directed the

AMENDED COMPLAINT - 10
16-cv-01877-JLR

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

parents to take the child to the hospital," without disclosing the normal conditions in which the child was found or the social worker's initial equivocation as to whether removal was in fact necessary.

53.     In the petition regarding J.L., Danner alleged, "[o]n 10/20/13, the mother took the child to the urgent care clinic at Children's and the child was recommended to be admitted.  The mother refused and left Against Medical Advice.  The mother and child returned to Children's later that day."  This statement was inaccurate or highly misleading as Danner was informed of, but did not disclose, the fact that Ms. Chen and Mr. Lian had taken J.L. immediately from the SCH Bellevue clinic to the SCH emergency room in Seattle that same day.

54.     In the petition regarding J.L., Danner alleged that Ms. Chen was "doctor shopping, seeking medical care that the child does not need, and also not following through on medical care that is recommended by medical care providers."  Once again, this statement was unfounded and inaccurate or highly misleading, and Danner did not account for Ms. Chen's deep concern for and extensive efforts to address J.L.'s condition, which was attributable to his autism and associated medical issues.

55.     In the petition against L.L., J.L.'s older sibling, Danner misstated L.L.'s birth date as "10/24/2009."  Danner alleged that L.L. had "no parent … capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development."  These allegations were unfounded.

56.     Danner's petition against L.L. repeats verbatim the allegations Danner made in the petition against J.L., such that the bulk of the allegations bore no relation to L.L. whatsoever.  The only allegations that were relevant to L.L. were the assertions that L.L. exhibited abnormal levels of a thyroid stimulating hormone, and Ms. Chen's desire to test J.L. for medical problems.  Danner alleged that L.L. should be removed "due to ongoing concerns about the mother's mental health," but did not state any allegations that suggested Mr. Lian was incapable of caring for L.L.

57.     From October 28 to October 30, 2013, a 72-hour dependency hearing was held before the King County Superior Court for the State of Washington in Kent, Washington.  Dr.

DORSEY & WHITNEY LLP
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Green presented testimony by telephone at that hearing in support of Ms. Chen's fitness, and in support of J.L.'s release. Among other things, Dr. Green testified before the Court and DSHS that he had recommended a specific carbohydrate diet for J.L. to treat his autism-related symptoms which contributed to J.L.'s GI and developmental problems. Dr. Green explained that the dietary recommendation was based on proven medical practice. Both Dr. Green and Dr. Gbedawo also submitted letters in support of Ms. Chen at the hearing. The doctors disputed the unfounded concept that J.L's medical issues were the result of abuse or neglect as opposed to his proven medical conditions.

58. After the 72-hour hearing, L.L. was returned to his parents per court order. The Court could not have returned L.L. if the parents were a serious threat of safety to their children. J.L. remained in foster care as a result of the Court's concern for his medical condition, particularly his issues gaining weight.

**Defendant D'Amico's Incomplete Incident Report and False Probable Cause Affidavit.**

59. Following J.L.'s placement into protective custody, RPD commenced a criminal investigation against Ms. Chen for child neglect. Defendant D'Amico was in charge of the investigation, and she maintained regular communications with Defendant Danner and other DSHS personnel regarding Ms. Chen and J.L.

60. Defendant D'Amico's incident report of December 9, 2013, included information obtained from the warrantless search of Ms. Chen and Mr. Lian's residence on October 24, 2013. The incident report did not include Mr. Lian's statement that he was responsible for feeding J.L. weekdays for breakfast and dinner, and during weekends.

61. Defendant D'Amico's incident report indicated that she had access to Dr. Green's and Dr. Gbedawo's records. The incident report indicated Detective D'Amico's awareness that J.L. had been examined at Lakeside Center for Autism for his developmental delays and had been diagnosed with autism. The report also indicated Detective D'Amico's awareness that J.L. had visited SCH repeatedly since late 2012 for severe GI issues, and SCH staff tracked J.L.'s body weight.

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

62. Defendant D'Amico's incident report indicated that she was aware that Dr. Halamay of Pediatric Associates made the initial CPS referral. Defendant D'Amico noted the information that Dr. Halamay provided to CPS, including the observation that J.L. "had lost two pounds within the last two months." Detective D'Amico's incident report indicated that she did not receive records from Pediatric Associates when she signed the incident report.

63. Defendant D'Amico's incident report concluded there was probable cause to believe Ms. Chen violated RCW 9A.42.030 for criminal mistreatment in the second degree, and probable cause to believe Ms. Chen withheld basic necessities of life.

64. Defendant D'Amico's December 9, 2013 incident report stated, "Susan will be charged for this violation through investigation. Follow up investigation will be pending the three other medical providers' records I have previously requested." Defendant D'Amico's incident report contained a blank space for her supervisor's signature.

65. On December 9, 2013, the same day as the incident report, Defendant D'Amico signed a probable cause affidavit for Ms. Chen's criminal charge.

66. In her probable cause affidavit, Defendant D'Amico stated that J.L. "was suffering from gross malnutrition, dehydration, and this was indicative of serious bodily injury." She further stated, "All other causes of J.L.'s condition aside from malnutrition had been ruled out." This statement was untrue, and Defendant D'Amico knew or should have known the statement to be untrue when she made it.

67. Defendant D'Amico further stated, "Further investigation revealed Chen restricted J.L. from eating many things such as carbohydrates although she was never told J.L. could not have carbohydrates by any doctor." This statement was untrue, and Defendant D'Amico knew or should have known the statement to be untrue when she made it.

68. Defendant D'Amico further stated that Ms. Chen "brought J.L. to 14 different healthcare providers in a two year period and she refused to share information among these providers." Defendant D'Amico further stated that this situation "left J.L. not being monitored for both weight and developmental gains by any one provider." These statements were untrue,

AMENDED COMPLAINT - 13
16-cv-01877-JLR

DORSEY & WHITNEY LLP
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

and Defendant D'Amico knew or should have known the statements to be untrue when she made them.

69.     Defendant D'Amico further stated, "There is also probable cause to believe Susan withheld basic necessities of life to include nutrition as [J.L.] was diagnosed as grossly malnourished and dehydrated upon arrival at Seattle Children's Hospital." This statement was untrue, and Defendant D'Amico knew or should have known the statement to be untrue when she made it.

70.     The foregoing statements by Defendant D'Amico were either maliciously, intentionally, or recklessly false, because these statements are contradicted by the evidence that was available to Defendant D'Amico, and they omitted exculpatory information that was available to Defendant D'Amico.

71.     Defendant D'Amico did not commence an investigation of Mr. Lian even though he informed Defendant D'Amico that he fed J.L. breakfast and dinner during the week, and meals on weekends, and thus was the parent principally responsible for J.L.'s nutrition. No criminal charges against Mr. Lian were ever filed.

72.     Defendant D'Amico failed to inform the court about exculpatory information regarding Ms. Chen after the criminal case commenced, and thus failed to stop Ms. Chen's criminal prosecution when it was evident there was insufficient grounds for probable cause, thereby unnecessarily prolonging Ms. Chen's criminal prosecution.

73.     Upon information and belief, Defendant John Does A-D failed to adequately supervise and/or train Defendant D'Amico regarding the proper procedure for conducting police investigations, certifying to findings of probable cause for criminal prosecution, and stopping criminal prosecutions when there is exculpatory evidence to indicate that the probable cause certification contains materially false statements or omissions.

**Subsequent Dependency Proceedings.**

74.     On November 12, 2013, Ms. Chen filed a motion for a revision of the shelter care order for J.L. On November 20, 2013, DSHS filed a response that argued for continued shelter

AMENDED COMPLAINT - 14
16-cv-01877-JLR

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

care, citing J.L.'s apparent lack of weight gain during the period from late 2012 through late 2013 as attributable solely to malnutrition, because DSHS inaccurately claimed there was no evidence of any GI issues for J.L.  The Court denied Ms. Chen's motion based on DSHS's inaccurate submission.

75.    On or about December 10, 2013, CPS noted that J.L.'s weight had decreased by two pounds after initial weight gain while in the care of SCH.  According to Defendant Kegel's notes, the treating physician informed her that he was "not concerned" about the two-pound weight loss "because weight can fluctuate daily."  These are the same type of weight issues for which CPS and RPD claimed Ms. Chen was wholly responsible, as a result of her purportedly criminal abuse or neglect.

76.    During J.L.'s home shelter care, he successively passed through several foster parents because of the difficulties with caring for J.L.'s needs.  Information from the foster homes indicated that J.L. continued to experience severe GI problems during foster home care.  Again, this is while CPS and RPD claimed that J.L. had no medically-based GI problems and that any such issues had been solely caused by Ms. Chen's purported misconduct.

77.    In early 2014, Defendants Danner, Kegel, Soule, and Earwood intentionally, maliciously, or recklessly informed RPD that L.L. failed to attend school and was at a shopping mall with Ms. Chen when in fact L.L. had been at school, and instructed RPD to perform an unnecessary welfare check on L.L. at Plaintiffs' residence.  RPD officers investigated at Plaintiff's residence and discovered the allegation to be false.  RPD's appearance at the residence caused great distress to Plaintiffs.

78.    Defendants Danner, Kegel, Soule, and Earwood failed to inform the court after the commencement of the dependency action regarding J.L. that there was insufficient basis to maintain the dependency action, thereby prolonging the dependency action and unnecessarily delaying J.L.'s return to his parents' custody.

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

79.     On September 12, 2014, the court dismissed J.L.'s dependency action after DSHS realized its error in continuing to prosecute the case against Ms. Chen. DSHS acknowledged its error in communications with agents for Ms. Chen.

80.     Defendants Danner, Kegel, Soule, and Earwood acted in concert to investigate and prosecute DSHS' dependency actions against J.L. and L.L. at all relevant times.

81.     Upon information and belief, Defendants John Does E through H were responsible for the supervision and training of Defendants Danner, Kegel, Soule, and Earwood at all relevant times.

82.     Upon information and belief, Defendant Quigley and/or Defendant Moss failed to implement policies and conduct adequate supervision and training to ensure that DSHS's CPS social workers properly investigated and prosecuted J.L.'s and L.L.'s child dependency actions in order to prevent wrongful deprivation of Ms. Chen's and Mr. Lian's parental custody rights and deprivation of the children's liberty.

83.     Upon information and belief, Defendant Quigley and/or Defendant Moss failed to implement policies and conduct adequate supervision and training to ensure that DSHS's CPS social workers provided accurate information to police and criminal prosecutors to prevent wrongful prosecution of Ms. Chen without probable cause.

84.     Upon information and belief, Defendant Quigley and/or Defendant Moss failed to implement policies and conduct adequate supervision and training to ensure that DSHS's CPS social workers provided updates to police and criminal prosecutors to halt the prosecution of Ms. Chen when additional facts indicated that there was no basis to continue prosecuting her.

**Criminal Prosecution against Ms. Chen**

85.     On December 12, 2013, Defendant D'Amico transmitted her investigative file and probable cause certification to the Prosecuting Attorney for King County, Washington to commence criminal prosecution of Ms. Chen.

86.     On January 31, 2014, the Prosecuting Attorney filed the Information containing Defendant D'Amico's probable cause affidavit and a motion for finding of probable cause to

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

commence the criminal case against Ms. Chen in the King County Superior Court for the State of Washington. The same day, the court signed the order finding probable cause to commence the criminal case. The prosecution was based entirely on Defendant D'Amico's materially false and misleading probable cause affidavit.

87.     In early 2014, Ms. Chen appeared at the King County Superior Court of the State of Washington for arraignment in her criminal case. Ms. Chen was imprisoned in county jail for one day. Ms. Chen was later released without bail, on the conditions that she remain in King, Pierce, Snohomish, and Kitsap Counties in Washington; restrict contact with J.L.; and surrender her passport, pending the outcome of her criminal case.

88.     On September 19, 2014, the criminal case against Ms. Chen was dismissed after Ms. Chen's public defender presented compelling evidence that Ms. Chen was wrongly charged with a crime.

89.     Upon information and belief, Defendants Redmond and RPD lack adequate policies and training to ensure proper investigation of Ms. Chen and to prevent wrongful prosecution of her without probable cause and discriminatory prosecution of her on the basis of gender.

90.     Upon information and belief, Defendants Gibson and Wilson failed to implement policies, supervise, and train RPD officers to ensure proper investigation of Ms. Chen and to prevent wrongful prosecution of her without probable cause and discriminatory prosecution of her on the basis of gender.

91.     Upon information and belief, Defendants Gibson and Wilson were deliberately indifferent to, or directly participated in, Defendant D'Amico's malicious or intentional material falsehoods and/or omissions in her probable cause affidavit and discriminatory prosecution on the basis of gender.

92.     Upon information and belief, Defendant John Does A through D failed was deliberately indifferent to, or directly participated in, Defendant D'Amico's malicious or

DORSEY & WHITNEY LLP
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

intentional material falsehoods and/or omissions in her probable cause affidavit and discriminatory prosecution on the basis of gender.

**Harm to Plaintiffs.**

93.     Because of Defendants' wrongful actions as stated above, Plaintiffs have suffered immense harm. The harm is directly attributable to Defendants' wrongful prosecution of the actions against Ms. Chen, J.L., and L.L. The harm would have been reduced if Defendants had never prosecuted the dependency and criminal actions and/or had voluntarily dismissed them earlier in time.

94.     Ms. Chen and Mr. Lian were wrongfully deprived of legal custody of L.L. from October 25, 2013 through September 2014 (even though L.L. was returned home on October 31, 2013), which led to significant emotional harm.

95.     Ms. Chen and Mr. Lian were wrongfully deprived of legal custody of J.L. from October 24, 2013 through September 2014, which led to significant emotional harm.

96.     L.L. suffered severe emotional harm from his removal from his parent's custody, and from public humiliation attributable to DSHS's recurrent welfare checks on him at school.

97.     J.L. has suffered severe emotional harm and serious regression in his development from his removal from his parents' custody and denial of access to his mother for nearly one year. During this time, J.L. passed through a series of foster homes, which harmed him physically and emotionally and further delayed his development. J.L.'s regression also has caused emotional harm to Ms. Chen and Mr. Lian.

98.     Ms. Chen suffered public humiliation and loss of social relationships because she was under criminal investigation and criminal prosecution, because her children were removed from her custody, and because she was wrongfully imprisoned in county jail.

99.     Because Ms. Chen was required to surrender her passport and remain in King, Pierce, Snohomish, and Kitsap Counties in Washington pending the end of the criminal case, she was deprived of her right to travel freely, including but not limited to being denied the right to

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

visit a dying relative abroad and attend his funeral. Ms. Chen suffers emotional harm from the deprivation of her rights.

100.    Plaintiffs have suffered damages from Defendants' aforementioned acts in an amount to be determined at trial.

## V.    CAUSES OF ACTION

### Count I:  42 U.S.C. § 1983

**Defendant D'Amico**

101.    Plaintiffs incorporate the above allegations as though fully set forth herein.

102.    Defendant D'Amico intentionally, maliciously, or recklessly misstated material facts in her incident report dated December 9, 2013, including but not limited to the causes of J.L.'s physical condition and Ms. Chen's acts in conformance with medical advice.

103.    Defendant D'Amico intentionally, maliciously, or recklessly omitted material facts in her affidavit for probable cause dated December 9, 2013, including but not limited to the causes of J.L.'s physical condition and Ms. Chen's acts in conformance with medical advice.

104.    Without these material misstatements and omissions, the court would not have issued the warrant for the arrest of Ms. Chen.

105.    Without these material misstatements and omissions, the King County Prosecutor's Office in the State of Washington would not have commenced the criminal case against Ms. Chen.

106.    Defendant D'Amico investigated and interrogated Ms. Chen without the assistance of an interpreter who understood Ms. Chen's native language, despite Defendant D'Amico's knowledge that Ms. Chen had difficulty communicating in the English language.

107.    Defendant D'Amico learned that Mr. Lian was responsible for feeding J.L. breakfast and dinner during the week, as well as meals during weekends. Defendant D'Amico also was aware that Mr. Lian frequently accompanied Ms. Chen and J.L. to J.L.'s medical appointments. Furthermore, Defendant D'Amico was aware that CPS initially thought that both Ms. Chen and Mr. Lian were unfit parents such that DSHS commenced dependency actions to

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

remove J.L. and L.L. from Ms. Chen and Mr. Lian's parental custody. Despite these facts, Defendant D'Amico only sought prosecution of Ms. Chen, and not Mr. Lian, because of Ms. Chen's gender.

108.    Defendant D'Amico used statements that she obtained from Ms. Chen without the assistance of an interpreter to commence prosecution of Ms. Chen, by recording these statements in police reports, and transmitting the police reports to the King County Prosecutor's Office to initiate criminal proceedings against Ms. Chen.

109.    Defendant D'Amico did not provide Ms. Chen with a fair opportunity to fully explain herself through the assistance of an interpreter, and knowingly or recklessly prosecuted Ms. Chen with inaccurate testimony, because of Ms. Chen's national origin and/or ethnicity.

110.    Defendant D'Amico's acts and omissions constitute violations of the Fourth Amendment to the U.S. Constitution, because she caused the arrest and prosecution of Ms. Chen by obtaining an arrest warrant that was not founded on probable cause, in contravention of the rule established in *Franks v. Delaware*, 438 U.S. 154 (1978).

111.    Defendant D'Amico's acts and omissions constitute violations of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, because Defendant D'Amico caused the arrest and prosecution of Ms. Chen without probable cause through her submission of a probable cause affidavit that contained material falsehoods and omissions that failed to acknowledge exculpatory evidence that contradicted the probable cause affidavit. Furthermore, Defendant D'Amico failed to inform the King County Prosecuting Attorney's Office of exculpatory evidence in favor of Ms. Chen to stop the criminal prosecution of Ms. Chen after the criminal case began.

112.    Defendant D'Amico's acts and omissions constitute violations of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, because Defendant D'Amico failed to use an interpreter to obtain reliable and accurate testimony from Ms. Chen to prosecute Ms. Chen when Defendant D'Amico was aware that Ms. Chen had difficulty communicating in

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

English, and thus Defendant D'Amico knowingly or recklessly submitted unreliable testimony to the King County Prosecutor's Office to obtain Ms. Chen's prosecution.

113. Defendant D'Amico's acts and omissions also constitute violations of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution with respect to J.L., because Defendant D'Amico was a witness for the prosecution in the dependency case brought by the Washington State Attorney General's Office ("AG's Office") with respect to J.L., and failed to inform the AG's Office of exculpatory information that was in Defendant D'Amico's possession which vitiated probable cause for that action, and which should have terminated the prosecution of J.L.'s dependency action.

114. Defendant D'Amico's actions constitute violations of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, because Defendant D'Amico selectively prosecuted Ms. Chen instead of Mr. Lian on account of Ms. Chen's gender.

115. Defendant D'Amico's actions also violated the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution by depriving Ms. Chen of an opportunity to provide exculpatory testimony through an interpreter, and knowingly or recklessly prosecuting Ms. Chen by using unreliable testimony obtained without an interpreter, because of Defendant D'Amico's bias against Ms. Chen's national origin and/or ethnicity.

116. Through the aforementioned acts and omissions, Defendant D'Amico violated Ms. Chen and J.L.'s aforementioned constitutional rights while acting under color of state law, in both Defendant D'Amico's official capacity as a RPD officer and in her individual personal capacity.

117. The aforementioned acts and omissions were due to the reckless or callous indifference to constitutional rights, and/or unlawful motives or intent.

118. Defendant D'Amico's acts and omissions caused harm and damages to Plaintiffs, including but not limited to emotional harm and loss of reputation, in an amount to be determined at trial.

**Defendants Redmond and RPD**

AMENDED COMPLAINT - 21
16-cv-01877-JLR

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

119.    Defendants Redmond and RPD are responsible for adopting and customs, practices, and policies regarding all aspects of police investigations and prosecution of crimes; implementing such customs, practices, and policies; and training and supervising RPD officers to ensure their compliance with law and Redmond and RPD's policies.

120.    Defendant D'Amico acted at all times in accordance with the customs, longstanding practices, and official policies of Defendants Redmond and RPD.

121.    Defendant D'Amico acted at all times under the training and supervision of Defendants Redmond and RPD.

122.    Defendants Redmond and RPD failed to adopt customs, practices, and policies to ensure RPD officers' compliance with their constitutional duties to prepare and sign probable cause affidavits that do not contain material falsehoods or omissions; to account for exculpatory evidence in order to refrain from prosecuting persons without probable cause; to not target persons for investigation and prosecution on the basis of gender or national origin or ethnicity; to not use unreliable testimony obtained from witnesses who are not English proficient for use in prosecution unless there was a qualified interpreter present at the interrogation; and to provide prosecutors with exculpatory information to terminate criminal and/or dependency proceedings in order to halt prosecutions not founded upon probable cause.

123.    Alternatively, Defendants Redmond and RPD failed to implement customs, practices, and policies to ensure RPD officers' compliance with their constitutional duties to prepare and sign probable cause affidavits that do not contain material falsehoods or omissions; to account for exculpatory evidence in order to refrain from prosecuting persons without probable cause; to not target persons for investigation and prosecution on the basis of gender or national origin or ethnicity; to not use unreliable testimony obtained from witnesses who are not English proficient for use in prosecution unless there was a qualified interpreter present at the interrogation; and to provide prosecutors with exculpatory information to terminate criminal and/or dependency proceedings in order to halt prosecutions not founded upon probable cause.

DORSEY & WHITNEY LLP
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

124.     Defendants Redmond and RPD failed to train and/or supervise RPD officers to ensure their compliance with their constitutional duties to prepare and sign probable cause affidavits that do not contain material falsehoods or omissions; to account for exculpatory evidence in order to refrain from prosecuting persons without probable cause; to not target persons for investigation and prosecution on the basis of gender or national origin or ethnicity; to not use unreliable testimony obtained from witnesses who are not English proficient for use in prosecution unless there was a qualified interpreter present at the interrogation; and to provide prosecutors with exculpatory information to terminate criminal and/or dependency proceedings in order to halt prosecutions not founded upon probable cause.

125.     Defendants Redmond and RPD's customs, longstanding practices, and official policies caused the deprivation of Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, because these customs, longstanding practices, and official policies are so widespread in the RPD and closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the deprivation of Plaintiffs' rights.

126.     Defendants Redmond and RPD's acts and omissions deprived Plaintiffs of their constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution by encouraging, directing, and/or ratifying Defendant D'Amico's aforementioned acts and omissions despite awareness that such acts and omissions violated Plaintiffs' constitutional rights.

127.     Defendants Redmond and RPD's acts and omissions deprived Plaintiffs of their constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution through deliberate indifference to the risk that Defendants Redmond and RPD's customs, practices, and policies were inadequate to train RPD officers to prevent deprivation of rights under the Fourth and Fourteenth Amendments.  This failure to adopt customs, practices, and policies, and to train and supervise RPD officers in accordance with such policies, were so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the deprivation of Plaintiffs' rights.

DORSEY & WHITNEY LLP
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

128.    Defendants Redmond and RPD acted at all times under color of state law, and are subject to municipal liability under 42 U.S.C. § 1983.

129.    The aforementioned acts and omissions were due to the reckless or callous indifference to constitutional rights, and/or unlawful motives or intent.

130.    Defendants Redmond and RPD's acts and omissions caused harm and damages to Plaintiffs in an amount to be determined at trial.

**Defendants Gibson and Wilson**

131.    Defendants Gibson and Wilson are responsible for overseeing all aspects of investigations and operations of Defendant RPD, and in those roles acted as final policymaker for Defendant RPD.

132.    Defendant D'Amico acted at all times in accordance with the instruction, direction, training, and supervision of Defendants Gibson and Wilson.

133.    Defendant D'Amico acted at all times in accordance with the customs, practices, and policies adopted and implemented by Defendants Gibson and Wilson.

134.    Defendants Gibson and Wilson acted under color of state law, in their official capacities in RPD as well as in their individual personal capacities, in their adoption of customs, policies, and practices for Defendant RPD, and in their supervision and training of Defendant D'Amico.

135.    Defendants Gibson and Wilson failed to adopt or implement customs, practices, and policies to ensure RPD officers' compliance with their constitutional duties to prepare and sign probable cause affidavits that do not contain material falsehoods or omissions; to account for exculpatory evidence in order to refrain from prosecuting persons without probable cause; to not target persons for investigation and prosecution on the basis of gender or national origin or ethnicity; to not use unreliable testimony obtained from witnesses who are not English proficient for use in prosecution unless there was a qualified interpreter present at the interrogation; and to provide prosecutors with exculpatory information to terminate criminal and/or dependency proceedings in order to halt prosecutions not founded upon probable cause.

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

136.     Defendants Gibson and Wilson failed to train and/or supervise RPD officers to ensure their compliance with their constitutional duties to prepare and sign probable cause affidavits that do not contain material falsehoods or omissions; to account for exculpatory evidence in order to refrain from prosecuting persons without probable cause; to not target persons for investigation and prosecution on the basis of gender or national origin or ethnicity; to not use unreliable testimony obtained from witnesses who are not English proficient for use in prosecution unless there was a qualified interpreter present at the interrogation; and to provide prosecutors with exculpatory information to terminate criminal and/or dependency proceedings in order to halt prosecutions not founded upon probable cause.

137.     Defendants Gibson and Wilson adopted and implemented customs, longstanding practices, and official policies that caused the deprivation of Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, because these customs, longstanding practices, and official policies are so widespread in the RPD and closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the deprivation of Plaintiffs' rights.

138.     Defendants Gibson and Wilson's acts and omissions deprived Plaintiffs of their constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution by encouraging, directing, ratifying, and/or failing to stop Defendant D'Amico's aforementioned acts and omissions despite awareness that such acts and omissions violated Plaintiffs' constitutional rights.

139.     Defendants Gibson and Wilson's acts and omissions deprived Plaintiffs of their constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution through deliberate indifference to the risk that RPD's customs, practices, and policies were inadequate to train RPD officers to prevent, and were likely to lead to, deprivation of rights under the Fourth and Fourteenth Amendments.  This failure to adopt customs, practices, and policies, and to train and supervise RPD officers in accordance with such policies, caused Defendant D'Amico's acts and omissions that violated Plaintiffs' constitutional rights.

DORSEY & WHITNEY LLP
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

140. The aforementioned acts and omissions were due to the reckless or callous indifference to constitutional rights, and/or unlawful motives or intent.

141. Defendants Gibson and Wilson's acts and omissions caused harm and damages to Plaintiffs in an amount to be determined at trial.

**Defendant John Does A through D**

142. Defendant John Does A through D are RPD employees who have supervisory responsibilities to oversee Defendant D'Amico's criminal investigations and submission of information to initiate criminal prosecutions.

143. Defendant John Does A through D acted under color of state law at all times, both in their official capacity as an employee of RPD and in their individual personal capacity.

144. Defendant John Does A through D failed to supervise Defendant D'Amico's investigation of Ms. Chen and referral of Ms. Chen's matter to criminal prosecution, with full awareness that such failure of supervision is likely to cause violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution as described herein.

145. Defendant John Does A through D failed to train Defendant D'Amico with respect to the proper methods of criminal investigation and submission of information to initiate criminal prosecution, which caused Defendant D'Amico's acts and omissions, which violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution as described herein.

146. Defendant John Does A through D were aware or should have known that their failure to supervise Defendant D'Amico was likely to cause violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution as described herein, but they were deliberately indifferent to the risk.

147. Defendant John Does A through D were aware of or should have known Defendant D'Amico's actions as described herein, including but not limited to Defendant D'Amico's preparation of a probable cause affidavit that included material falsehoods and omissions concerning the basis for finding of probable cause, but failed to stop Defendant

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

D'Amico's actions and instruct Defendant D'Amico to provide prosecutors with exculpatory information in her possession that vitiates probable cause in order to terminate the prosecution of Ms. Chen and J.L. Defendant John Does A through D's failure to act led to violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution as described herein.

148. Alternatively, Defendant John Does A through D directed and encouraged Defendant D'Amico's violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution as described herein.

149. Defendant John Does A through D's acts and omissions as described herein were so closely related to the deprivation of Plaintiffs' constitutional rights as to be the moving force that caused the deprivation of Plaintiffs' constitutional rights.

150. The aforementioned acts and omissions were due to the reckless or callous indifference to constitutional rights, and/or unlawful motives or intent.

151. Defendant John Does A through D's acts and omissions caused harm and damages to Plaintiffs in an amount to be determined at trial.

**Defendants Danner, Kegel, Soule, and Earwood**

152. Defendants Danner, Kegel, Soule, and Earwood are social workers who were responsible for initiating and prosecuting the dependency actions against J.L. and L.L. on behalf of CPS, which is a component of DSHS.

153. Defendants Danner, Kegel, Soule, and Earwood acted under color of state law at all times in their official capacities as employees of DSHS and in their respective individual, personal capacities.

154. Defendants Danner, Kegel, Soule, and Earwood were in possession of, or otherwise had access to, information which indicated that J.L.'s physical condition was not solely due to Ms. Chen's or Mr. Lian's actions.

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

155.    Defendants Danner, Kegel, Soule, and Earwood were in possession of, or otherwise had access to, information which indicated that Ms. Chen and Mr. Lian acted in accordance with medical advice with respect to their care of J.L.

156.    Defendants Danner, Kegel, Soule, and Earwood were in possession of, or otherwise had access to, information which indicated that there was no need to remove J.L. and L.L. from Ms. Chen and Mr. Lian's parental custody.

157.    Defendants Danner, Kegel, Soule, and Earwood knowingly or recklessly filed dependency petitions to initiate dependency actions with respect to J.L. and L.L. that contained material falsehoods and omissions that, if disclosed to the court, would not have provided grounds for the dependency actions to proceed, because the actions would not have been founded on probable cause, in violation of Plaintiffs' rights under the Fourth Amendment and Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

158.    Defendants Danner, Kegel, Soule, and Earwood knowingly or recklessly maintained, continued to prosecute, and failed to timely terminate dependency actions with respect to J.L. and L.L. and restore parental custody to Ms. Chen and Mr. Lian.  Defendants Danner, Kegel, Soule, and Earwood were either aware of, or should have known, information that, if disclosed to the court, should have terminated the dependency actions.  These acts and omissions violated Plaintiffs' rights under the Fourth Amendment and Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

159.    Defendants Danner, Kegel, Soule, and Earwood knowingly or recklessly referred Plaintiffs' matter for, or otherwise instigated, encouraged or facilitated, the criminal investigation of Ms. Chen by Defendant D'Amico and the criminal prosecution of Ms. Chen by the AG's Office, despite Defendants Danner, Kegel, Soule, and Earwood's knowledge or awareness of facts that indicated Ms. Chen was not negligent in her care of J.L.  These acts and omissions violated Plaintiffs' rights under the Fourth Amendment and Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

160.    After encouraging, instigating, or facilitating Ms. Chen's criminal prosecution, Defendants Danner, Kegel, Soule, and Earwood intentionally, maliciously, or recklessly failed to timely inform the court of exculpatory information that vitiated probable cause for the criminal case against Ms. Chen, which should have terminated the criminal proceedings against Ms. Chen, and led to the restoration of parental custody of J.L. and L.L. to Ms. Chen and Mr. Lian. These acts and omissions violated Plaintiffs' rights under the Fourth Amendment and Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

161.    The aforementioned acts and omissions were due to the reckless or callous indifference to constitutional rights, and/or unlawful motives or intent.

162.    Defendants Danner, Kegel, Soule, and Earwood's acts and omissions caused harm and damages to Plaintiffs in an amount to be determined at trial.

163.    Defendant DSHS also is responsible for the foregoing violations by and through the acts and omissions of Defendants Danner, Kegel, Soule, and Earwood.

**Defendants Quigley and Moss**

164.    Defendants Quigley and Moss were responsible for adopting customs, practices, and policies to regulate the investigation and prosecution of child dependency actions by CPS as the final policymakers of DSHS.

165.    Defendants Quigley and Moss are responsible for overseeing all aspects of investigations and prosecutions of dependency actions by CPS.

166.    Defendants Danner, Kegel, Soule, and Earwood acted at all times in accordance with the instruction, direction, training, and supervision of Defendants Quigley and Moss.

167.    Defendants Danner, Kegel, Soule, and Earwood acted at all times in accordance with the customs, practices, and policies adopted and implemented by Defendants Quigley and Moss.

168.    Defendants Quigley and Moss acted under color of state law, in their official capacities in DSHS as well as in their respective individual, personal capacities, in their adoption

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

of customs, policies, and practices for DSHS, and in their supervision and training of Defendants Danner, Kegel, Soule, and Earwood.

169.    Defendants Quigley and Moss failed to adopt or implement customs, practices, and policies to ensure CPS employees' compliance with their constitutional duties to prepare dependency petitions that do not contain material falsehoods or omissions; to account for exculpatory evidence in order to refrain from prosecuting dependency actions without probable cause; to not refer matters to police investigations and criminal prosecutions when there is insufficient basis to conduct police investigations and criminal prosecutions; and to provide prosecutors and the courts with exculpatory information to terminate criminal and/or dependency proceedings in order to halt prosecutions not founded upon probable cause.

170.    Defendants Quigley and Moss failed to train or supervise CPS employees to ensure their compliance with their constitutional duties to prepare dependency petitions that do not contain material falsehoods or omissions; to account for exculpatory evidence in order to refrain from prosecuting dependency actions without probable cause; to not refer matters to police investigations and criminal prosecutions when there is insufficient basis to conduct police investigations and criminal prosecutions; and to provide prosecutors and the courts with exculpatory information to terminate criminal and/or dependency proceedings in order to halt prosecutions not founded upon probable cause.

171.    Defendants Quigley and Moss adopted and implemented customs, longstanding practices, and official policies that caused the deprivation of Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, because these customs, longstanding practices, and official policies are so widespread in CPS and closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the deprivation of Plaintiffs' rights.

172.    Defendants Quigley and Moss's acts and omissions deprived Plaintiffs of their constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution by encouraging, directing, ratifying, and/or failing to stop Defendants Danner, Kegel, Soule, and

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Earwood's aforementioned acts and omissions despite awareness that such acts and omissions violated Plaintiffs' constitutional rights.

173.     Defendants Quigley and Moss's acts and omissions deprived Plaintiffs of their constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution through deliberate indifference to the risk that CPS's customs, practices, and policies were inadequate to train CPS employees to prevent, and were likely to lead to, deprivation of rights under the Fourth and Fourteenth Amendments.  This failure to adopt customs, practices, and policies, and to train and supervise CPS employees in accordance with such policies, caused Defendants Danner, Kegel, Soule, and Earwood's acts and omissions that violated Plaintiffs' constitutional rights.

174.     The aforementioned acts and omissions were due to the reckless or callous indifference to constitutional rights, and/or unlawful motives or intent.

175.     Defendants Quigley and Moss's acts and omissions caused harm and damages to Plaintiffs in an amount to be determined at trial.

176.     Defendant DSHS also is responsible for the foregoing violations by and through the acts and omissions of Defendants Quigley and Moss.

**Defendants John Does E through H**

177.     Defendants John Does E through H are DSHS employees who have responsibilities to train and supervise Defendants Danner, Kegel, Soule, and Earwood's investigation and prosecution of child dependency actions and interactions with police to pursue criminal prosecution of parents who are accused of criminal neglect.

178.     Defendants John Does E through H acted under color of state law at all times, both in their official capacities as DSHS employees and in their respective individual, personal capacities.

179.     Defendants John Does E through H failed to train or supervise Defendants Danner, Kegel, Soule, and Earwood's investigation of Ms. Chen, referral of Ms. Chen's matter to criminal prosecution, and prosecution of dependency actions against J.L. and L.L., with full

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

awareness that such failure of supervision is likely to cause violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution as described herein.

180.    Defendants John Does E through H were aware or should have known that their failure to train and supervise Defendants Danner, Kegel, Soule, and Earwood was likely to cause violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution as described herein, but they were deliberately indifferent to the risk.

181.    Defendants John Does E through H were aware of or should have known Defendants Danner, Kegel, Soule, and Earwood's actions as described herein, including but not limited to the preparation of dependency petitions against J.L. and L.L. that included material falsehoods and omissions concerning the basis for finding of probable cause and their facilitation of Ms. Chen's criminal prosecution without probable cause, but failed to stop Defendants Danner, Kegel, Soule, and Earwood's actions and instruct them to provide prosecutors and the court with exculpatory information in their possession that vitiated probable cause in order to terminate the prosecution of Ms. Chen, J.L., and L.L. Defendants John Does E through H's failure to act led to violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution as described herein.

182.    Alternatively, Defendants John Does E through H directed and encouraged Defendants Danner, Kegel, Soule, and Earwood's violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution as described herein.

183.    Defendants John Does E through H's acts and omissions as described herein were so closely related to the deprivation of Plaintiffs' constitutional rights as to be the moving force that caused the deprivation of Plaintiffs' constitutional rights.

184.    The aforementioned acts and omissions were due to the reckless or callous indifference to constitutional rights, and/or unlawful motives or intent.

185.    Defendants John Does E through H's acts and omissions caused harm and damages to Plaintiffs in an amount to be determined at trial.

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

186.     Defendant DSHS also is responsible for the foregoing violations by and through the acts and omissions of Defendants John Does E through H.

### Count II:  Malicious Prosecution

187.     Plaintiffs incorporate the above allegations as though fully set forth herein.

<u>Direct Liability</u>

188.     Defendants D'Amico, Gibson, Wilson, and John Does A through D, instituted a criminal prosecution against Plaintiff Chen.

189.     Defendants knew that J.L. suffered from chronic gastrointestinal problems and delayed development.

190.     Defendants knew that Plaintiff Chen had taken J.L. to be treated by numerous medical specialists in an effort to treat and improve his condition.

191.     Defendants knew that J.L.'s underweight and chronic gastrointestinal problems could have been caused by, among other things, the fact that he was on the autism spectrum.

192.     Defendants knew that J.L.'s underweight and chronic gastrointestinal problems could have resulted from causes other than malnourishment and/or starvation.

193.     Defendants knew that Ms. Chen reduced J.L.'s intake of carbohydrates based on medical advice.

194.     Defendants knew that Ms. Chen complied repeatedly with medical advice in taking J.L. to medical visits, including a visit to the emergency room.

195.     Because they knew or recklessly ignored the facts as alleged above, Defendants D'Amico, Gibson, Wilson, and John Does A through D lacked probable cause to institute criminal charges against Plaintiff Chen.

196.     Because it was instituted by Defendants D'Amico, Gibson, Wilson, and John Does A through D when they knew the facts as alleged above, criminal prosecution instituted against Plaintiff was unfounded.

AMENDED COMPLAINT - 33
16-cv-01877-JLR

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

197.    Defendants D'Amico, Gibson, Wilson, and John Does A through D were deliberately indifferent about whether Plaintiff Chen committed a crime when they instituted a criminal prosecution against Plaintiff without probable cause.

198.    Defendants D'Amico, Gibson, Wilson, and John Does A through D knew the fact that the criminal prosecution instituted by them against Plaintiff Chen was unfounded and false.

199.    Defendants D'Amico, Gibson, Wilson, and John Does A through D acted with malice when they instituted a criminal prosecution against Plaintiff Chen as a result of their deliberate indifference as to whether she committed a crime.

200.    Defendants D'Amico, Gibson, Wilson, and John Does A through D acted with malice when they instituted a criminal prosecution against Plaintiff Chen that they knew to be unfounded.

201.    Wash. Rev. Code § 4.24.350 creates a cause of action by any persons against whom criminal prosecutions are instituted as a result of malice.

202.    Plaintiff Chen suffered harm and damages as a result of Defendants' malicious prosecution against her.

203.    Plaintiff Chen is entitled to damages under Wash. Rev. Code § 4.24.350 as a result of Defendants' malicious prosecution against her.

204.    Plaintiff Chen is entitled to a judgment against Defendants D'Amico, Gibson, Wilson, and John Does A through D's as a result of their institution of a malicious prosecution against her, in an amount to be proven at trial.

Vicarious Liability

205.    Defendants D'Amico, Gibson, Wilson, and John Does A through D were acting in furtherance of Defendants RPD and Redmond's business when they instituted a malicious prosecution against Plaintiff Chen.

206.    Defendants D'Amico, Gibson, Wilson, and John Does A through D were employees of Redmond and RPD when they instituted the malicious prosecution against Plaintiff Chen.

AMENDED COMPLAINT - 34
16-cv-01877-JLR

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

207. Defendants D'Amico, Gibson, Wilson, and John Does A through D were acting within the scope of their employment when they instituted the malicious prosecution against Plaintiff Chen.

208. As a result of Defendants D'Amico, Gibson, Wilson, and John Does A through D's malicious prosecution, Plaintiff Chen was harmed.

209. Plaintiff Chen is entitled to a judgment of vicarious liability against Defendants RPD and Redmond as a result of Defendants' D'Amico, Gibson, Wilson, and John Does A through D's institution of a malicious prosecution against Plaintiff Chen, in an amount to be proven at trial.

### Count III: Intentional Infliction of Emotional Distress

210. Plaintiffs incorporate the above allegations as though fully set forth herein.

<u>Direct Liability</u>

211. As set forth in detail above, Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H intentionally and wrongfully deprived Plaintiffs Chen and Lian of legal custody of L.L. from October 25, 2013 through September 2014 (even though L.L. was returned home on October 31, 2014).

212. As set forth in detail above, Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H intentionally and wrongfully deprived Plaintiffs Chen and Lian of legal custody of J.L. from October 24, 2013 through September 2014.

213. Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's intentional wrongful deprivation of Plaintiffs Chen and Lian's parental custody of L.L. and J.L. caused L.L. and J.L. severe emotional harm, including but not limited to further delaying J.L.'s development and publicly humiliating L.L.

214. Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's intentional wrongful deprivation of Plaintiffs' parental custody of L.L. and J.L. caused Plaintiffs Chen and Lian to suffer severe emotional harm, including but not limited to

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

public humiliation, loss of social relationships, and anxiety caused by separation from her children.

215.    By intentionally and wrongfully depriving Plaintiffs of their parental custody of L.L. and J.L., Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H intentionally inflicted severe emotional distress upon Plaintiffs.

216.    Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H intentionally reported false information to RPD that L.L. was truant from school in early 2014, which led RPD to investigate Plaintiffs' residence and cause severe distress to Plaintiffs.

217.    Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H intentionally sent a CPS social worker to repeatedly visit L.L. at school when they knew there was no need for such visits, which inflicted severe distress on L.L. due to humiliation and fear of taunting from other students because of the CPS visits.

218.    Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's conduct was outrageous.

219.    As a result of Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's intentional infliction of emotional distress upon Plaintiffs, Plaintiffs suffered harm and damages.

220.    Plaintiffs are entitled to a judgment in their favor as a result of Defendants' Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's intentional infliction of emotional distress upon Plaintiffs, in an amount to be proven at trial.

<u>Vicarious Liability</u>

221.    Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H were acting in furtherance of Defendant DSHS's business when they intentionally and wrongfully deprived Plaintiffs of their parental custody of L.L. and J.L.

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

222.    Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H were employees of DSHS when they instituted the malicious prosecution against Plaintiff.

223.    Defendants D'Amico, Gibson, Wilson, and John Does A through D were acting within the scope of their employment when they wrongfully deprived Plaintiffs of their parental custody of L.L. and J.L.

224.    Defendants D'Amico, Gibson, Wilson, and John Does A through D were acting within the scope of their employment when they wrongfully reported Plaintiffs to RPD based on a false allegation of L.L.'s truancy.

225.    Defendants D'Amico, Gibson, Wilson, and John Does A through D were acting within the scope of their employment when they wrongfully sent a CPS social worker to visit L.L. repeatedly at school.

226.    As a result of Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's intentional infliction of emotional distress upon Plaintiffs, Plaintiffs were harmed and damaged.

227.    Plaintiffs are entitled to a judgment of vicarious liability against DSHS as a result of Defendants' Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's intentional infliction of emotional distress upon Plaintiffs, in an amount to be proven at trial.

## Count IV: Negligent Investigation

228.    Plaintiffs incorporate the above allegations as though fully set forth herein.

229.    Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H knew, should have known, or could easily have discovered that Plaintiffs Chen and Lian had taken J.L. to be treated by numerous medical specialists in an effort to treat and improve his condition.

230.    Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H knew, should have known, or could easily have discovered that J.L.'s underweight

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

and chronic gastrointestinal problems could have been caused by, among other things, the fact that he was on the autism spectrum.

231. Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H knew, should have known, or could easily have discovered that J.L.'s underweight and chronic gastrointestinal problems could have resulted from causes other than malnourishment and/or starvation.

232. Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H dismiss Plaintiffs' Chen's and Lian's assertions that J.L.'s condition, including but not limited to his underweight and chronic gastrointestinal problems resulted from the fact that he was on the autism spectrum.

233. Pursuant to Wash. Rev. Code § 26.44.050, Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H had a duty to investigate child abuse.

234. Under Wash. Rev. Code § 26.44.050, a cause of action arises when the DSHS (or its agents / employees) fails to adequately investigate a child's living situation before making a placement decision to remove a child from a non-abusive home.

235. Defendant failed to adequately investigate L.L.'s and J.L's living situation before making a placement decision to remove them from the home by ignoring and / or failing to discover readily available evidence that the home was non-abusive.

236. Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H caused all Plaintiffs harm by failing to adequately investigate L.L.'s and J.L's living situation.

237. Plaintiffs are entitled to a judgment in their favor as a result of Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's failure to adequately investigate L.L.'s and J.L's living situation, in an amount to be proven at trial.

238. Defendant DSHS also is responsible for the foregoing violations by and through the acts and omissions of Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H.

AMENDED COMPLAINT - 38
16-cv-01877-JLR

DORSEY & WHITNEY LLP
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

239.     Defendants Redmond, RPD, Gibson, Wilson, D'Amico, and John Does A through D also are liable to Plaintiffs for negligent investigation for the reasons stated herein.

### Count V: Negligent Supervision

240.     Plaintiffs incorporate the above allegations as though fully set forth herein.

241.     Defendants D'Amico, Gibson, Wilson, and John Does A through D posed a risk of harm to others, including Plaintiffs.

242.     Defendants RPD and Redmond knew or should have known that D'Amico, Gibson, Wilson, and John Does A through D posed a risk of harm to others, including Plaintiffs.

243.     Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H presented a risk of harm to others, including Plaintiffs.

244.     Defendant DSHS knew or should have known that Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H presented a risk of harm to others, including Plaintiffs.

245.     Defendants D'Amico, Gibson, Wilson, and John Does A through D actually caused Plaintiffs to sustain harm and damages.

246.     Defendants RPD and Redmond's failure to adequately supervise the Defendants D'Amico, Gibson, Wilson, and John Does A through D proximately caused Plaintiffs' harm and damages.

247.     Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H actually caused Plaintiffs to sustain harm and damages.

248.     Defendant DSHS's failure to adequately supervise Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H proximately caused Plaintiffs' harm and damages.

249.     Plaintiffs are entitled to a judgment of Negligent Supervision against RPD and Redmond as a result their failure to supervise Defendants D'Amico, Gibson, Wilson, and John Does A through D, in an amount to be proven at trial.

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

250.     Plaintiffs are entitled to a judgment of Negligent Supervision against DSHS as a result its failure to supervise Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H, in an amount to be proven at trial.

### Count VI: Negligent Infliction of Emotional Distress

251.     Plaintiffs incorporate the above allegations as though fully set forth herein.

<u>Direct Liability</u>

252.     As set forth in detail above, Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H negligently deprived Plaintiffs Chen and Lian of legal custody of L.L. from October 25, 2013 through September 2014 (even though L.L. was returned home on October 31, 2014).

253.     As set forth in detail above, Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H negligently deprived Plaintiffs Chen and Lian of legal custody of J.L. from October 24, 2013 through September 2014.

254.     Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's negligent deprivation of Plaintiffs Chen and Lian's parental custody of L.L. and J.L. caused L.L. and J.L. severe emotional harm, including but not limited to further delaying J.L.'s development and publicly humiliating L.L.

255.     Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's negligent deprivation of Plaintiffs' parental custody of L.L. and J.L. caused Plaintiffs Chen and Lian to suffer severe emotional harm, including but not limited to public humiliation, loss of social relationships, and anxiety caused by separation from her children.

256.     By negligently depriving Plaintiffs of their parental custody of L.L. and J.L., Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H inflicted severe emotional distress upon Plaintiffs.

257.     Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H negligently reported Plaintiffs to RPD for investigation in early 2014 based on a false

AMENDED COMPLAINT - 40
16-cv-01877-JLR

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

allegation that L.L. was truant from school, which led to RPD's investigation of Plaintiffs' residence, which cause severe distress to Plaintiffs.

258.     Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H negligently sent a CPS social worker to repeatedly visit L.L. at school when they should have known there was no need for such visits, which inflicted severe distress on L.L. due to humiliation and fear of taunting from other students because of the CPS visits.

259.     As a result of Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's negligent deprivation of Plaintiffs Chen and Lian's parental custody, false reporting, and unnecessary school visits, Plaintiffs suffered harm and damages.

260.     Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's conduct was outrageous.

261.     Plaintiffs are entitled to a judgment in their favor as a result of Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's negligent infliction of emotional distress upon Plaintiffs, in an amount to be proven at trial.

<u>Vicarious Liability</u>

262.     Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H were acting in furtherance of Defendant DSHS's business when they negligently deprived Plaintiffs of their parental custody of L.L. and J.L.

263.     Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H were employees of Defendant DSHS when they instituted the malicious prosecution against Plaintiff.

264.     As a result of Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's negligent deprivation of Plaintiffs' parental custody, malicious prosecution, Plaintiffs were harmed.

265.     Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H were employees of Defendant DSHS when they negligently reported false information

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

alleging L.L.'s truancy in early 2014, calling RPD to investigate Plaintiffs' residence, which led RPD to investigate and cause great distress to Plaintiffs.

266.     Plaintiffs are entitled to a judgment of vicarious liability against Defendant DSHS as a result of Defendants' Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's negligent deprivation of Plaintiffs' parental custody of J.L. and L.L. and negligent reporting to RPD to investigate Plaintiffs, in an amount to be proven at trial.

### Count VII: Abuse of Criminal Legal Process

267.     Plaintiffs incorporate the above allegations as though fully set forth herein.

Direct Liability

268.     Defendants D'Amico, Gibson, Wilson, and John Does A through D instituted a criminal prosecution against Plaintiff Chen which lacked probable cause.

269.     Defendants D'Amico, Gibson, Wilson, and John Does A through D instituted a criminal prosecution against Plaintiff Chen with malice.

270.     Defendants D'Amico, Gibson, Wilson, and John Does A through D continued the criminal prosecution against Plaintiff Chen

271.     The criminal proceedings against Plaintiff Chen were ultimately abandoned.

272.     Defendants D'Amico, Gibson, Wilson, and John Does A through D's wrongful prosecution of Plaintiff Chen actually and proximately caused Plaintiffs to suffer harm and damages.

273.     Plaintiffs are entitled to a judgment of misuse of legal process against Defendants D'Amico, Gibson, Wilson, and John Does A through D, in an amount to be proven at trial.

Vicarious Liability

274.     Defendants D'Amico, Gibson, Wilson, and John Does A through D were acting in furtherance of Defendants RPD and Redmond's business when they instituted a malicious prosecution against Plaintiff Chen without probable cause.

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

275.     Defendants D'Amico, Gibson, Wilson, and John Does A through D were employees of Redmond and RPD when they instituted the malicious prosecution against Plaintiff Chen without probably cause.

276.     Defendants D'Amico, Gibson, Wilson, and John Does A through D were acting within the scope of their employment when they instituted the malicious prosecution against Plaintiff Chen without probable cause.

277.     As a result of Defendants D'Amico, Gibson, Wilson, and John Does A through D's malicious prosecution against her without probable cause, Plaintiff Chen was harmed.

278.     Plaintiff Chen is entitled to a judgment of vicarious liability against Defendants RPD and Redmond as a result of Defendants D'Amico, Gibson, Wilson, and John Does A through D's institution of a malicious prosecution against Plaintiff Chen without probable cause, in an amount to be proven at trial.

### Count VIII: Abuse of Civil Legal Process

279.     Plaintiffs incorporate the above allegations as though fully set forth herein.

<u>Direct Liability</u>

280.     Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H had an ulterior purpose not within the proper scope of the civil dependency process when they implemented the civil dependency process with respect to Plaintiffs.

281.     Defendants' use of the civil dependency process to achieve an ulterior purpose not within the proper scope of the civil dependency process constituted an abuse of process.

282.     Defendants' abuses of the civil dependency and criminal processes directly and proximately caused Plaintiffs to suffer harm and damages.

283.     Plaintiffs are entitled to a judgment of abuse of process against Defendants, in an amount to be proven at trial.

<u>Vicarious Liability</u>

284.     Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H were acting in furtherance of Defendant DSHS's business when they instituted they

AMENDED COMPLAINT - 43
16-cv-01877-JLR

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

used the civil dependency process against Plaintiffs in furtherance of an ulterior purpose not within the proper scope of the civil dependency process.

285.     Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H were employees of Defendant DSHS when they instituted they used the civil dependency process against Plaintiffs in furtherance of an ulterior purpose not within the proper scope of the civil dependency process.

286.     Plaintiffs suffered damages as a direct and proximate result of Defendants Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's abuse of the civil dependency process, Plaintiffs were harmed.

287.     Plaintiffs are entitled to a judgment of vicarious liability against Defendant DSHS as a result of Defendants' Quigley, Moss, Danner, Kegel, Earwood, Soule, and John Does E through H's abuse of the civil dependency process, in an amount to be proven at trial.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in this action as follows:

1.     That the Court find and adjudge Defendants to be liable to Plaintiffs in an amount of damages to be determined at trial for the violations of Plaintiffs' constitutional and other rights and injuries to Plaintiffs as stated herein;

2.     That the Court award punitive damages against Defendants due to their reckless or callous indifference to Plaintiffs' constitutional rights, and/or unlawful motives or intent, in an amount to be determined at trial;

3.     That the Court award Plaintiffs their attorney's fees and costs incurred for bringing this action pursuant to 42 U.S.C. § 1988 and other applicable law; and

4.     Such other and further relief as the Court deems just and equitable.

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Dated this 9th day of August, 2017.

**DORSEY & WHITNEY LLP**

*/s/ Shawn Larsen-Bright*
*/s/ Nathan Alexander*
*/s/ T. Augustine Lo*
*/s/ Sarah Cox*
Shawn Larsen-Bright, WSBA # 37066
Nathan Alexander, WSBA #37040
T. Augustine Lo, WSBA # 48060
Sarah Cox, WSBA #46703
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Tel. 206-903-8800
larsen.bright.shawn@dorsey.com
alexander.nathan@dorsey.com
lo.augustine@dorsey.com
cox.sarah@dorsey.com

*Court-Appointed Attorneys for Plaintiff Susan*
*Chen*

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused to be served the foregoing on the following by the method indicated:

| Aaron P. Riensche<br>Geoff Bridgman<br>Ogden Murphy Wallace, P.L.L.C.<br>901 Fifth Avenue, Suite 3500<br>Seattle, Washington 98164<br>Tel: 206-447-7000<br>ariensche@omwlaw.com<br>gbridgman@omwlaw.com<br><br>Attorneys for Defendants Natalie D'Amico<br>and City of Redmond | ☐ Via Messenger<br>☐ Via Facsimile<br>☐ Via U.S. Mail<br>☐ Via Electronic Mail<br>☒ Via ECF Notification |
|---|---|
| Naixiang Lian<br>PO BOX 134<br>Redmond, Washington 98073<br><br>*Pro Se Plaintiff* | ☐ Via Messenger<br>☐ Via Facsimile<br>☒ Via U.S. Mail<br>☐ Via Electronic Mail<br>☐ Via ECF Notification |

Dated this 9th day of August, 2017.

*/s/ Natasha Johnston*
Natasha Johnston, Legal Assistant

AMENDED COMPLAINT - 46
16-cv-01877-JLR

**DORSEY & WHITNEY LLP**
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820