UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUSAN CHEN, et al., | CASE NO. C16-1877JLR |
| Plaintiffs, | ORDER ON PLAINTIFFS' |
| v. | MOTION TO AMEND |
| NATALIE D'AMICO, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Before the court is Plaintiffs Susan (Shiying) Chen, Naixiang Lian, J.L., and

L.L.'s (collectively, "Plaintiffs") motion for leave to amend their complaint. (Mot. (Dkt.

# 58).)  The court has considered the motion, the parties' submissions in support of and in

opposition to the motion, the relevant portions of the record, and the applicable law.

Being fully advised,[1] the court GRANTS in part and DENIES in part Plaintiffs' motion.

_____

[1] No party requests oral argument, and the court concludes that oral argument would not
be helpful to its disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

## II.  BACKGROUND

Plaintiffs allege various violations of 42 U.S.C. § 1983 and state law by Defendant City of Redmond, Washington ("the City");[2] individual police officer Defendants Natalie D'Amico, Ron Gibson, Kristi Wilson, and unnamed John Does A-D (collectively, "the Redmond Officers"); Defendant Washington State Department of Social and Health Services ("DSHS"); and 10 named and unnamed DSHS employees (collectively, "Defendants").  (FAC ¶¶ 7-20.)[3]  Plaintiffs' allegations arise from a series of interactions between Plaintiffs and certain Defendants that began in October of 2013.  (*Id.* ¶¶ 42-43.)

According to Plaintiffs, DSHS's Child Protective Services ("CPS") visited Plaintiffs' home on October 23, 2013, to investigate an allegation made earlier that day against Ms. Chen and Mr. Lian by a doctor who had examined their son, J.L.  (*Id.*)  The social worker from CPS convinced Ms. Chen and Mr. Lian to take J.L. to Seattle Children's Hospital, where he was found to be malnourished and was subsequently placed into protective custody.  (*Id.* ¶¶ 43-44.)  Soon after, RPD began a criminal

---

[2] The first amended complaint also names the Redmond Police Department ("RPD") as a defendant.  (FAC (Dkt. # 21) ¶ 8.)  RPD is a department or agency of the City, and it cannot be sued in its individual capacity because any claim against it constitutes a claim against the City.  *See Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1207 (W.D. Wash. 2008) (citing *Nolan v. Snohomish Cty.*, 802 P.2d 792, 796 (Wash. Ct. App. 1990)); *Perryman v. City of Seattle Police*, No. C17-0274RSL, 2017 WL 2289070, at *1 n.1 (W.D. Wash. May 25, 2017).  As a result, any reference to the City includes RPD.

[3] Although the court struck the FAC as to the City (*see* 10/16/17 Order (Dkt. # 53) at 4-5), the complaint is operative for all other Defendants (10/23/17 Order (Dkt. # 60) at 1 (stating that the court's October 16, 2017, order "extended only to striking Plaintiffs' allegations and claims against the City and to Paragraph 23 of the complaint as to all defendants")).  Accordingly, the court cites the FAC for common allegations of fact as well as legal allegations against all Defendants except the City.

investigation, led by Officer D'Amico, into possible child neglect by Ms. Chen. (*Id.* ¶ 59.) On December 9, 2013, Officer D'Amico signed a probable cause affidavit to file criminal charges against Ms. Chen. (*Id.* ¶ 65.) Plaintiffs allege that the affidavit, made upon Officer D'Amico's knowledge, contained untrue statements and omitted exculpatory information. (*Id.* ¶¶ 66-72.) On December 13, 2013, Officer D'Amico sent her investigation report and probable cause affidavit to the King County Prosecuting Attorney, which resulted in the Prosecuting Attorney's office filing a criminal information against Ms. Chen on January 31, 2014. (*Id.* ¶¶ 85-86.) On September 19, 2014, the Prosecuting Attorney's office dropped the charges. (*Id.* ¶ 88.)

Just over two years later, on December 21, 2016, Plaintiffs filed a *pro se* complaint against the City in King County Superior Court. *Chen v. City of Redmond*, No. C17-0569JLR, Dkt. # 1 ("Redmond Compl.") at 16. The same day, Plaintiffs filed a separate lawsuit against Officer D'Amico in this court. (12/21/16 Order (Dkt. # 4); *see generally* Dkt.) On April 17, 2017, the City removed the state action to federal court and answered the complaint the following day. *Chen*, No. C17-0569JLR, Dkt. ## 2, 5. The parties subsequently agreed to consolidate the two cases. (*See* 7/5/17 Order (Dkt. # 20).) On August 9, 2017, Plaintiffs filed a first amended complaint without seeking the court's leave or a stipulation from the Defendants. (*See* 10/16/17 Order at 3-5.) Because the City had already filed a responsive pleading to the complaint against it, the court granted the City's motion to strike the FAC as to the City only. (*Id.*) Plaintiffs now seek

//

//

leave to amend their allegations as to the City and to assert claims against all Defendants in a single pleading.[4]  (*See* Mot. at 1-2.)

Plaintiffs propose to amend their complaint against the City by bringing claims under 42 U.S.C. § 1983 against the Redmond Officers in their personal capacities for alleged violations of Plaintiffs' Fourth and Fourteenth Amendment rights.  (FAC ¶¶ 116, 134, 143; Prop. SAC (Dkt. # 58-1) ¶¶ 116, 134, 143.)  In addition, Plaintiffs propose a *Monell* claim against the City for the Redmond Officers' alleged conduct in carrying out municipal policies or practices that caused Plaintiffs' constitutional harms.[5]  (Prop. SAC ¶¶ 119-30); *see Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978) (allowing municipalities to be sued directly as "persons" under 42 U.S.C. § 1983 for injuries caused by municipal policies that violate the United States Constitution). Plaintiffs also propose state law claims alleging that the City is directly or vicariously liable for malicious prosecution, intentional infliction of emotional distress ("IIED"), negligent investigation, negligent supervision, and abuse of criminal legal process.  (*Id.* ¶¶ 187-278.)

//

//

---

[4] Because the court struck only the allegations and claims related to the City (*see* 10/23/17 Order at 1), the court does not address the claims in the proposed amended complaint that are made solely against DSHS or any individual state defendant.

[5] Plaintiffs seek to bring claims against the Redmond Officers in both their personal and official capacities rather than a direct *Monell* claim against the City.  (*See* Prop. SAC ¶¶ 101-51.) However, an official-capacity claim is functionally the same as a *Monell* claim, *see Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985), and Plaintiffs structure their proposed complaint as if bringing a *Monell* claim directly against the City (*see* Prop. SAC ¶¶ 119-30).

# III.   ANALYSIS

## A.   Legal Standard

A "court should freely give leave [to amend a pleading] when justice so requires," Fed. R. Civ. P. 15(a)(2), "because the purpose of [Federal Rule of Civil Procedure 15] is to facilitate decision on the merits, rather than on the pleadings or technicalities," *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (internal quotation marks omitted). Accordingly, this rule should be interpreted and applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). In doing so, courts typically consider five factors:  (1) futility of amendment, (2) prejudice to the opposing party, (3) undue delay, (4) bad faith, and (5) whether the party previously amended its complaint. *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015) (citing *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)). Here, the City does not argue that Plaintiffs' proposed amendments are brought in bad faith, there has been any undue delay, or Plaintiffs previously amended their claims against the City. (*See generally* Resp.) Thus, the court addresses only the futility of amendment and prejudice when considering the motion to amend.

A court does not weigh all factors equally, however, because futility alone justifies denying leave to amend. *Novak*, 795 F.3d at 1020 (citing *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *see Gamez v. Ryan*, No. CIV 12-00760 PHX RCB MEA, 2012 WL 8015674, at *2 (D. Ariz.

Nov. 21, 2012) (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("A claim in a proposed amended complaint is futile if it would be immediately subject to dismissal pursuant to Rule 12(b)(6) . . . for failure to state a claim . . . .").

Prejudice to the opposing party is another "critical factor." *Keiter v. Penn Mut. Ins. Co.*, 900 F. Supp. 1339, 1342 (D. Haw. 1995) (citing *Jordan v. Cty. of L.A.*, 669 F.2d 1311, 1324 (9th Cir. 1982)). "Prejudice typically arises where the opposing party is surprised with new allegations which require more discovery or will otherwise delay resolution of the case." *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1080 (N.D. Cal. 2006) (citing *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398-99 (9th Cir. 1986)). Thus, amendments proposed early in the proceedings are less likely to be prejudicial. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187-88 (9th Cir. 1987) ("Given that this case is still at the discovery stage with no trial date pending, nor has a pretrial conference been scheduled, there is no evidence that [the defendant] would be prejudiced by the timing of the proposed amendment."). The party opposing amendment bears the burden of showing prejudice. *Id.* at 187.

**B.    Motion to Amend**

Plaintiffs argue, and the City does not dispute, that the proposed amendments are offered in good faith and without any undue delay. (Mot. at 5-6; *see generally* Resp. (Dkt. # 63).) Plaintiffs also argue that the proposed amendments are not futile and that they will not result in any prejudice to the City because discovery has not begun, no trial date has been set, the same counsel has represented the City since this suit commenced,

and the claims alleged arise out of events with which the City is already familiar.  (Mot. at 6.)  The City responds that the proposed amendments are futile, prejudicial, or both. (Resp. at 3.)  For the reasons below, the court grants leave to amend the complaint to allege the proposed Section 1983 violations and the tort of malicious prosecution against the City.  However, the court denies leave to add the proposed claims for IIED, negligent investigation, negligent supervision, and abuse of criminal legal process.  The court now addresses each proposed claim in turn.

      1.  <u>42 U.S.C. § 1983 Claims</u>

Plaintiffs propose to bring amended Section 1983 claims against the City both by bringing a *Monell* claim and by suing the Redmond Officers in their official capacities. (*See* Prop. SAC ¶¶ 101-51.)  The proposed claims allege violations of Plaintiffs' Fourth and Fourteenth Amendment rights as a result of the City's policies, practices, or customs. (*See id.*)  In addition, Plaintiffs previously amended their complaint as of right to add personal-capacity claims under Section 1983 against the Redmond Officers for alleged violations of Plaintiffs' constitutional rights.  (*See* FAC ¶¶ 101-51; 10/16/17 Order at 4.)

The City argues that Plaintiffs' proposed Section 1983 claims are "futile[] and [that] requiring its police officers to defend against them is prejudicial to the City." (Resp. at 4.)  It argues that the claims are futile because the claims against Officer D'Amico are barred by qualified immunity and the claims against then-Police Chief Gibson and then-Assistant Chief Wilson are barred by the applicable statute of limitations.  (*Id.* at 4-7.)  In addition, the City argues that it is prejudiced because its "police chief is forced to expend time defending against [these] frivolous claim[s]."  (*Id.*

at 7.)  Plaintiffs reply that the claims against the City are not time-barred (Reply (Dkt. # 68) at 3) and that the asserted qualified immunity defense for the Redmond Officers is not at issue because Plaintiffs seek leave to amend against the City only (*see id.*; *see also* 10/16/17 Order at 4).[6]  Because the City's arguments focus on the futility of amending claims against the Redmond Officers—rather than the City—the court agrees with Plaintiffs and, thus, grants leave to amend their Section 1983 claims against the City.

To state a claim under Section 1983, a plaintiff must plead facts giving rise to an inference that (1) he or she suffered a violation of rights either protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state or federal law.  *See, e.g.*, *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  Individuals can be held personally liable for constitutional violations under Section 1983.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  However, a municipality cannot be held vicariously liable under Section 1983 for an individual employee's conduct.  *Bryan Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 689).  As a result, establishing municipal liability under Section 1983 requires that a plaintiff either sue the municipality directly—i.e.,

//

---

[6] Plaintiffs also argue that a motion to dismiss is the proper vehicle to address the City's arguments.  (Reply at 3.)  The court notes that the City and the Redmond Officers filed such a motion on October 31, 2017.  (*See generally* Redmond MTD (Dkt. # 66).)  The court further notes that the City's arguments about the futility of Plaintiffs' claims are substantially similar—if not identical—to its arguments in favor of dismissal.  (*Compare, e.g.*, Resp. at 4 ("Plaintiffs' theories of equal-protection and due-process violations are barred by qualified immunity."), *with* MTD at 8 ("Plaintiffs' theories of equal-protection and due-process violations are barred by qualified immunity.").)  At this time, only the motion for leave to amend is before the court. (*See* Redmond MTD at 1 (stating a noting date of December 1, 2017).)

bring a *Monell* claim—or that the plaintiff sue an individual municipal employee in his or her official capacity. *See Graham*, 473 U.S. at 167 n.14.

Here, the City's arguments are inapposite because the City addresses the personal-capacity claims against the Redmond Officers when only the official-capacity claims are before the court. First, the City's qualified immunity arguments do not apply because "[q]ualified immunity does not shield municipalities from liability." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Owen v. City of Independence*, 445 U.S. 622, 657 (1980)). Thus, the City's invocation of qualified immunity does not shield the City from liability, and any question of the Redmond Officers' qualified immunity is not properly before the court. (Resp. at 4-6); s*ee Graham*, 473 U.S. at 166-67; *see also Novak*, 795 F.3d at 1020. Second, the City's argument that all claims against Chiefs Gibson and Wilson are time-barred (Resp. at 6) is irrelevant because the validity of those personal-capacity claims is also not presently before the court.[7] Moreover, the City does not directly address the futility of the proposed official-capacity claims against it. (*See generally* Resp.) Plaintiffs aver that these proposed claims against the City are not futile and the City advances no argument to the contrary. (Mot. at 6; *see* Resp. at 4-6.) Accordingly, the court concludes that the proposed amendments to Plaintiffs' Section 1983 claims are not futile.

//

---

[7] The court does not determine here whether February 18, 2017, or April 9, 2017, were, as Defendants indicate, the latest possible dates to file Section 1983 claims against Chiefs Gibson and Wilson. (*See* Resp. at 11-12.) Regardless, Plaintiffs initially filed their action against the City prior to those dates. *See Chen*, No. C17-0569JLR, Redmond Compl. at 16.

The City's remaining argument is that allowing amendment would be prejudicial either because of (1) the burden on the Redmond Officers from defending against Plaintiffs' claims or (2) the asserted futility of the proposed amendments. (Resp. at 4-7.) The City bears the burden of proving prejudice, *DCD Programs*, 833 F.2d at 187, but does not do so here. First, the City's argument that amendment will burden the Redmond Officers fails because the instant motion has no bearing on Plaintiffs' claims against the Redmond Officers. *See supra* pp. 9-10. Regardless, defending against a lawsuit is not the kind of prejudice this factor addresses. *See Sharper Image*, 425 F. Supp. 2d at 1080. Moreover, the City fails to explain how it will be prejudiced when allowing amendment will not delay proceedings. *See id.*; *DCD Programs*, 833 F.2d at 187-88. Finally, the City argues that the futility of Plaintiffs' proposed amendments renders the amendments prejudicial, but this argument conflates two separate lines of inquiry. *See Bonin*, 59 F.3d at 845 (considering futility and prejudice as separate factors). Because the City demonstrates neither futility nor prejudice, the court grants Plaintiffs leave to amend their Section 1983 claims against the City.

2. Malicious Prosecution

The City next argues that Plaintiffs' proposed malicious prosecution claim, which seeks to hold the City vicariously liable for the Redmond Officers' conduct, is futile because their proposed complaint cites an inapplicable statute as authority for the proposed claim. (Resp. at 7-8.) The City also argues that Plaintiffs' claim is futile because the King County Prosecuting Attorney—not a Redmond Officer—instituted the

//

criminal prosecution against Ms. Chen. (Resp. at 11; *see* Prop. SAC ¶¶ 267-78.)[8]

Plaintiffs acknowledge the incorrect citation but argue that they nevertheless adequately

allege the elements of the equivalent common law tort. (Reply at 4.) They also reply that

they are not limited to bringing a malicious prosecution claim against a prosecutor. (*Id.*

at 6.) The court agrees with Plaintiffs and, accordingly, grants them leave to assert this

claim against the City.

The tort of malicious prosecution allows a plaintiff to recover for "unjustifiable

criminal proceedings" and "wrongfully initiated" civil actions. *Clark v. Baines*, 84 P.3d

245, 248 (Wash. 2004). Washington recognizes two similar, but distinct, claims for

malicious prosecution. One arises at common law. *Id.* The other arises from a statute

and may be brought only as part of an existing action. *See* RCW 4.24.350(1). Although

the two claims are distinct, both require a showing of malice or lack of probable cause.

*See id.*; *Clark*, 84 P.3d at 249. In addition, Washington law does not require that a

malicious prosecution claim be brought only against a prosecuting attorney. *Cf. Odom v.*

*Williams*, 446 P.2d 335, 337-38 (Wash. Ct. App. 1968) (affirming a judgment that a

private individual instituted a malicious prosecution by filing a false criminal complaint);

*Hanson v. City of Snohomish*, 852 P.2d 295, 298 (Wash. 1993) (stating a malicious

prosecution claim against a city based on police actions).

//

---

[8] Both parties conflate the tort of abuse of legal process with the tort of malicious prosecution. *See infra* § III.B.6 (explaining the tort of abuse of legal process). Thus, the court considers the parties' arguments about abuse of legal process as arguments regarding malicious prosecution and addresses them here.

When bringing a claim for malicious prosecution of a criminal proceeding, a plaintiff must allege:

> (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Clark*, 84 P.3d at 248 (citing *Hanson*, 852 P.2d at 298). However, a plaintiff "is not required to state the statutory or constitutional basis for his claim, only the facts underlying it," *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990), *superseded by rule on other grounds as recognized by Harmston v. City & Cty. of S.F.*, 627 F.3d 1273 (9th Cir. 2010), because Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2); *see Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[U]nder the Federal Rules of Civil Procedure, a complaint need not pin [a] plaintiff's claim for relief to a precise legal theory."). Accordingly, "[a] complaint does not need to identify the legal theory under which a [p]laintiff seeks recovery." *Finical v. Collections Unlimited, Inc.*, 65 F. Supp. 2d 1032, 1047 (D. Ariz. 1999) (citing *McCalden*, 955 F.2d at 1223). In *Finical*, the plaintiff cited the wrong provision of a statute in her complaint, but the court concluded that the "allegations in the amended [c]omplaint provided ample notice of the actual claim despite the incorrect statutory citation." *Id.* at 1048.

Because the court declines to find Plaintiffs' proposed amendment futile solely due to an incorrect citation, the issue before the court is whether the proposed amendment

provides the City sufficient notice of the claim alleged. The proposed amendment does so because it sets forth legal and factual allegations tantamount to a common law claim of malicious prosecution. *See Clark*, 84 P.3d at 248; (*see generally* Prop. SAC.) According to Plaintiffs, Officer D'Amico instituted a malicious prosecution against Ms. Chen by filing a false and unfounded probable cause affidavit. (Prop. SAC ¶¶ 85, 188-204.) The Prosecuting Attorney later dropped the criminal charges against Ms. Chen (*id.* ¶ 88), and Plaintiffs allege injuries as a result of the prosecution (*id.* ¶¶ 93-99). Plaintiffs further assert that the City is vicariously liable for the Redmond Officers' actions in instituting the allegedly malicious prosecution. (*Id.* ¶¶ 205-09.) As in *Finical*, the Plaintiffs' factual and legal allegations sufficiently notify the City of the intended claim—especially because the statutory and common law causes of action share the same name. *See* 65 F. Supp. 2d at 1048. Accordingly, the court grants Plaintiffs leave to amend to assert the proposed malicious prosecution claim against the City.

3. <u>IIED</u>

The City next argues that the court should deny Plaintiffs leave to assert an IIED claim because they mistakenly propose the IIED claim against the City. (Resp. at 8-9.) To support its argument, the City identifies contradictory factual allegations in the proposed complaint regarding Plaintiffs' IIED claims. (*Id.*) Alternatively, the City requests that the Plaintiffs clarify this possible mistake. (*Id.*) In their reply, Plaintiffs claim that the proposed amended complaint alleges that the City is vicariously liable for the Redmond Officers' IIED due to the "unnecessary RPD investigation [and] the outrageous manner in which RPD's officers conducted that investigation." (Reply at 4-5

(citing Prop. SAC ¶¶ 77, 216).)  Plaintiffs clarify the seeming factual contradictions

within the proposed amendments by indicating that paragraphs 77 and 216 of the

complaint establish the facts for the legal allegations made in paragraphs 223, 224, and

225.  (*See id.*; *see also* Prop. SAC ¶¶ 77, 216-17, 224.)  Nevertheless, based on the

pleadings and Plaintiffs' clarification, the court concludes that this proposed amendment

is futile.

Pleading IIED requires factual allegations that support three elements:

"(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional

distress, and (3) actual result to plaintiff of severe emotional distress."  *Kloepfel v. Bokor*,

66 P.3d 630, 632 (Wash. 2003).  The alleged conduct must be so extreme "as to go

beyond all bounds of decency . . . and [be] utterly intolerable in a civilized community."

*Id.*  In *Spurrell v. Bloch*, the parent-plaintiffs alleged that the defendants, who included

DSHS and the plaintiffs' local police department, committed the tort of outrage by

conducting a welfare check on the plaintiffs' children after the school nurse reported her

concerns about one of the children to DSHS.  701 P.2d 529, 532-35 (Wash. Ct. App.

1985).  The court affirmed the trial court's dismissal of the claim because "these facts do

not come anywhere near the elements [of outrage]." *Id.* at 535 (internal citation omitted).

Plaintiffs fail to make any factual allegations giving rise to a reasonable inference

of extreme and outrageous conduct.  The entirety of Plaintiffs' proposed IIED claim is as

follows:

> 77.  In early 2014, [individual state defendants] intentionally, maliciously, or
> recklessly informed RPD that L.L. failed to attend school and was at a
> shopping mall with Ms. Chen when in fact L.L. had been at school, and

instructed RPD to perform an unnecessary welfare check on L.L. at Plaintiffs' residence. RPD officers investigated at Plaintiff's residence and discovered the allegation to be false. RPD's appearance at the residence caused great distress to Plaintiffs.

. . . .

216. [Individual state defendants] intentionally reported false information to RPD that L.L. was truant from school in early 2014, which led RPD to investigate Plaintiffs' residence and cause severe distress to Plaintiffs.

. . . .

223. Defendants D'Amico, Gibson, Wilson, and John Does A through D were acting within the scope of their employment when they wrongfully deprived Plaintiffs of their parental custody of L.L. and J.L.

224. Defendants D'Amico, Gibson, Wilson, and John Does A through D were acting within the scope of their employment when they wrongfully reported Plaintiffs to RPD based on a false allegation of L.L.'s truancy.

225. Defendants D'Amico, Gibson, Wilson, and John Does A through D were acting within the scope of their employment when they wrongfully sent a CPS social worker to visit L.L. repeatedly at school.

(Prop. SAC ¶¶ 77, 216, 223-25.)

Even construing the proposed amendment with extreme liberality, the City's alleged conduct is far from outrageous because Plaintiffs do not allege any conduct that is "utterly intolerable in a civilized community." *Kloepfel*, 66 P.3d at 632. As in *Spurrell*, Plaintiffs only allege involvement by the City and the Redmond Officers at DSHS's behest. *Compare Spurrell*, 701 P.2d at 532-35 (welfare check by police at the request of DSHS), *with* (Prop. SAC ¶¶ 77, 216 (same)). Plaintiffs' proposed amendment is futile because the IIED claim against the City—as alleged—would be subject to immediate dismissal for failure to state a claim. *See Gamez*, 2012 WL 8015674, at *2. Accordingly, the Court denies leave to amend this proposed claim.

//

//

4. <u>Negligent Investigation</u>

Plaintiffs also propose to amend the complaint to allege that the City was negligent in investigating Plaintiffs for the same reasons and in the same manner as DSHS and the individual state defendants. (Prop. SAC ¶¶ 228-39.) Plaintiffs cite RCW 26.44.050 to establish the Defendants' "duty to investigate child abuse" and "the cause of action that arises" when Defendants breach that statutory duty. (*Id.* ¶¶ 233-34.) However, this statutory duty does not extend to the City, and thus the proposed claim is futile.

DSHS has both common law and statutory duties to avoid negligently harming a child. *See M.W. v. Dep't of Soc. & Health Servs.*, 70 P.3d 954, 959-60 (Wash. 2003). In addition to the general common law duty of reasonableness, RCW 26.44.050 imposes a statutory duty on the agency and creates an implied right of action against DSHS for harm to a child who was injured as a result of DSHS negligently placing him or her in an unsafe home. *Id.* at 960. This "narrow" statutory duty is limited to DSHS because Washington's "courts have not recognized a general tort claim for negligent investigation." *Id.*; *Fondren v. Klickitat Cty.*, 905 P.2d 928, 934 (Wash. Ct. App. 1995) (affirming the dismissal of a negligent investigation claim arising from a police investigation because that claim "is not cognizable under Washington law"). Thus, the court concludes that Plaintiffs' negligent investigation claim against the City is futile and, accordingly, denies leave to amend.

//

//

5. <u>Negligent Supervision</u>

The City next argues that Plaintiffs' proposed negligent supervision claim against the City is futile because Plaintiffs do not allege any instance in which the Redmond Officers acted outside the scope of their employment. (Resp. at 10.) Plaintiffs counter that (1) they merely allege alternative theories of liability when they assert that the Redmond Officers acted under color of law and within the scope of their employment, and (2) that the proposed claim should be allowed because they amended the FAC as a matter of right as to the Redmond Officers. (Reply at 5-6.) The court agrees with the City and denies leave to amend this claim.

When an employee acts outside the scope of his or her employment, the employer has "a limited duty to control an employee" for the benefit of others, and this duty can give rise to claims of negligent supervision. *LaPlant v. Snohomish Cty.*, 271 P.3d 254, 256 (Wash. Ct. App. 2011). Thus, any claim of negligent supervision must allege that an employee acted outside the scope of his or her employment in causing the plaintiff's injury. *Id.*; *Niece v. Elmview Grp. Home*, 929 P.2d 420, 426 (Wash. 1997). Conduct outside the scope of employment is "not performed in furtherance of the employer's business" and involves "the employee's 'wholly personal motive.'" *Evans v. Tacoma Sch. Dist. No. 10*, 380 P.3d 553, 559 (Wash. Ct. App. 2016) (quoting *Thompson v. Everett Clinic*, 860 P.2d 1054, 1058 (Wash. Ct. App. 1993)). On the other hand, an employee acts within the scope of her employment when she is (1) engaged in contractual duties or fulfilling her job functions, or (2) engaged in advancing her employer's interests. *Id.* (citing *Robel v. Roundup Corp.*, 59 P.3d 611, 621 (Wash. 2002)).

Plaintiffs fail to allege any conduct by any of the Redmond Officers that falls outside the scope of their employment. (*See generally* Prop. SAC.) Plaintiffs allege harms from the Redmond Officers' conduct when they performed welfare checks on J.L. and L.L. (*id.* ¶¶ 45-46), removed the children from their home following Plaintiffs' meeting with Child Protective Services (*id.* ¶¶ 48-49), investigated allegations of child neglect (*id.* ¶¶ 59-64), and filed probable cause paperwork based on that investigation (*id.* ¶¶ 65-73, 85-92). Indeed, the entirety of the Redmond Officers' alleged conduct falls within the scope of their employment. *See Evans*, 380 P.3d at 559; (*see e.g.*, *id.*). Although Plaintiffs are correct that they are free to argue different theories of liability, *see* Fed. R. Civ. P. 8(d)(3), their factual allegations do not support this particular alternative theory. Thus, the court concludes that Plaintiffs' proposed claim of negligent supervision against the City is futile and denies leave to amend.[9]

6. Abuse of Criminal Legal Process

Finally, the City argues that proposed abuse of criminal legal process claim is futile because the King County Prosecutor, rather than Officer D'Amico, instituted the prosecution against Ms. Chen. (Resp. at 11.) In support of this proposed claim, Plaintiffs assert that "[Ms.] Chen is entitled to a judgment of vicarious liability against [the City] as a result of [the Redmond Officers'] institution of a malicious prosecution against [Ms.]

---

[9] Plaintiffs' mischaracterization of RPD as a legal entity capable of being sued may have led to their incorrect position that they added this claim to the FAC as a matter of right. (*See* Reply at 5.) Thus, Plaintiffs bring this claim solely against the City and not against any of the Redmond Officers. (*See* Prop. SAC ¶ 249.) Because the court previously struck this claim in its entirety as to the City (*see* 10/16/17 Order at 4), its futility means it may not be brought against the City in the second amended complaint.

Chen without probable cause." (Prop. SAC ¶ 278.)  Further, Plaintiffs respond to the City's argument by noting that their "abuse of criminal legal process or malicious prosecution claim" is not limited to claims against a prosecutor.  (Reply at 6.)  Both parties, however, misunderstand the tort of abuse of legal process.

Although abuse of legal process and malicious prosecution share "a kindred nature," they are distinct claims.  *Rock v. Abrashin*, 280 P. 740, 741 (Wash. 1929).  Abuse of legal process arises when someone "uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed," thereby harming another.  *Sea-Pac Co., Inc. v. United Food & Commercial Workers Local Union 44*, 699 P.2d 217, 220 (Wash. 1985) (quoting Restatement (Second) of Torts § 682 (1977)).  Instituting a legal proceeding—even if done maliciously—does not constitute abuse of process because the tort requires the misuse of a legal process.  *Id.*  Accordingly, a claim for abuse of legal process must allege "(1) an ulterior purpose to accomplish an object not within the proper scope of the process, (2) an act not proper in the regular prosecution of proceedings, and (3) harm proximately caused by the abuse of process."  *Bellevue Farm Owners Ass'n v. Stevens*, 394 P.3d 1018, 1024 (Wash. Ct. App. 2017).

Plaintiffs fail to allege facts supporting the first two elements of this claim because they do not appear to have intended to plead this particular tort.  (*See* Prop. SAC ¶¶ 268-78 (pleading the elements of malicious prosecution under a heading for abuse of legal process).)  Because Plaintiffs fail to state a claim for abuse of legal process, the

//

court concludes that the claim is futile and denies leave to amend.  *See Novak*, 795 F.3d at 1020.

### 7.  Scope of Plaintiffs' Second Amended Complaint

In accordance with this order, Plaintiffs may file a second amended complaint that includes the following claims against the City:  claims brought under 42 U.S.C. § 1983 (*see* Prop. SAC ¶¶ 101-151) and for malicious prosecution[10] (*id.* ¶¶ 187-209, 267-78). Plaintiffs may not include the proposed claims against the City for IIED (*see id.* ¶¶ 223-25), negligent investigation (*see id.* ¶ 239), negligent supervision (*see id.* ¶¶ 241-42, 245-46, 249), or abuse of criminal legal process (*see id.* ¶¶ 267-78).  Plaintiffs must file a second amended complaint that complies with this order within seven (7) days of the entry of this order.  The second amended complaint will serve as the operative complaint as to all defendants named in the action.

//

//

//

//

//

//

---

[10] When considering Plaintiffs' malicious prosecution claim, the court construed the pleadings and various briefings discussing "abuse of criminal legal process" as addressing malicious prosecution because both parties did so.  *See supra* § III.B.6.  Plaintiffs may incorporate the substance of their purported "abuse of criminal legal process" claim into their claim for malicious prosecution to the extent that the allegations relate to malicious prosecution. (*See* Prop. SAC ¶¶ 267-78.)

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part the

Plaintiffs' motion for leave to amend (Dkt. # 58).

Dated this 29th day of November, 2017.

_____
JAMES L. ROBART
United States District Judge