UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN CHEN, et al.,

                    Plaintiffs,

          v.

NATALIE D'AMICO, et al.,

                    Defendants.

CASE NO. C16-1877JLR

ORDER ON MOTION TO
DISMISS

## I.    INTRODUCTION

Before the court is Defendants City of Redmond ("the City"), Redmond Police

Department ("RPD"), RPD Officer Natalie D'Amico, former RPD Chief Ron Gibson,

and former RPD Assistant Chief Kristi Wilson's (collectively, "City Defendants") motion

to dismiss certain claims.  (MTD (Dkt. # 79).)[1]  Plaintiffs Susan (Shiying) Chen,

---

[1] Prior to filing the present motion, four of the five City Defendants filed a motion to
dismiss Plaintiffs' first amended complaint.  (*See* Moot MTD (Dkt. # 66); FAC (Dkt. # 21).)
The City did not join in that motion because the court had stricken the amended complaint
against the City.  (*See* 10/16/17 Order (Dkt. # 53) at 6; 10/23/17 Order (Dkt. # 60) at 1-2.)

Naixiang (Nash) Lian, J.L, and L.L. (collectively, "Plaintiffs") filed a response (Resp. (Dkt. # 81)), City Defendants filed a reply (Reply (Dkt. # 82)), and Plaintiffs filed a notice of supplemental authority (Notice (Dkt. # 84)). The court has considered the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised,[2] the court GRANTS in part and DENIES in part City Defendants' motion to dismiss with leave to amend as described herein.

## II. BACKGROUND

Ms. Chen and Mr. Lian are the parents of J.L. and L.L. (SAC ¶¶ 3-6.) J.L. was born in 2008, and L.L. was born in 2010. (Id. ¶¶ 5-6.) In 2012, J.L. was diagnosed with gastrointestinal ("GI") problems and Autism Spectrum Disorder. (Id. ¶¶ 24-25.) From September 2012 to October 2013, Plaintiffs took J.L. to a number of clinics at Seattle Children's Hospital ("SCH"), as well as a naturopath, to address his GI issues. (Id. ¶¶ 27-33.)

//

---

Subsequent to that motion, the court granted in part Plaintiffs' motion for leave to amend (see 11/30/17 Order (Dkt. # 73) at 20-21), and Plaintiffs filed a second amended complaint (SAC (Dkt. # 76)). The second amended complaint is now the operative complaint, rendering moot the City Defendants' initial motion to dismiss. (See MTD at 2 (acknowledging mootness of the first motion to dismiss); Lacey v. Maricopa Cty., 693 F.3d 896, 927 (9th Cir. 2012) (en banc) (recognizing the general rule that an amended complaint supersedes a previously filed complaint "and renders it without legal effect"). The court therefore DENIES that motion (Dkt. # 66) as moot.

[2] The parties do not request oral argument (see MTD at 1; Resp. at 1), and the court determines that oral argument would not be helpful to its disposition of the motion, see Local Rules W.D. Wash. LCR 7(b)(4).

On or about October 19, 2013, J.L. suffered significant GI problems. (*Id.* ¶ 34.) Ms. Chen and Mr. Lian took J.L. to a number of clinics to have blood work done because of creatinine levels in his blood that could harm his kidneys. (*Id.* ¶¶ 34-36.) The first two clinics Plaintiffs went to refused to perform blood work. (*Id.*) SCH Urgent Care Clinic, the third location Plaintiffs visited, agreed to perform the blood work and inform Plaintiffs of any abnormal results. (*Id.* ¶ 36.)

The next day, Ms. Chen took J.L. back to SCH Urgent Care Clinic because his condition had not improved. (*Id.* ¶ 38.) Upon returning to the clinic, Ms. Chen learned that J.L.'s blood work from the previous day revealed dangerously high creatinine levels. (*Id.*) The clinic recommended that Ms. Chen take J.L. to the emergency room ("ER"). (*Id.*) The clinic had not notified Ms. Chen about the blood work results before she brought J.L. back the following day. (*Id.*)

Based on the clinic's recommendation, Ms. Chen and Mr. Lian took J.L. to the emergency room at SCH. (*Id.*) Medical staff supervised J.L.'s condition for several hours and discharged him later that night. (*Id.* ¶ 39.) They advised Ms. Chen and Mr. Lian to follow up with Dr. Halamay—who was not J.L.'s typical primary care doctor—in one to three days. (*Id.*)

After their visit to the ER at SCH, Ms. Chen took J.L. to see Dr. Halamay on October 23, 2013. (*Id.* ¶ 41.) Dr. Halamay "took the positon that Ms. Chen should take J.L. to the SCH emergency department for admission" based on an inaccurate belief that Mr. Chen and Mr. Lian had not already taken J.L. to the ER just a few days before. (*Id.*) Plaintiffs contend that "[a]fter Ms. Chen expressed her dissatisfaction with Dr.

Halamay's treatment of her and J.L." and left a complaint about the treatment with the receptionist, Dr. Halamay referred J.L's case to DSHS's Child Protective Services ("CPS"). (*Id.*)

CPS visited Plaintiffs' home on October 23, 2013, to investigate Dr. Halamay's allegation. (*Id.* ¶ 43.) The CPS social worker convinced Ms. Chen and Mr. Lian to take J.L. to SCH, where he was found to be malnourished and subsequently placed into protective custody. (*Id.* ¶¶ 43-44.) On October 24, 2013, Officer D'Amico and an unidentified RPD officer searched Ms. Chen and Mr. Lian's apartment without a warrant or an interpreter. (*Id.* ¶ 46.) RPD then removed L.L. from Ms. Chen and Mr. Lian's custody.[3] (*Id.* ¶¶ 48-49.)

Soon after the children's removal, Officer D'Amico led an investigation into possible child neglect by Ms. Chen. (*Id.* ¶ 59.) On December 9, 2013, Officer D'Amico signed a probable cause affidavit to file criminal charges against Ms. Chen. (*Id.* ¶ 65.) Plaintiffs allege that the affidavit, made upon Officer D'Amico's knowledge, contained untrue statements and omitted exculpatory information. (*Id.* ¶¶ 66-72.) On December 13, 2013, Officer D'Amico sent her investigation report and probable cause affidavit to the King County Prosecuting Attorney, whose office filed a criminal information against Ms. Chen on January 31, 2014. (*Id.* ¶¶ 85-86.) In early 2014, Ms. Chen was arraigned, imprisoned for one day, and released without bail.[4] (*Id.* ¶ 87.) Mr. Lian was not charged

---

[3] A court later terminated the dependency action DSHS instituted. (*Id.* ¶ 79.)

[4] Plaintiffs do not allege specific dates for these events. (*Id.*)

with any crime arising from the alleged neglect.  (*See id.* ¶ 21.)  On September 19, 2014, the Prosecuting Attorney's office dropped the charges against Ms. Chen.  (*Id.* ¶ 88.)

Plaintiffs allege various constitutional violations pursuant to 42 U.S.C. § 1983 and violations of Washington State law by City Defendants and unnamed John Does A-D; Defendant Washington State Department of Social and Health Services ("DSHS"); and 10 named and unnamed DSHS employees.[5]  (SAC ¶¶ 7-20.)  Relevant to City Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs assert the following constitutional claims: (1) violation of Ms. Chen's Fourth and Fourteenth Amendment rights due to her arrest and prosecution without probable cause (*id.* ¶¶ 110-11); (2) violation of Ms. Chen's Fourteenth Amendment due process right based on Officer D'Amico's failure "to use an interpreter to obtain reliable and accurate testimony from Ms. Chen" (*id.* ¶ 112); (3) violation of Ms. Chen's right to equal protection of the law due to selective prosecution and failure to provide Ms. Chen "an opportunity to provide exculpatory testimony obtained without an interpreter" (*id.* ¶¶ 114-15); and (4) violation of J.L.'s Fourteenth Amendment due process rights (*id.* ¶ 113).  Plaintiffs also bring claims against the City and RPD for those same constitutional violations pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); claims of supervisory liability against Chief Gibson and Assistant Chief Wilson based on their roles in the constitutional violations; and a claim of

_____

[5] At this time, only City Defendants challenge the sufficiency of Plaintiffs' complaint. (*See* Not. (Dkt. # 78) at 1 (withdrawing Defendants Kimberly R. Danner, Timothy Earwood, Jill Kegel, Bill Moss, Kevin W. Quigley, Tom Soule, and DSHS's motion to dismiss).)  For that reason, the court does not address the claims against the other defendants.

malicious prosecution against Officer D'Amico, Chief Gibson, and Assistant Chief Wilson. (*Id.* ¶¶ 119-41, 187-209.) The court now addresses City Defendants' motion to dismiss. (*See* MTD.)

## III.    ANALYSIS

### A.    Legal Standard

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although a plaintiff does not have to make "detailed factual allegations," a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, a complaint must include sufficient factual allegations to "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), the court can dismiss a complaint based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor, *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

**B.      The Motion to Dismiss**

City Defendants first argue for dismissal of Plaintiffs' claims against the City for failure to adequately allege municipal liability.  (MTD at 6-9.)  They further contend that leave to amend those claims would be futile because Plaintiffs cannot plead the underlying constitutional violations.  (*Id.* at 9-13.)  City Defendants then argue that (1) qualified immunity bars Plaintiffs' Section 1983 claims against Officer D'Amico, Chief Gibson, and Assistant Chief Wilson; (2) the applicable statute of limitations bars those same claims against Chief Gibson and Assistant Chief Wilson; and (3) Plaintiffs fail to adequately plead a claim of supervisory liability against Chief Gibson and Assistant Chief Wilson.[6]  The court addresses the claims against the City first, followed by the claims against the officers.

1.  Municipal Liability

Defendants contend that Plaintiffs fail to plead municipal liability for their Section 1983 claims because the complaint lacks sufficient detail regarding a City policy causing the constitutional violations.  (MTD at 7.)  Plaintiffs claim that the City is responsible for Officer D'Amico's alleged constitutional violations because the City failed to (1) adopt and implement policies (SAC ¶ 122-23), and (2) train or supervise RPD officers to ensure

---

[6] City Defendants also move to dismiss Plaintiffs' request for punitive damages against the City and to dismiss RPD as a party to the case.  (MTD at 5-6, 13-14.)  Plaintiffs do not object to those requests.  (Resp. at 22 (stating that "Plaintiffs do not object to the dismissal of their prayer for punitive damages solely as to their direct claims against the City" or "to the dismissal of their separate claims against RPD).)  The court therefore grants City Defendants' motion to dismiss RPD from the suit and Plaintiffs' request for punitive damages.  (*See* 11/30/17 Order (Dkt. # 73) at 2 n.2 (stating that because the RPD is a City department, it cannot be sued in its individual capacity)); *Ruvalcaba v. City of L.A.*, 167 F.3d 514, 524 (9th Cir. 1999) (stating that a plaintiff cannot recover punitive damages from a municipality as a matter of law).

constitutional practices (*id.* ¶ 124).  Plaintiffs assert that the City failed to adopt or

implement policies and to train and supervise regarding (1) preparing "probable cause

affidavits that do not contain material falsehoods or omissions"; (2) accounting for

"exculpatory evidence in order to refrain from prosecuting persons without probable

cause"; (3) not targeting "persons for investigation and prosecution on the basis of gender

or national origin or ethnicity"; (4) not using "unreliable testimony obtained from

witnesses who are not English proficient for use in prosecution unless there was a

qualified interpreter present at the interrogation"; and (5) providing "prosecutors with

exculpatory information to terminate criminal and/or dependency proceedings in order to

halt prosecutions not founded upon probable cause."  (*Id.* ¶¶ 122-24.)  In response to City

Defendants' motion, Plaintiffs argue that their complaint adequately pleads both that the

City's actions and inactions led to the constitutional violations asserted.  (Resp. at 5.)

The court addresses both theories of municipal liability, as well as City Defendants'

contentions regarding leave to amend these claims.

### a.  Policy, Custom, or Practice

To state a claim against a municipality under Section 1983, a plaintiff must allege

facts supporting the reasonable inference that a municipality adopted a policy, custom, or

practice that amounted to deliberate indifference to the plaintiff's constitutional right and

resulted in a deprivation of the constitutional right.  *See Monell*, 436 U.S. at 691-92; *see

also Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).  A

plaintiff can plead a policy by supplying sufficient facts demonstrating that the

municipality (1) adopted an official policy or had an established custom that led to the

constitutional violation, (2) failed to act in a way that amounts to a policy of deliberate

indifference to constitutional rights, or (3) that an official with final policy-making

authority committed the constitutional violation or ratified a subordinate's violation. *See*

*Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010), *overruled on*

*other grounds by Castro v. Cty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016). A plaintiff's

allegations "may not simply recite the elements" of municipal liability and instead must

"put forth additional facts regarding the specific nature" of the alleged policy and its

relationship to the alleged constitutional violation. *AE ex rel. Hernandez v. Cty. of*

*Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

Under that standard, Plaintiffs fail to sufficiently allege facts from which the court

can reasonably infer a municipal policy, custom, or practice. (*See generally* SAC.) Their

complaint alleges only that "customs, longstanding practices, and official policies caused

the deprivation of Plaintiffs' constitutional rights." (*Id.* ¶ 125.) That formulaic recitation

falls far short of the pleading standard. *See AE ex rel. Hernandez*, 666 F.3d at 637;

*Ahmed v. City of Antioch, Cal.*, No. 16-cv-01693-HSG, 2016 WL 8729938, at *5 (N.D.

Cal. July 1, 2016) (dismissing a *Monell* claim where the complaint did nothing more than

use "key buzzwords such as 'conformity,' 'customs,' 'policies,' and 'practices'"); *Alston*

*v. Tassone*, No. CIV S-11-2078 JAM GGH PS, 2012 WL 2377015, at *8 (E.D. Cal. June

22, 2002) (stating that a *Monell* claim "must consist of more than mere formulaic

recitations of the existence of unlawful policy customs or habits"). Thus, Plaintiffs fail to

state a claim based on this theory of municipal liability.

*//*

*b. Inaction*

A municipality can also be liable "if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1997); *see also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) ("A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations."). A plaintiff who asserts this theory of liability faces "heightened requirements" because otherwise "when a municipal employee commits a constitutional tort, it could always be alleged that the municipality failed to enact a policy that would have prevented the tort." *Id.* at 1143-44. Thus, to adequately plead deliberate indifference in this context, a plaintiff must plead facts supporting a reasonable inference that the municipality was on actual or constructive notice that its inaction would likely result in a constitutional violation, *id.* at 1144, and that the inaction was "the result of a conscious or deliberate choice among various alternatives," *Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004) (internal citations omitted).

Plaintiffs also fail to adequately plead facts supporting a theory of municipal liability based on a policy of inaction. Although Plaintiffs identify a lack of policy in five areas (*see* SAC ¶¶ 122-24), the complaint contains no facts regarding whether the City's inaction was the result of a conscious or deliberate choice or that the City knew that the lack of policy in those areas would result in constitutional violations (*see generally id.*). Rather, Plaintiffs merely restate the elements of a *Monell* claim, asserting that the City had "awareness" its "acts and omissions violated Plaintiffs' constitutional rights." (*Id.*

¶ 126.) They also state that the City's "acts and omissions" caused the constitutional deprivation through "deliberate indifference to the risk that [the City's] customs, practices, and policies were inadequate to train RPD officers to prevent deprivation of rights"[7] (*id.* ¶ 127), and the City's failure to adopt such policies was "the moving force that caused the deprivation of Plaintiffs' rights" (*id.*). However, simply invoking the phrases "deliberate indifference" and "moving force"—even when coupled with a statement of the policies Plaintiffs contend that the City should have adopted and enacted—is insufficient to withstand a motion to dismiss. *See Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011) (upholding the dismissal of a complaint that "pointed to no instances of deliberate indifference" or "any facts demonstrating that [the plaintiff's] constitutional deprivation was the result of a custom or practice . . . or that the custom or practice was the 'moving force' behind his constitutional deprivation"); *United Motors Int'l, Inc. v. Hartwick*, No. CV 17-00243 BRO (Ex), 2017 WL 888304, at *14 (C.D. Cal. Mar. 6, 2017) (concluding that the complaint failed to state a *Monell* claim based on omissions or failures to act because it contained no allegations regarding a pattern of constitutional violations sufficient to demonstrate deliberate indifference).

Plaintiffs' failure to train and supervise theory is even more deficient. To adequately plead municipal liability based on a failure to train or supervise, a plaintiff must allege that (1) the current training program is inadequate given the tasks the officers

---

[7] In this regard, Plaintiffs conflate their failure to adopt and implement theory with their failure to train and supervise theory, which the court addresses below.

must perform; (2) the failure to train amounts to deliberate indifference of the rights of the people with whom the officers will come into contact; and (3) the inadequate training actually caused the deprivation of the constitutional right. *See Dougherty*, 654 at 900. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The plaintiff must therefore allege facts that the defendant disregarded known or obvious consequences arising from a particular omission in its training program that would cause its officers to violate constitutional rights. *See Flores v. City of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014).

Here, Plaintiffs do not identify what training and supervision practices are deficient or how the deficiencies harmed Ms. Chen. *See Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149-50 (E.D. Cal. 2009) (concluding that the complaint failed to identify "what the training and hiring practices were, how the training and hiring practices were deficient, or how the training and hire practices caused Plaintiff's harm"). Indeed, Plaintiffs allege only that the City failed to train and supervise officers in the five areas identified above. (SAC ¶ 124.) Nowhere do they allege facts giving rise to the plausible inference that the City's existing training and supervisory programs are deficient. (*See generally id.*) And as with their failure to adopt and implement theory, Plaintiffs state in conclusory fashion that the City's failure amounts to deliberate indifference and was the moving force behind the alleged constitutional violations. (*See id.* ¶¶ 126-27.) For these reasons, Plaintiffs fail to state a Section 1983 claim based on a failure to train and supervise.

Because Plaintiffs' complaint contains insufficient factual allegations giving rise to a reasonable inference of the City's liability, the court grants City Defendants' motion to dismiss Plaintiffs' *Monell* claims.

### c. *Leave to Amend Claims Against the City*

City Defendants argue that the court's dismissal of Plaintiffs' *Monell* claims should be without leave to amend. (MTD at 9-10.) Specifically, they argue that amendment would be futile because Plaintiffs' underlying constitutional claims are deficient.[8] (*Id.*) In essence, City Defendants challenge the sufficiency of the factual allegations supporting the constitutional claims, and the court therefore analyzes whether dismissal of those claims—and if so, leave to amend—is appropriate.

Before embarking on that analysis, the court first notes that futility alone justifies denying leave to amend. *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citing *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). Amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("A claim in a proposed amended complaint is futile if it would be immediately subject to dismissal pursuant to Rule 12(b)(6) . . . .").

---

[8] City Defendants challenge only Ms. Chen's claims related to the failure to use an interpreter, for selective prosecution based on gender, and lack of probable cause. (*See id.* at 9-13.) They do not address J.L.'s Fourteenth Amendment due process rights. (*See generally id.*; *see also* SAC ¶ 113.)

i.  National Origin

City Defendants first challenge Plaintiffs' "national-origin claim." (*Id.* at 10.)
City Defendants focus on Plaintiffs' allegations regarding Officer D'Amico's failure to
use an interpreter when interviewing Ms. Chen.  (*Id.* at 10-11; SAC ¶¶ 112, 114-15.)
They argue that there is no constitutional right to an interpreter during a noncustodial
interview, and thus Ms. Chen fails to state a claim—and cannot do so, even with further
amendment—for national origin discrimination.  (*See id.* at 11.)  In response, Plaintiffs
clarify that their constitutional claims referring to Officer D'Amico's failure to use an
interpreter are based in unlawful discrimination, not on a constitutional right to an
interpreter.[9]  (*See* Resp. at 12.)  Based on that clarification, the court construes Plaintiffs'
complaint as pleading only an Equal Protection claim based on national origin
discrimination and accordingly addresses that claim.[10]

The Equal Protection Clause of the Fourteenth Amendment directs that "all
similarly situated persons . . . be treated alike." *City of Cleburne v. Cleburne Living Ctr.*,

---

[9] In any event, although a criminal defendant has a constitutional right to an interpreter in
certain circumstances, the Ninth Circuit has not recognized a right to an interpreter during a
police interview. *See United States v. Mayans*, 17 F.3d 1174, 1180 (9th Cir. 1994) ("Various
cases have recognized a constitutional right to an interpreter."); *see also United States v. Si*, 333
F.3d 1041, 1042 (9th Cir. 2003) ("In a judicial proceeding where a defendant lacks the ability to
speak or understand English, an interpreter can be essential for ensuring a fair trial.").

[10] To the extent Plaintiffs intend to bring a substantive due process claim under the
Fourteenth Amendment for the alleged discrimination, they are unable to do so.  (*See* SAC
¶ 112); *see Johnson v. State of Cal.*, 207 F.3d 650, 656 (9th Cir. 2000) (affirming dismissal of
substantive due process claims with prejudice because "the Equal Protection Clause covers the
actions challenged in the complaint"); *Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir.
2001) ("When a plaintiff's claim can be analyzed under an explicit textual source of rights in the
Constitution, a court should not resort to the more subjective standard of substantive due
process." (internal quotation marks omitted)).

473 U.S. 432, 439 (1985). To state a claim under Section 1983 for violation of the Equal Protection Clause, the plaintiff must plead facts supporting the reasonable inference that the defendant "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A plaintiff must therefore allege that "a class that is similarly situated has been treated disparately," *Christian Gospel Church, Inc. v. City & Cty. of S.F.*, 896 F.2d 1221, 1225-26 (9th Cir. 1990), and that the defendant acted with discriminatory intent, *Barren*, 152 F.3d at 1194.

Plaintiffs plead no facts regarding the City's use of interpreters in general or the use of interpreters for similarly situated individuals. (*See* SAC.) They allege only that Officer D'Amico violated the Equal Protection Clause "by depriving Ms. Chen of an opportunity to provide exculpatory testimony through an interpreter" because of Officer D'Amico's "bias against Ms. Chen's national origin and/or ethnicity." (*Id.* ¶ 115.) That statement—uncoupled from any allegations regarding similarly situated individuals, Officer D'Amico's discriminatory intent, or even the City's use of interpreters in general—fails to state an equal protection claim for national origin discrimination. *See Lam v. City & Cty. of S.F.*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012). Nevertheless, contrary to City Defendants' contention, the court cannot conclude at this time that Ms. Chen could not plead any facts supporting such a claim. Thus, the court grants Plaintiffs leave to amend.

//

//

ii. Gender

City Defendants next argue that Plaintiffs' claim regarding gender discrimination is meritless because Ms. Chen does not have a "constitutional right to have Mr. Lian prosecuted." (*Id.* at 13.) But City Defendants mischaracterize the right alleged; Plaintiffs assert that Ms. Chen was selectively prosecuted because of her gender. (*See* SAC ¶ 114; Resp. at 11.)

A selective prosecution claim is a specific kind of an equal protection claim for which a plaintiff must allege facts supporting the reasonable inference that similarly situated individuals of another gender "could have been prosecuted but were not."[11] *See United States v. Ford*, No. 3:14-cr-00045-HZ, 2016 WL 4443167, at *4 (D. Or. Aug. 22, 2016); *see also United States v. Arenas-Ortiz*, 339 F.3d 1066, 1068 (9th Cir. 2003) (stating that to prove discriminatory effect, a defendant must show that similarly situated individuals of a different ethnic origin were not prosecuted). Individuals are similarly situated "when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Id.* (quoting *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996)). Discriminatory intent requires that the prosecutor took a course of action at least in part because of "its adverse effects upon an identifiable group." *Id.* at *7 (internal quotation marks omitted).

//

---

[11] Although Plaintiffs style their claim as one of selective prosecution (SAC ¶ 115), their claim may be more aptly described as a selective enforcement claim based on differential treatment in investigation and arrest. However, a selective enforcement claim is substantially similar to a selective prosecution claim. *See Lacey*, 693 F.3d at 920.

As with their national origin claim, Plaintiffs allege no facts related to Officer D'Amico's discriminatory intent in referring Ms. Chen for prosecution.  (*See generally* SAC.)  The court therefore dismisses the selective prosecution claim because the complaint contains no allegations giving rise to a plausible inference of discriminatory intent or motive.[12]  (*See generally id.*)  However, the court cannot conclude at this time that Plaintiffs cannot allege any facts supporting a claim.  Thus, the court grants leave to amend.

### iii. Probable Cause

Lastly, City Defendants state that if Plaintiffs "intend to allege the existence of" a policy encouraging false statements in probable cause affidavits, "they should identify it in their response."  (MTD at 13.)  If Plaintiffs fail to do so, City Defendants argue that the court should deny leave to amend.  (*Id.*)  City Defendants' argument falls short, however, because Plaintiffs are not required to identify specific amendments to their complaint in responsive briefing.  Although Plaintiffs fail to plead sufficient facts regarding the City's policies or lack thereof, nothing in City Defendants' briefing convinces the court that amendment of the *Monell* claims related to probable cause would be futile.  *See supra* § III.B.1.

//

---

[12] Despite City Defendants' statement that a selective prosecution claim cannot be based on differential treatment between Ms. Chen and only one other person—Mr. Lian—at least one other court has said such an allegation is sufficient at the pleading stage.  (*See* MTD at 13 n.5); *Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925, 942 (N.D. Cal. 2014) (declining to dismiss the plaintiff's equal protection claim because he identified "his fiancé as a[ similarly situated] individual [to] whom he can be compared").

For these reasons, the court dismisses the Equal Protection Clause claims for national origin and gender discrimination but denies City Defendants' request to prohibit leave to amend Plaintiffs' Section 1983 claims against the City and the constitutional violations underlying those claims.[13]

2. Qualified Immunity

City Defendants next argue that qualified immunity bars Plaintiffs' Equal Protection claims for national origin and gender discrimination. (Mot. at 10-16.) Qualified immunity shields government officials from suits for civil liability unless the official violated a clearly established statutory or constitutional right of which a reasonable person would have known. *Reichle v. Howards*, 566 U.S. 658, 654 (2012). The court must determine whether (1) the plaintiff sufficiently alleges that an official's conduct violated a constitutional right, and (2) the right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "A right is clearly established when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1067 (9th Cir. 2016) (internal quotation marks omitted; alteration in original). The court may address either inquiry first. *Pearson*, 555 U.S. at 236. Where a

_____

[13] In their response to City Defendants' motion to dismiss, Plaintiffs contend that their complaint contains a claim for "improper intrusions into their constitutionally protected liberty interest in familial relations." (Resp. at 15 n.2.) And on February 1, 2018, Plaintiffs filed a notice of supplemental authority, alerting the court to the Ninth Circuit's decision in *Demaree v. Pederson*, 880 F.3d 1066 (9th Cir. 2018) (per curiam), which involved the "well-elaborated constitutional right to live together without governmental interference," *id.* at 1069 (internal quotation marks omitted). However, Plaintiffs have not asserted such a claim against City Defendants. (*See generally* SAC.)

defendant presents a qualified immunity defense in a Rule 12(b)(6) motion, "dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies." *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

To make their qualified immunity argument, City Defendants refer to their arguments that amendment of Plaintiffs' constitutional claims would be futile.[14] (MTD at 16.) For the reasons stated above, Plaintiffs fail to state constitutional claims under the Equal Protection Clause, which satisfies the first prong of the qualified immunity analysis as to those claims.[15] *See supra* § III.B.1.a-b. Because Plaintiffs' constitutional claims fail for lack of sufficient factual allegations rather than the lack of a cognizable legal theory, the court's dismissal on this basis is with leave to amend. *See Elsmore v. Patrol*, No. ED CV 15-1556 RGK (MRW), 2016 WL 4479547, at *1 (C.D. Cal. July 26, 2016) (granting leave to amend after dismissing the complaint based on qualified immunity grounds); *Bradley v. Crowther*, No. 2:17-CV-93 TS, 2017 WL 3037377, at *3 n.16 (D. Utah July 17, 2017) (collecting cases); *cf. Morales v. Fry*, 873 F.3d 817, 823 (9th Cir.

---

[14] Because City Defendants did not actually address the substance of Plaintiffs' lack of probable cause claims (*see* MTD at 13, 15), the court construes the motion to dismiss as requesting dismissal of only the equal protection claims on this ground.

[15] City Defendants also state in cursory fashion that the constitutional rights alleged are were not clearly established at the time of the alleged violations. (*See* MTD at 16 ("There is no clearly established right to an interpreter in a non-custodial interview. Nor does focusing a criminal child-abuse investigation on one parent violate any clearly established rights.").) However, as the court discussed above, City Defendants mischaracterize Plaintiffs' claimed constitutional rights and Plaintiffs clarify that they do not assert a constitutional right to an interpreter during a police interview. *See supra* § III.B.1.a. Moreover, the right to be free from national origin and gender discrimination in criminal proceedings is clearly established, *see Elliot-Park v. Manglona*, 592 F.3d 1003, 1008-09 (9th Cir. 2010), although the court will revisit this issue if City Defendants assert the qualified immunity defense again.

2017) (stating that "qualified immunity was conceived of as a summary judgment vehicle"). However, City Defendants may raise a qualified immunity defense again in response to a future amended complaint.

### 3. Statute of Limitations

City Defendants next contend that Plaintiffs' claims against Chief Gibson and Assistant Chief Wilson are barred by the applicable statute of limitations. State law provides the statute of limitations for Section 1983 suits, *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (per curiam), and Washington applies its three-year statute of limitations for personal injury suits to Section 1983 claims, *Southwick v. Seattle Police Officer John Doe #s 1-5*, 186 P.3d 1089, 1092 (Wash. Ct. App. 1998). Federal law, however, dictates when a cause of action accrues and the limitations period begins to run. *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017). Federal law provides that a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004).

The parties dispute when the limitations period began to run on Plaintiffs' claims. City Defendants contend that Ms. Chen's gender and national origin discrimination claims accrued no later than February 18, 2014, and therefore expired on February 18, 2017.[16] (MTD at 17.) Ms. Chen and Mr. Lian filed the suit involving City Defendants on March 17, 2017, in King County Superior Court. *Chen, et al. v. City of Redmond*,

---

[16] City Defendants state that Ms. Chen was arraigned on February 18, 2014. (MTD at 17.) However, Plaintiffs' complaint states only that Ms. Chen was arraigned "in early 2014."

No. C17-0569JLR, Dkt. # 1.  Plaintiffs contend that their claims accrued at the termination of criminal proceedings against Ms. Chen on September 19, 2014, because the alleged "wrongful acts . . . are part of a continuous and connected string of wrongful acts" that concluded on that date.[17]  (Resp. at 18.)  The only support they offer for this theory is that a malicious prosecution claim accrues when the proceedings against a plaintiff terminate such that they cannot be revived.  (*See id.* at 19 (citing *Bradford v. Scherschligt*, 803 F.3d 382, 387 (9th Cir. 2015).)

Based on the facts in the complaint, the court reasonably infers that by the time Ms. Chen was arraigned "in early 2014," she knew or had reason to know of any national origin discrimination arising from Officer D'Amico's failure to use an interpreter in interviewing her prior to the charges and of any gender discrimination arising from the choice to prosecute Ms. Chen but not Mr. Lian for the same conduct.  (*See* SAC ¶¶ 112, 114-15.)  Thus, the statute of limitations bars those claims, and the court dismisses them on this basis.  The court's dismissal is without prejudice, however, because there is no indication that Plaintiffs could not amend their complaint to allege facts that they became

---

(SAC ¶ 87.)  Because the court only looks at the complaint in determining its sufficiency and City Defendants have not requested judicial notice of the arraignment date (*see generally* MTD), the court does not credit the February 18, 2014, date as the specific date of the arraignment.

[17] Plaintiffs also argue that because J.L. and L.L. are minor children, their claims are not time-barred.  (Resp. at 18.)  City Defendants state only that "Plaintiffs do not allege any violation of J.L.'s or L.L.'s constitutional rights by City Defendants."  (Reply (Dkt. # 82) at 10.)  However, Plaintiffs allege that City Defendants violated J.L.'s Fourteenth Amendment rights in his dependency action.  (SAC ¶ 113.)  Because City Defendants misread the complaint in this regard and provide no further argument, the court declines to address the constitutional claim brought specifically by J.L.  In addition, City Defendants move to dismiss only the claims against Chief Gibson and Assistant Chief Wilson on this basis.

aware of the injury at a later time upon learning, for example, of an allegedly

unconstitutional policy of differential treatment in the provision of interpreters or

prosecution. *See supra* § III.B.1.a-b (giving Plaintiffs leave to amend to state a claim of

municipal liability based on a policy or inaction).

Plaintiffs' constitutional claims related to lack of probable cause and their claim of

malicious prosecution are subject to a slightly different analysis. Plaintiffs allege that

Officer D'Amico obtained an arrest warrant for Ms. Chen that was "not founded on

probable cause" (SAC ¶ 110) and submitted "a probable cause affidavit that contained

material falsehoods and omissions that failed to acknowledge exculpatory evidence" (*id.*

¶ 111). Based on those allegations, Plaintiffs appear to assert a judicial deception claim,

which involves "false or misleading misrepresentations that may not be readily apparent

at the time" a warrant is executed. *See Klein*, 865 F.3d at 1279 ("In a traditional Fourth

Amendment case, the plaintiff is placed on constructive notice of the illegal conduct

when the search and seizure takes place."). "In order to discover the underlying illegality

in a judicial deception case, the plaintiff must have access to the underlying affidavit."

*Id.* Such a claim begins to accrue "when the underlying affidavit" becomes "reasonably

available." *Id.* at 1278-79.

Here, construing the complaint in the light most favorable to Plaintiffs, the factual

allegations give rise to the reasonable inference that Ms. Chen learned of the false or

misleading representations in the affidavit at the time she was charged or arraigned. (*See*

SAC ¶¶ 86 (alleging that on January 31, 2014, the Prosecuting Attorney filed a criminal

information that contained Officer D'Amico's probable cause affidavit), 87 ("In early

2014, Ms. Chen appeared . . . for arraignment in her criminal case.").)  The court

therefore dismisses these claims as to Chief Gibson and Assistant Chief Wilson.[18]

However, the court grants Plaintiffs leave to amend the complaint to allege facts

regarding when Ms. Chen became aware of the misrepresentations because at this time,

amendment would not be futile.

Finally, Plaintiffs' malicious prosecution claim against Chief Gibson and Assistant

Chief Wilson accrued when the criminal proceedings against Ms. Chen terminated.  *See*

*Bradford*, 803 F.3d at 387.  Those proceedings ended on September 19, 2014 (SAC ¶ 88);

thus, Plaintiffs' malicious prosecution claim is timely, and the court denies the motion to

dismiss this claim.  The court notes that City Defendants also include a paragraph in

which they assert that Plaintiffs fail to adequately plead the malicious prosecution claim

because they do not "allege any wrongful conduct."  (MTD at 19.)  However, City

Defendants provide no substantive argument or legal authority on this point.  Thus, the

court declines at this time to address the sufficiency of the claim.

**C.    Leave to Amend**

In summary, the court grants City Defendants' motion to dismiss Plaintiffs' claims

against the City for failure to adequately allege municipal liability; the underlying Equal

Protection Clause claims against Officer D'Amico, Chief Gibson, and Assistant Chief

Wilson for failure to plead sufficient facts supporting those claims and on the basis of

---

[18] Because the court concludes that the constitutional claims against Chief Gibson and Assistant Chief Wilson pursuant to Section 1983 are time-barred and dismisses on that basis, the court declines to address City Defendants' argument that Plaintiffs fail to adequately plead supervisory liability for those claims.  (*See* MTD at 18-19.)

qualified immunity; and the constitutional claims related to lack of probable cause against Chief Gibson and Assistant Chief Wilson as barred by the statute of limitations. The court denies the City's motion to dismiss the probable cause malicious prosecution claim against Chief Gibson and Assistant Chief Wilson. The court grants Plaintiffs leave to amend the dismissed claims, however, because there is no indication at this time that leave to amend would be futile.

The court cautions Plaintiffs that they will not receive multiple opportunities to amend their complaint. Their failure to allege sufficient facts giving rise to their constitutional claims and the City's liability for the asserted violations will demonstrate that further amendment would be futile. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed the *pro se* plaintiff regarding the deficiencies in a prior order and granted leave to amend); *cf. Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

## IV.    CONCLUSION

For the reasons set forth above, the court GRANTS in part and DENIES in part City Defendants' motion to dismiss (Dkt. # 79) with leave to amend as described herein. The court also DENIES as moot City Defendants' previously filed motion to dismiss (Dkt. # 66). Plaintiffs must file their amended complaint, if any, no later than twenty (20) days from the entry of this order. Failure to file an amended complaint or to remedy the

//

deficiencies identified in this order will result in the court dismissing the matter without leave to amend.

Dated this 27th day of March, 2018.

JAMES L. ROBART
United States District Judge