1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    SUSAN CHEN, et al.,                          CASE NO. C16-1877JLR

11                              Plaintiffs,        ORDER

            v.
12

13    NATALIE D'AMICO, et al.,

14                              Defendants.

15              **I.    INTRODUCTION**

16        Before the court is Defendants the Washington State Department of Social and

17    Health Services ("DSHS"[1]), Kimberly R. Danner, and Jill Kegel's (collectively,

18    "Defendants") motion for summary judgment.  (Defs. MSJ (Dkt. # 361); Defs Reply

19    (Dkt. # 389).)  Plaintiff Susan Chen filed a cross motion for summary judgment, which

20

21            [1] As of July 1, 2018, DSHS's duties related to child welfare services have been renamed
      the Department of Children, Youth, and Families ("DCYF").  RCW 43.216.906(1).  Because that
      transition post-dates the events relevant to this case, the court refers to Defendant Department of
22    Social and Health Services as "DSHS."

her minor son, Plaintiff J.L. (together with Ms. Chen, "Plaintiffs") joined. (Chen MSJ (Dkt. # 364); J.L. Joinder (Dkt. # 372); Chen Reply (Dkt. # 390)). Both motions are opposed. (*See* Chen Resp. (Dkt. # 387-1[2]); J.L. Resp. (Dkt. # 376); Defs. Resp. (Dkt. # 379).) The court has considered the motions, the parties' submissions in support of and in opposition to their respective motions, the relevant portions of the record, and the applicable law. Being fully advised,[3] the court GRANTS Defendants' motion and DENIES Plaintiffs' motion.

## II.    BACKGROUND

The court provides a brief factual summary below, followed by a summary of the procedural history of this case.

### A.    Factual Background

This case arises out of the removal of J.L. from his parents' care and placement into foster care. The court discussed the facts leading up to J.L.'s October 28-30, 2013 shelter care hearing in detail in its December 20, 2019 and January 22, 2020 orders granting summary judgment in favor of Defendants. (*See* 12/20/19 Order (Dkt. # 242); 1/22/20 Order (Dkt. # 275); *see also* 9th Cir. Mem. (Dkt. # 297) (affirming these judgment orders except as to Plaintiffs' claims for negligent investigation and negligent

//

//

---

[2] The court cites Ms. Chen's corrected response (Dkt. # 387-1), rather than her original response (Dkt. # 380).

[3] Plaintiffs requested oral argument. (*See* J.L Resp. at 1; Chen Resp. at 1.) The court, however, concludes that oral argument is not necessary to its disposition of the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

1  inflction of emotional distress ("NIED") after the shelter care hearing); Mandate (Dkt.

2  # 299).)

3      The events at issue in the parties' motions took place when J.L. was three years

4  old.  (*See* J.L. Resp. at 2.)  After J.L. was diagnosed with autism spectrum disorder

5  ("ASD") in August 2012, Ms. Chen began to take him to medical and therapy

6  appointments to address his ASD symptoms.  (Prop. Pretrial Order (Dkt. # 249) at 2-9

7  ("Admitted Facts") ¶¶ 3-4.)  In September 10, 2012, Ms. Chen began to seek treatment

8  for J.L.'s gastrointestinal ("GI") issues, such as discomfort, bloating, and gassiness.  (*Id.*

9  ¶ 10.)  Between September 2012 and October 2013, Ms. Chen took J.L. to numerous

10  doctors and therapists for treatment of his autism and GI symptoms.  (*See id.* ¶¶ 6-27.)

11      On October 23, 2013, one of J.L.'s doctors reported concerns about J.L. and Ms.

12  Chen to Child Protective Services ("CPS").  (*Id.* ¶ 28.)  That same night, a CPS social

13  worker visited Plaintiffs' home and took J.L. to the Seattle Children's Hospital ("SCH")

14  emergency room.  (*Id.* ¶¶ 27- 30.)  SCH admitted J.L and reported Ms. Chen to the

15  Seattle Police Department ("SPD").  (*Id.* ¶ 31.)  On October 25, 2013, Defendant

16  Kimberly Danner, a different CPS social worker, filed a petition for dependency for J.L.

17  with the King County Superior Court.  (*Id.* ¶ 32; *see* Kumar Decl. (Dkt. ## 350

18  (redacted), 352 (sealed)) ¶ 2, Ex. 1 (Dkt. # 352-1 (sealed)) (dependency petition).)

19      A commissioner of the King County Superior Court conducted a 72-hour shelter

20  care hearing between October 28 and October 30, 2013.  (Admitted Facts ¶ 33.)  Ms.

21  Chen and J.L's father, former Defendant Naixiang Lian, were represented by counsel.

22  (*Id.*)  Near the end of the hearing, the commissioner stated that J.L.'s low weight was a

ORDER - 3

1  key concern justifying a finding of reasonable cause to believe that placing J.L. with his

2  parents would create a serious risk of substantial harm.  (Prince Decl. (Dkt. # 383) ¶ 23,

3  Ex. Z (Dkt. # 384-4 (sealed)) at 315:6-316:13; *see also id.* at 319:22-25 ("The one thing

4  that shelter care will show us, frankly, is whether [J.L.] will continue to show

5  improvement on his weight as well as improvement on the symptoms of his autism[.]").)

6  On October 31, 2013, the commissioner entered an order continuing J.L.'s out-of-home

7  placement.  (Admitted Facts ¶ 33.)

8        After J.L. was discharged from SCH on November 7, 2013, CPS took him to a

9  foster home in accordance with the shelter care hearing order.  (*Id.* ¶ 35.)  J.L.'s weight

10  was closely monitored during this time.  (*See id.* ¶¶ 36-37.)  On November 15, 2013, Ms.

11  Danner completed a Children's Administration Investigative Assessment in which she

12  concluded that the "[i]nvestigation [was] Founded for Negligent Treatment or

13  Malreatment" of J.L. by his parents.  (Prince Decl. ¶ 17, Ex. R ("Investigative

14  Assessment") at 2-3.[4])  J.L.'s case was then transferred to Child and Family Welfare

15  Services ("CFWS").  (*See* Lo Decl. (Dkt. # 215) ¶ 6, Ex. 5 at 2.)

16        On November 25, 2013, a CFWS social worker notified the Assistant Attorney

17  General ("AAG") handling J.L's dependency case that J.L. had lost weight since his

18  placement in shelter care and that J.L.'s occupational therapists who treated J.L. before

19  the dependency did not see anything wrong with Ms. Chen's relationship with J.L.

20  (Admitted Facts ¶ 39.)  Defendant Jill Kegel, the CFWS social worker responsible for

21

22        [4] The court refers to the page numbers in the CM/ECF header when citing exhibits to
declarations.

ORDER - 4

1  J.L.'s case beginning in December 2013, advised the AAG that Dr. Hal Quinn, a doctor

2  who treated J.L. before and after the shelter care hearing, was not concerned about J.L.'s

3  weight fluctuations.  (*Id.*)  On December 10, 2013, Ms. Kegel informed the AAG that

4  SCH apparently did not have J.L.'s autism diagnosis when its physicians were diagnosing

5  J.L.'s condition in October 2013.  (*Id.* ¶ 40.)

6        On January 31, 2014, the King County Prosecuting Attorneys' Office filed

7  criminal child neglect charges against Ms. Chen.  (*Id.* ¶ 41.)

8        In June 2014, Ms. Chen and Mr. Lian moved to return J.L. to his father's care.

9  (Kumar Decl. ¶ 17, Ex. 16 (Dkt. # 352-16 (sealed)) ("June 2014 motion").)  Although

10  Ms. Kegel opposed the motion (*see* Lo Decl. ¶ 20, Ex. 19), the court returned J.L. to his

11  father's care in July 2014.  (Admited Facts ¶ 37.)

12        On September 12, 2014, the State dismissed J.L.'s dependency action and returned

13  J.L. to his parents' custody without restrictions.  (*Id.* ¶ 42; *see* Chen Decl. (Dkt. # 366)

14  ¶ 13, Ex. 10 (email from AAG).)  DSHS then changed its initial finding of abuse or

15  neglect from "founded" to "unfounded."  (Admited Facts ¶ 43.)

16        On September 19, 2014, the King County Prosecuting Attorney's Office dismissed

17  the criminal case against Ms. Chen.  (*Id.* ¶ 41.)  The prosecutor informed the court that

18  his office dismissed the charges based on information presented by Ms. Chen's attorney,

19  including the results of her interviews with several of J.L.'s physicians.  (*Id.*)

20  //

21  //

22  //

ORDER - 5

1    **B.    Procedural Background**

2    As relevant here, Plaintiffs[5] raised state law claims of negligent investigation and

3    negligent infliction of emotional distress ("NIED"), among other claims, against multiple

4    agencies and defendants.  (*See* 4th Am. Compl. (Dkt. # 96).)  The court entered judgment

5    against Plaintiffs on all of their claims on January 23, 2020.  (1/23/20 Judgment (Dkt.

6    # 276).)  Plaintiffs appealed.  (NOA (Dkt. # 280).)  While Plaintiffs' appeal was pending,

7    the Washington Supreme Court decided *Desmet v. State ex rel. State Department of*

8    *Social & Health Services*, 514 P.3d 1217, 1226 (Wash. 2022), which "held that

9    negligence by DSHS that prolongs dependency proceedings may be actionable under a

10    negligent investigation theory."  (9th Cir. Mem. at 3-4 (citing *Desmet*, 514 P.3d at 1226).)

11    The Ninth Circuit Court of Appeals vacated and remanded the case only with

12    respect to Plaintiffs' "claims of negligent investigation which postdate the shelter care

13    hearing and their NIED claims during that same period."  (*Id*. at 5.)  The Ninth Circuit

14    instructed the court to reconsider Plaintiffs' negligent investigation claims under *Desmet*,

15    514 P.3d at 1226, and to reconsider Plaintiffs' NIED claims under the theory of direct

16    NIED.  (*Id*. at 3-5.)  The Ninth Circuit affirmed the judgment in all other respects.  (*See*

17    *id.* at 5.)

18    Defendants and Ms. Chen filed timely motions for summary judgment on

19    November 20, 2024.  (Defs. MSJ; Chen MSJ.)  J.L joined Ms. Chen's motion on

20

21    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

    [5] Mr. Liang and J.L.'s brother L.L. were also plaintiffs in this matter.  (*See* 4th Am.

22    Compl. (Dkt. # 96).)  The Ninth Circuit Court of Appeals affirmed the dismissal of all claims
    brought by these plaintiffs.  (9th Cir. Mem. at 5.)

1  December 4, 2024.  (J.L. Joinder.)  The motions are now fully briefed and ripe for

2  consideration.

### III.    ANALYSIS

4  Ms. Chen moves the court for an order granting summary judgment in her favor

5  on her claim for negligent investigation following the October 2013 shelter care hearing,

6  and J.L. joins in that request.  (*See generally* Chen MSJ; J.L. Joinder.)  Defendants,

7  meanwhile, move for summary judgment in their favor on both of Plaintiffs' remaining

8  claims.  (*See generally* Defs. MSJ.)  Below, the court sets forth the legal standards

9  governing the motions, then considers the parties' motions.

### A.    Summary Judgment Legal Standard

11  Summary judgment is appropriate if the evidence shows "that there is no genuine

12  dispute as to any material fact and the movant is entitled to judgment as a matter of law."

13  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact

14  is "material" if it might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*,

15  477 U.S. 242, 248 (1986).  A factual dispute is "'genuine' only if there is sufficient

16  evidence for a reasonable fact finder to find for" the nonmoving party.  *Far Out Prods.,*

17  *Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

18  The court must "view[] the evidence in the light most favorable to the nonmoving

19  party[.]"  *Kaelin v. Globe Comm'ns Corp.*, 162 F.3d 1036, 1039 (9th Cir. 1998).  Where

20  the parties have filed cross-motions for summary judgment, the court "evaluate[s] each

21  motion separately, giving the nonmoving party in each instance the benefit of all

22  reasonable inferences."  *ACLU v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

1    The moving party bears the initial burden of showing there is no genuine dispute

2    of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at

3    323. The burden then shifts to the nonmoving party to identify specific facts from which

4    a factfinder could reasonably find in the nonmoving party's favor. *Id*. at 324; *Anderson*,

5    477 U.S. at 250. To defeat a summary judgment motion, the nonmoving party "must

6    present significant probative evidence tending to support its claim or defense." *Intel*

7    *Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Thus, the

8    nonmovant must show that there are "genuine factual issues that properly can be resolved

9    only by a finder of fact because they may reasonably be resolved in favor of either party."

10   *Anderson*, 477 U.S. at 250.

11   **A.    Negligent Investigation**

12   Plaintiffs assert that they are entitled to summary judgment on their negligent

13   investigation claims because there can be no genuine dispute of fact that Defendants'

14   negligence "caused and prolonged J.L.'s dependency." (*See* Chen MSJ at 2.) Defendants

15   counter that they are entitled to judgment as a matter of law because Plaintiffs cannot

16   show that Defendants' investigation was negligent or that any harmful placement

17   decision resulted from the investigation. (*See* Defs. MSJ at 6.)

18   The negligent investigation cause of action arises from the state's statutory duty

19   under RCW 26.44.050 to investigate allegations of child abuse. *M.W. v. Dep't of Social*

20   *& Health Servs.*, 70 P.3d 954, 960 (Wash. 2003). It is a "narrow exception" to the rule

21   that there is no tort claim for general negligence during an investigation. *Id.* A parent or

22   child may bring a negligent investigation claim against DSHS when, in the course of

1   investigating suspected child abuse or neglect, the agency "gather[s] incomplete or biased

2   information that results in a harmful placement decision." *Desmet*, 514 P.3d at 1225

3   (quoting *M.W.*, 70 P.3d at 960). A "harmful placement decision" includes "removing a

4   child from a nonabusive home, placing a child in an abusive home, . . . letting a child

5   remain in an abusive home[,]" or "caus[ing] an unnecessary and prolonged disruption of

6   the family unit." *Desmet*, 514 P.3d at 1225, 1226 (citations omitted).

7       Washington courts "interpret the 'harmful placement decision' requirement

8   narrowly" and have repeatedly refused to expand the scope of the negligent investigation

9   tort. *McCarthy v. Cnty. of Clark*, 376 P.3d 1127, 1136 (Wash. Ct. App. 2016)

10  (concluding that a no-contact order issued in a criminal proceeding is not a "placement

11  decision"); *see Roberson v. Perez*, 123 P.3d 844, 851 (Wash. 2005) (declining to expand

12  the negligent investigation tort to "constructive placements"); *M.W.*, 70 P.3d at 960

13  (declining to expand the tort to harms other than harmful placement decisions); *Carter v.*

14  *MultiCare Health Sys.*, 553 P.3d 98, 110 (Wash. Ct. App. 2024) (declining to apply the

15  continuing tort doctrine to the tort of negligent investigation). The plaintiff must show

16  that DSHS's conduct was a proximate cause of the harmful placement decision. *Tyner v.*

17  *State Dep't of Soc. & Health Servs.*, 1 P.3d 1148, 1157 (Wash. 2000). The court is

18  unaware of any Washington authority holding that a "harmful placement decision" can

19  exist absent a court order. *See, e.g.*, *Desmet*, 514 P.3d at 1226 ("harmful placement

20  decision" was a court order denying plaintiffs' motion to modify a shelter care order and

21  continuing the shelter care placement); *Tyner v. State Dep't of Soc. & Health Servs.*, 1

22  P.3d 1148, 1157 (Wash. 2000) (affirming jury finding against DSHS where the negligent

1    investigation resulted in court orders limiting contact between a parent and his children);

2    *Petcu v. State*, 86 P.3d 1234, 1246-47 (Wash. Ct. App. 2004) (affirming summary

3    judgment against plaintiff where he failed to identify material information that was not

4    brought before the court in proceedings that resulted in an order of dependency).

5         Here, Plaintiffs argue that Defendants' negligent investigation after the shelter

6    care hearing "caused and prolonged J.L.'s dependency." (*See, e.g.*, Chen MSJ at 20.)

7    Ms. Chen asserts that Defendants failed to correct errors in the dependency petition,

8    ignored their duty to investigate, "failed to investigate basic medical information or

9    outright hid that information," falsely represented J.L.'s weight, and conducted a biased

10   investigation. (*See* Chen MSJ at 17; Chen Resp. at 28-30.) J.L., meanwhile, faults

11   Defendants for failing to recognize that he was losing weight in their care, withholding

12   therapy, making material misrepresentations about his weight, conducting an incomplete

13   investigation, failing to plan for his return home, and showing bias against his family.

14   (*See* J.L. Joinder at 2; J.L. Resp. at 14-16.) Plaintiffs point to evidence that J.L.'s

15   prolonged removal caused Ms. Chen to suffer severe depression, anxiety, and stress and

16   caused J.L. to regress mentally, undergo trauma, and suffer post-traumatic stress disorder.

17   (*See* Chen Resp. at (citing evidence of harm); J.L. Resp. at 19-20 (same).)

18        Critically, however, Plaintiffs do not identify any "harmful placement decision"

19   entered by a court that was proximately caused by Defendants' allegedly negligent

20   investigation. (*See generally* Chen MSJ; J.L. Joinder; Chen Resp.; J.L. Resp.; Chen

21   Reply.); *see Desmet*, 514 P.3d at 1225 (DSHS may be liable for negligent investigation

22   when it "gathers incomplete or biased information *that results in a harmful placement*

ORDER - 10

1   *decision*" (emphasis added)).  To the contrary, any court decisions entered after the

2   shelter care hearing resulted in favorable outcomes for Plaintiffs.  (*See, e.g.*, Admitted

3   Facts ¶¶ 37 (J.L. returned to his father's custody), 42 (returning J.L. to his parents'

4   custody without restrictions).)  Because Plaintiffs have not directed the court to evidence

5   of a "harmful placement decision," they can neither show that they are entitled to

6   judgment as a matter of law on their negligent investigation claims, nor establish a

7   genuine dispute of material fact as to those claims.  Therefore, the court grants

8   Defendants' motion for summary judgment on Plaintiffs' negligent investigation claims

9   and denies Plaintiffs' cross motion for summary judgment. [6]

10  **B.      Negligent Infliction of Emotional Distress**

11          To prevail on their direct NIED claims, Plaintiffs must prove that Defendants'

12  negligence caused them to suffer medically diagnosable emotional distress.  *Desmet*, 514

13  P.3d at 1227 n.16 (citing *Kumar v. Gate Gourmet, Inc.*, 325 P.3d 193, 205 (Wash. 2014)).

14  Thus, Plaintiffs must establish the standard tort elements of duty, breach of the standard

15  of care, proximate cause, and damage, plus objective symptomatology of the emotional

16  harm.  *Kumar*, 325 P.3d at 205 (citing *Strong v. Terrell*, 195 P.3d 977, 982 (Wash. Ct.

17  App. 2008)).  The emotional distress must be "within the scope of foreseeable harm of

18  the negligent conduct" and "a reasonable reaction given the circumstances[.]"  *Bylsma v.*

19  *Burger King Corp.*, 293 P.3d 1168, 1170 (Wash. 2013) (citing *Hunsley v. Giard*, 553

20

21          [6] Because the court grants Defendants' motion for summary judgment on Plaintiffs'
    negligent investigation claims, it need not decide whether claims brought against Ms. Kegel
22  individually should be dismissed.  (*See* Defs. MSJ at 5-6.)

1    P.2d 1096, 1103 (Wash. 1976)).  "The existence of a duty is a question of law and

2    depends on mixed considerations of logic, common sense, justice, policy, and precedent."

3    *Snyder v. Med. Serv. Corp. of E. Wash.*, 35 P.3d 1158, 1164 (Wash. 2001) (cleaned up).

4            Here, the parties disagree about what duty Defendants owed to Plaintiffs and

5    whether Defendants breached that duty.  Defendants assert, relying on *Estate of Lee ex*

6    *rel. Lee v. City of Spokane*, that Plaintiffs must prove that Defendants engaged in

7    "wrongful conduct" to prevail on their NIED claims.  (Defs. MSJ at 7 (quoting *Est. of*

8    *Lee ex rel. Lee v. City of Spokane*, 2 P.3d 979, 990 (Wash. Ct. App. 2000)).)  The court

9    agrees with J.L. that proof of "wrongful conduct" is not an element of an NIED claim.

10   (*See* J.L. Resp. at 17.)  In *Lee*, survivors of a man who was fatally shot by police sued, in

11   relevant part, for wrongful death and NIED.  *Lee*, 2 P.3d at 989.  The court held that the

12   survivors could not bring either claim because they could not show that the decedent's

13   death was wrongful.  *Id.* at 989 (dismissing wrongful death claim), 990 (dismissing NIED

14   claim arising from the wrongful death).  Thus, the "wrongful conduct" requirement was

15   specific to the underlying claims and the facts of that case.  The Washington Supreme

16   Court subsequently reaffirmed that the elements of a direct NIED claim are duty, breach,

17   proximate cause, and damages (plus objective symptomatology).  *See, e.g.*, *Kumar*, 325

18   P.3d at 205; *Strong*, 195 P.3d at 982.  Because Defendants' motion is based solely on

19   their assertion that Plaintiffs must prove "wrongful conduct" (*see* Defs. MSJ at 7; *see*

20   *also* Defs. Reply at 5-6 ("The *Lee* court's insistence of misconduct on the part of the

21   governmental actor becomes the dividing line.")), the court denies Defendants' motion

22   for summary judgment on Plaintiffs' NIED claim.

1    The court notes, however, that Plaintiffs have not clearly stated what duty they

2   *would* impose on Defendants.  In his response to Defendants' motion, J.L. asserts that

3   "[w]hen the State and its employees fail to properly investigate the circumstances for the

4   removal of a child, the elements of duty and breach of duty are proven" and that

5   "[m]isrepresenting facts to the dependency court judge and failing to properly investigate

6   claims that lead to a child's removal from a non-abusive home is evidence of a breach of

7   duty owed to a child under DCYF's care."  (J.L. Resp. at 17.)  Both of these duties relate

8   to the investigations that preceded J.L.'s removal from his parents' home.  Duties

9   purportedly owed to Plaintiffs *before* the shelter care hearing are no longer at issue in this

10  case because the Ninth Circuit remanded Plaintiffs' NIED claims only with respect to

11  claims that *postdated* the shelter care hearing.  (*See* 9th Cir. Mem. at 5.)  Therefore, the

12  court orders Plaintiffs to show cause why the court should not grant summary judgment

13  in Defendants' favor on their NIED claims.  In their response, Plaintiffs shall clearly

14  define the duty (or duties) they assert Defendants owed them, with citations to case law,

15  and direct the court to competent evidence that Defendants breached that duty and that

16  the breach proximately caused damages.  Plaintiffs shall also address whether their NIED

17  claim survives the court's dismissal of their negligent investigation claims.

18  **B.    "Duplicative" Claims**

19    Defendants also argue that Ms. Danner and Ms. Kegel should be "summarily

20  dismissed" as defendants because a judgment against them for negligence committed

21  //

22  //

1    within the scope of their employment[7] would be satisfied by the State. (Defs. MSJ at 7-8

2    (citing RCW 4.92.075).) Defendants therefore assert that Plaintiffs' claims against Ms.

3    Danner and Ms. Kegel are "duplicative of [their] claims" against DSHS. (*Id.*) J.L.

4    responds that Plaintiffs may pursue claims against DSHS and its employees

5    simultaneously, regardless of the source of a potential judgment. (*See* J.L. Resp. at 26.)

6            The court agrees with J.L. "Although assertions of the negligent investigation

7    claim are typically brought only against [DSHS], . . . there is nothing to prevent plaintiffs

8    from also asserting the claim against the social worker[s] who performed the

9    investigation." *Medicraft v. Washington*, No. C21-1263BJR, 2024 WL 917584, at *6.

10   (W.D. Wash. Mar. 4, 2024). Defendants cite no authority to the contrary. (See generally

11   Defs. MSJ; Defs. Reply.) Accordingly, the court denies Defendants' motion for

12   summary dismissal of Plaintiffs' claims against Ms. Danner and Ms. Kegel.

13                            IV.    CONCLUSION

14           For the foregoing reasons, the court DENIES Plaintiffs' motion for summary

15   judgment (Dkt. ## 364, 372); GRANTS Defendants' motion for summary judgment on

16   Plaintiffs' negligent investigation claims (Dkt. # 361); and DENIES Defendants' motion

17   for summary judgment on Plaintiffs' negligent infliction of emotional distress claims

18   (*id.*). Plaintiffs are ORDERED to show cause, by no later than **January 31, 2025**, why

19   the court should not grant summary judgment in Defendants' favor on their negligent

20   infliction of emotional distress claims. In their response, Plaintiffs shall (1) clearly define

21

22           [7] The parties do not dispute that Ms. Danner and Ms. Kegel were acting within the scope of their employment at all relevant times. (*See generally* Defs. MSJ; Chen MSJ; J.L. Joinder.)

the duty (or duties) they assert Defendants owed them, with citations to case law, and (2) direct the court to competent evidence that Defendants breached that duty and that the breach proximately caused damages.  Plaintiffs shall also address whether their negligent infliction of emotional distress claim survives the court's dismissal of their negligent investigation claims.  The parties shall be prepared to discuss this matter at the pretrial conference on **February 3, 2025**.

Dated this 27th day of January, 2025.

JAMES L. ROBART
United States District Judge

ORDER - 15