HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUSAN CHEN, et al., | Case No. 2:16-cv-01877-JLR |
| Plaintiffs, | **PLAINTIFF J.L.'S SUPPLEMENTAL BRIEF PURSUANT TO COURT ORDER, DOCKET NO. 500** |
| v. | |
| WASHINGTON STATE DEPARTMENT OF CHILDREN, YOUTH, AND FAMILIES, et al., | |
| Defendants. | |

## I.   INTRODUCTION

The Court's recent Order (Dkt. 500) significantly modified a jury verdict that was the result of a five-day trial. The jury found Defendant Department of Children Youth and Families ("DCYF") owed J.L. $3,000,000 for its negligent investigation and $3,000,000 for negligent infliction of emotional distress ("NIED"). After trial, DCYF moved under Rule 50(b) for the Court to vacate the verdict. DCYF's Rule 50(b) motion was short, presented arguments not made in its Rule 50(a) motion, and cited to little case law. Dkt. 482.

The Court vacated the jury's verdict on J.L.'s negligent investigation claim, and concluded there was sufficient evidence only to support a $1,000,000 verdict for NIED. Dkt. 500. The Court ordered J.L. to show cause why it should not reduce the jury's NIED verdict from $3,000,000 to $1,000,000. *Id.* at 48–49. The $3,000,000 verdict is justified for the following reasons:

PLAINTIFF J.L.'S SUPPLEMENTAL BRIEF PURSUANT TO COURT ORDER, DOCKET NO. 500 - 1
CASE NO. 2:16-cv-01877-JLR

BALLARD SPAHR LLP
RUSSELL INVESTMENTS CENTER
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

1      **First**, DCYF did not seek to reduce the jury award in its Rule 50(b) motion. DCYF thus forfeited an argument that the verdict should be reduced.

     **Second**, overwhelming evidence supports the jury's $3,000,000 verdict.

     **Third**, Washington substantive law supports the jury's verdict.

     **Fourth**, Jury Instruction 17 instructed the jury on the standard to consider non-economic damages. The jury properly exercised its duty, and reducing the award would improperly encroach on J.L.'s Seventh Amendment right to a jury trial.

     **Fifth**, the jury's verdict is in line with other non-economic damages awards in Washington, and jury awards in similar cases across the country.

## II.    STATEMENT OF FACTS

     DCYF's Rule 50(a) motion focused on the two individually named defendants and not on DCYF itself. In its Rule 50(b) motion, DCYF made arguments that were never raised in its Rule 50(a) motion. The Court vacated the jury's verdict on J.L.'s negligent investigation claim.

     After reviewing the evidence, the Court opined that J.L. experienced NIED only for "approximately three months out of the ten months he was in foster care." Dkt. 500 at 45:9–12. The Court also mistakenly stated that J.L. did not address DCYF's arguments that the $3,000,000 award was not supported by evidence. *Id*. at 45:2–5.

     J.L.'s Opposition to the Rule 50(b) motion specifically addressed these arguments under the heading: "**The Jury's Verdict on J.L.'s NIED Claim Was Supported by Sufficient Evidence**." Dkt. 487 at 11–12 (emphasis in original). J.L. for example, specifically raised the fact that the jury was presented with evidence that he was not receiving consistent and quality therapy. *Id*. at 12:3–15. These arguments, however, were not addressed nor recognized in the Court's Order. *See* Dkt. 500. J.L. now submits this additional briefing, at the Court's request, to further address why the jury's $3 million award is supported by sufficient evidence.

//

//

//

PLAINTIFF J.L.'S SUPPLEMENTAL BRIEF
PURSUANT TO COURT ORDER, DOCKET NO. 500 - 2
CASE NO. 2:16-cv-01877-JLR

BALLARD SPAHR LLP
RUSSELL INVESTMENTS CENTER
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

### III. ANALYSIS

#### A. DCYF Forfeited an Argument to Reduce the Jury Award.

DCYF never requested the jury verdict be reduced. Dkt. 482. Instead, it argued that J.L.'s NIED claim should be vacated because it was a double recovery, and that the evidence did not support the jury's verdict. Dkt. 482 at 5–6. Seeking vacatur due to lack of evidence is a different request for relief than a reduction of damages due to lack of evidence. Courts rarely consider forfeited arguments when they are not raised in either party's briefs. *Lui v. DeJoy*, 129 F.4th 770, 780 (9th Cir. 2025). The only time a forfeited argument can be considered is when it does not prejudice the party opposing the argument. *Id*.

The Court prejudices J.L. by considering DCYF's forfeited argument. The jury's verdict was the result of five days of testimony, documentary evidence, and careful deliberation. This ruling and consideration of this argument significantly prejudices J.L. by undermining his constitutional right to a jury trial. DCYF requested the entire judgment be vacated, not reduced. The Court now *sua sponte* seeks to reduce the award. DCYF did not make this request, and it is not properly before the Court on the Rule 50(b) motion.

#### B. There is Overwhelming Evidence to Support the $3,000,000 Jury Award.

The evidence overwhelmingly supports the jury's $3 million verdict. "Generally, a jury's award of damages is entitled to great deference." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 1001 (9th Cir. 2006). A district court "must uphold the jury's finding of the amount of damages unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, based on speculation or guesswork." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Gallick v. Baltimore & O.R. Co.*, 372 U.S. 108, 115 (1963) (internal quotations omitted). "It will be a 'rare case in which it is sufficiently certain that the jury['s damages] award was not based on proper consideration of the evidence' and therefore

PLAINTIFF J.L.'S SUPPLEMENTAL BRIEF
PURSUANT TO COURT ORDER, DOCKET NO.
500 - 3
CASE NO. 2:16-cv-01877-JLR

BALLARD SPAHR LLP
RUSSELL INVESTMENTS CENTER
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

cannot stand." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 11-CV-01846-LHK, 2014 WL 549324, at *8 (N.D. Cal. Feb. 7, 2014) (citing *In re First Alliance Mortg. Co.*, 471 F.3d at 1001).

The verdict is supported by the law. The Court is correct that case law and statutes require DCYF to provide J.L. basic services. Dkt. 500 at 39–40. This Court further concluded:

> In reviewing this evidence in the light most favorable to J.L., the court concludes that the jury had a legally sufficient evidentiary basis to find that J.L. experienced objective and diagnosed symptoms of emotional distress, that DCYF's failure to provide J.L. with services to address his autism between the end of October 2013 and January 2014 proximately caused those symptoms, and that J.L. suffered damages as a result.

Dkt. 500 at 44:7–13. Nevertheless, the Court goes on to conclude that the evidence supports only a $1 million, not a $3 million, verdict.

The problem with the Court's analysis is threefold. <u>First</u>, the Court assumes, without basis, that the jury's $3 million award was meant to compensate J.L. for the entire period he was in DSHS custody. Determining that J.L. was only without therapy for about one-third of that time, the Court divides the jury's verdict by three. But the Court cannot presume to understand how the jury reached the $3,000,000 figure. It is plausible, for instance, that the jury concluded that being without autism treatment for three months, and the damages caused by that lack of treatment, was worth $3,000,000. The Court "cannot speculate about the jury's thought process." *Asdale v. Int'l Game Tech.*, 594 F. App'x (9th Cir. 2013); *see also Porterfield v. Burlington N. Inc.*, 534 F.2d 142, 147 (9th Cir. 1976) (explaining the court "cannot, by way of speculation, pierce the general verdict"). The Court's calculation—dividing the verdict by three to account only for the time J.L. was completely without therapy—improperly speculates about the jury's reasoning.

Under Rule 50, a jury award can only be reduced where "there [is] no evidence to support" the awarded damages. *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 768 F. App'x 756, 759 (9th Cir. 2019); *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002) ("A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion."). In other words, under Rule

PLAINTIFF J.L.'S SUPPLEMENTAL BRIEF
PURSUANT TO COURT ORDER, DOCKET NO.
500 - 4
CASE NO. 2:16-cv-01877-JLR

BALLARD SPAHR LLP
RUSSELL INVESTMENTS CENTER
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

50, the district court can only reduce a jury award where there is a clear error. This makes sense in the context of economic damages—the district court can reduce an award where the jury has made a clear miscalculation, or where the evidence supported past economic damages but not future economic damages, for example. But reducing a jury verdict under this standard makes little sense in the context of non-economic damages. This is because "pain and suffering cannot be measured 'with any degree of mathematical certainty.'" *W. Gas Const. Co. v. Danner*, 97 F. 882, 890 (9th Cir. 1899). The Court, therefore, cannot possibly determine that J.L.'s emotional distress was worth only one-third of that which the jury determined was appropriate. *Cf. Sherwin-Williams Co.*, 768 F. App'x at 759 (reversing the district court's reduction of jury damages because "the jury was free to place any dollar amount on the noneconomic harm so long as it was not so grossly excessive") (cleaned up).

Second, the Court failed to consider the severely diminished quality of the treatment J.L. received while in DSHS custody. The evidence overwhelmingly supports this fact:

**J.L. was no longer receiving additional treatment at home.** Dr. Ivy Chung, J.L.'s ABA therapist, explained the critical role J.L.'s mother played in the effectiveness of his therapy. Specifically, she testified that "[e]arly intervention is key" and that, at J.L.'s young age, it was "a critical period . . . to work on a lot of the foundation skills" of ABA. Day 2 Tr. at 325:16–22. Dr. Chung also explained that "ABA is effective in the home environment" and that J.L.'s mother "was a pretty active member of [his] treatment." *Id.* at 327:11–18. She testified that Ms. Chen's role in J.L.'s treatment was important and that "[t]he effect of ABA is drastically enhanced when caregivers can continue [the] protocols in [the therapist's] absence." *Id.* at 327:19–24. Ms. Chen was trained to assist in J.L.'s therapy and was effective in providing that therapy. *Id.* at 328:2–16. The jury heard that parent involvement in implementing ABA therapy is "[v]ery important" in part because "[i]t increases practice opportunities [and] intensifies training" which increases "the probability of success" and results in "better outcomes" for the child. *Id.* at 328:18–329:21. In Dr. Chung's opinion, Ms. Chen "contribute[d] to the effectiveness of [the ABA] treatment plan." *Id.* at 329:22–330:3.

PLAINTIFF J.L.'S SUPPLEMENTAL BRIEF
PURSUANT TO COURT ORDER, DOCKET NO.
500 - 5
CASE NO. 2:16-cv-01877-JLR

BALLARD SPAHR LLP
RUSSELL INVESTMENTS CENTER
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

Brooke Greiner, J.L.'s occupational therapist, similarly testified that Ms. Chen worked with her and J.L. to assist in his therapy. Day 2 Tr. at 376:25–377:1. She explained that Ms. Chen was "collaborative" and would ask for Ms. Greiner's help, they would try things together in therapy, and then Ms. Chen and J.L. would "go home and try them." *Id.* at 377:3–8. Ms. Greiner also underscored the importance of J.L.'s parents' role in his therapy in a report in July 2014. *See* Exhibit A (Trial Ex. 194). While J.L. was in DCYF's custody, Ms. Chen could no longer provide that ongoing treatment at home, diminishing both the quality and frequency of his treatment.

**J.L. was in distress, affecting the efficacy of his treatment.** Ms. Greiner explained that her therapy sessions with J.L. after his removal were different because J.L. "was often in a state of distress, because he was a child in foster care, multiple foster homes." *Id.* at 380:11–20. She testified that J.L. "was very dysregulated a lot of the time" and that others would report "he had been having a hard time." *Id.* at 381:1–6. Indeed, the jury heard specific testimony that J.L. was exhibiting distress after January 2014. Mardi Brekke, one of J.L.'s foster parents, testified that J.L. was hurting himself by biting his wrists when he lived with her. Day 3 Tr. at 412:10–15 (testimony that J.L. was living in the Brekke home beginning around March 19 for about ten weeks); 413:21–24 (testimony that J.L. was biting his wrists). Defendant Jill Kegel's own notes reflect that J.L. was biting others. Ex. B at 1 (Trial Ex. 107).

DCYF had a duty to J.L. to protect his "physical, mental and emotional health." *Asphy v. State,* 31 Wn. App. 2d 605, 625, 552 P.3d 325, <u>review denied</u>, 3 Wn.3d 1033, 559 P.3d 1023 (2024). DCYF derogated that duty by failing to provide J.L. a stable home environment. DCYF moved J.L. between foster homes, which his own therapist testified caused him distress. Day 2 Tr. at 380:11–20. J.L. resided in at least six foster homes during less than ten months in foster care. Ex. C, ¶ 37 (Trial Ex. 500).

**The consequences of J.L.'s lack of effective therapy are long-lasting.** The Court appears only to consider the distress J.L. suffered during the three to four months he was in DSHS custody and not receiving autism treatment. This ignores key evidence that J.L. suffers, and will continue to suffer, from the consequences of his removal. Most notably, J.L. presented evidence of the

PLAINTIFF J.L.'S SUPPLEMENTAL BRIEF
PURSUANT TO COURT ORDER, DOCKET NO.
500 - 6
CASE NO. 2:16-cv-01877-JLR

BALLARD SPAHR LLP
RUSSELL INVESTMENTS CENTER
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

significant progress he made in therapy prior to his removal, particularly in the areas of communication, socialization, and toilet training. *See, e.g.*, Ex. D at 2 (Trial Ex. 83) (describing J.L.'s progress in pointing, communication, eye contact, name recognition, attention, socialization, toilet training, receptive language skills, and self-feeding); Day 2 Tr. at 334:6–335:3, 376:6–17. He also presented evidence showing that he lost those skills immediately after he was removed. Ex. D at 3 (Trial Ex. 83) (explaining that in the months after his removal J.L. lost communication, social, and toileting skills, and experienced an increase in his repetitive behaviors); Day 2 Tr. at 335:18–336:20. To be clear, J.L. never regained all the skills he lost while he was in DCYF's custody. Day 3 Tr. at 463:20–25.

Third, even without a negligent investigation claim, DCYF has a statutory duty not to remove a child from a non-abusive home. Washington Courts recognize that Washington families have a fundamental right to familial companionship. *Lesley for Lesley v. Dep't of Soc. & Health Servs.*, 83 Wn. App. 263, 279, 921 P.2d 1066 (1996) [1]. Courts recognize that when DCYF violates this right, families may sue the State. *Id*. J.L. was kept away from his father and brother for nearly ten months; he was kept away from his mother for nearly a year. The Court should recognize this loss and allow full recovery for the emotional distress DCYF caused J.L.

The Court's view that the verdict should be reduced means it has determined that the verdict is "monstrous" or "overly excessive." *Yeti by Molly, Ltd.*, 259 F.3d at 1107. But a jury of J.L.'s peers heard the story of a three-year-old autistic boy who was wrongfully removed from his parents, and subsequently denied crucial services that were necessary for his health and development. They further learned that the quality of his therapy after DCYF resumed services was diminished and that J.L.'s condition worsened to the point he began hurting himself and others. The jury carefully deliberated the evidence presented and concluded J.L. was due $3,000,000 for DCYF's negligent infliction of emotional distress. When there is proper consideration of a jury award it should not be modified. *In re First Alliance Mortg. Co.*, 471 F.3d at 1001.

---

[1] While *Lesley for Lesley* discusses a section 1983 claim, DCYF's underlying statutory duty applies to children in foster care.

PLAINTIFF J.L.'S SUPPLEMENTAL BRIEF PURSUANT TO COURT ORDER, DOCKET NO. 500 - 7
CASE NO. 2:16-cv-01877-JLR

BALLARD SPAHR LLP
RUSSELL INVESTMENTS CENTER
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

**C.    Washington Law Supports Upholding the Jury Verdict.**

The $3,000,000 verdict is also supported under Washington law. To determine the reasonableness of a jury award, the Court must look to Washington state law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 437 (1996). The jury's verdict is strongly presumed correct. *Bunch v. King Cnty. Dep't of Youth Servs.*, 155 Wn.2d 165, 179, 116 P.3d 381 (2005). This is because it is the jury's "constitutional role to determine questions of fact, and the amount of damages is a question of fact." *Bunch v. King Cnty. Dep't of Youth Servs.*, 155 Wn.2d 165, 179, 116 P.3d 381 (2005). "[I]t should be and indeed is the rare case where [the court] should substitute [its] judgment for that of the jury." *Washburn v. Beatt Equipment Co.*, 120 Wn.2d 246, 278, 840 P.2d 860 (1992). The jury is given "considerable latitude" in determining the amount of damages, *Kramer v. Portland-Seattle Auto Freight, Inc.*, 43 Wn.2d 386, 396, 261 P.2d 692 (1953), and "the amount of a verdict in and of itself cannot sustain a conclusion that it is excessive," *Washburn*, 120 Wn.2d at 278 ("Amount alone cannot equal excessiveness; the fact that $8 million is a large sum of money is beside the point.").

Washington law overwhelmingly supports not modifying the jury's verdict.

**First**, under Washington law, the jury's verdict should not be modified when a reasonable person could support the verdict. *Coogan v. Borg-Warner Morse Tec Inc.,* 197 Wn.2d 790, 817, 490 P.3d 200 (2021). Here, eight reasonable individuals concluded that $3,000,000 sufficiently compensated J.L. for his NIED claim. The jury deliberated for an entire day, asked several questions to the Court, and reached a split decision on J.L.'s claims, concluding DCYF was liable but that the individual defendants were not. The jury did not award J.L. the entire $8,000,000 J.L. requested in his closing.[2] Rather, they considered his request and found that $3,000,000 was reasonable. All these factors support the idea that the jury was deliberate and reasonable in performing their duty, and their verdict should be given deference. Washington law supports upholding a fair reasoned verdict. *Id.*

---

[2] This is true even when considering the additional $3,000,000 award on J.L.'s negligent investigation claim, which the Court vacated.

PLAINTIFF J.L.'S SUPPLEMENTAL BRIEF
PURSUANT TO COURT ORDER, DOCKET NO.
500 - 8
CASE NO. 2:16-cv-01877-JLR

BALLARD SPAHR LLP
RUSSELL INVESTMENTS CENTER
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

**Second**, Washington law is particularly deferential to juries when they determine non-economic damages. *Collins v. Clark Cnty. Fire Dist. No. 5*, 155 Wn. App. 48, 82 n.17, 231 P.3d 1211 (2010). Washington courts recognize that "[t]he jury's role in determining noneconomic damages is perhaps even more essential." *Id.* (internal quotations omitted); *see also Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 648, 771 P.2d 711 (1989) ("Washington has consistently looked to the jury to determine damages as a factual issue, especially in the area of noneconomic damages. This jury function receives constitutional protection from article 1, section 21."). Washington law supports upholding this verdict because the jury is best equipped to decide these types of damages.

**Third**, case law shows the standard of substantial evidence is met with similar evidence to what J.L. presented at trial. In *Collins* the substantial evidence standard for non-economic damages was met when a plaintiff introduced evidence from multiple witnesses. 155 Wn. App. at 86 ("The jury heard testimony from multiple witnesses who confirmed that James's inappropriate conduct caused [Plaintiff] to suffer mental and emotional injury.") While not an NIED case, *Collins* exemplifies the general principle that testimony from multiple witnesses is sufficient to uphold a non-economic damages verdict. *Id.* Similarly here, multiple witnesses testified that J.L. faced immense emotional distress and that such distress led J.L. to injure himself and others.

Washington courts also recognize substantial evidence can be found even based on one compelling witness, especially if a plaintiff is "predisposed to emotional harm." *Cox v. Dep't of Social and Health Servs.*, 26 Wn. App. 2d 1022, 2023 WL 2983116 (Apr. 18, 2023). J.L.'s age, disability, and inability to communicate predisposed him to emotional harm. J.L. was vulnerable and needed special care. DCYF failed to deliver such care.

### D. The Jury Properly Considered J.L.'s Non-Economic Damages.

The jury received multiple detailed instructions prior to reaching the verdict. Instruction 17 twice instructed the jury that noneconomic damages are governed by the jury's judgment, the evidence, and the jury instructions:

PLAINTIFF J.L.'S SUPPLEMENTAL BRIEF
PURSUANT TO COURT ORDER, DOCKET NO.
500 - 9
CASE NO. 2:16-cv-01877-JLR

BALLARD SPAHR LLP
RUSSELL INVESTMENTS CENTER
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

> *The law has not provided us with any fixed standard by which to measure noneconomic damages, and you must be governed by your own judgment, by the evidence in the case, and by these instructions in making this determination.*

Dkt. 455 at 20–21.

Ninth Circuit precedent also recognizes that it is the jury's duty to determine non-economic damages: "It is the function of the jury, not of this court, to weigh conflicting evidence and judge the credibility of witnesses." *Camarena v. SAMP/USA Inc.*, 129 F. App'x 353, 354 (9th Cir. 2005).

The jury must use their personal judgment and consider the evidence to award non-economic damages. Here, the jury weighed *all* the evidence. The jury, not the Court, is the proper body to weigh the evidence and decide a fair verdict. *Id*. The verdict was properly reached under the instructions the Court provided the jury.

### E.  The Jury's Award Is Consistent with Other Non-Economic Damages Awards.

Juries both in the Western District of Washington and in Washington state court frequently award plaintiffs non-economic damages consistent with or in excess of J.L.'s $3 million award:

- *Keen v. Josephine Caring Cmty. Inc.*, 2022 WL 18461959 (Wash. Super. Ct.) – The jury awarded the plaintiff $3 million in non-economic damages related to a slip and fall in her workplace.

- *Wilson v. Ceva Logistics U.S. Inc., et al.*, 2025 WL 1297762 (Wash. Super. Ct.) – The jury awarded the plaintiff $5 million in non-economic damages related to a workplace accident wherein the plaintiff fell out of a trailer.

- *Gibson v. Collins Chiropractic PC, et al.*, 2024 WL 2246472 (Wash. Super. Ct.) – The jury awarded the plaintiff $1.49 million in past non-economic damages and $6.66 million in future non-economic damages after the defendant failed to recognize she had suffered a cerebral stroke and continued to treat her with chiropractic care for two months.

While these cases all have damages verdicts in amounts equal to or greater than the verdict in this case, they have a few key differences that further highlight why J.L.'s non-economic damages award falls within an appropriate range. First, none of the plaintiffs in the above-cited cases were minors or disabled. In contrast, J.L. was three years old and autistic. Second, the underlying negligence committed by the defendants in the above-cited cases ranged from one

PLAINTIFF J.L.'S SUPPLEMENTAL BRIEF
PURSUANT TO COURT ORDER, DOCKET NO.
**500** - 10
CASE NO. 2:16-cv-01877-JLR

BALLARD SPAHR LLP
RUSSELL INVESTMENTS CENTER
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

1  instant to, at most, two months. In contrast, DCYF's negligent conduct lasted at best four months, and at worst ten months.

Additionally, jury awards and settlements in similar cases throughout the country result in similar monetary awards. For example, in *Huff, et al. v. Indiana Dep't of Child Servs., et al.*, Case No. 20-cv-2435-JRS-MJD (S.D. Ind.), minor children were removed from their home for four months. The parties settled for $1.375 million.[3] J.L. was removed from his home for more than double that amount of time, something the jury's award in this case properly reflects.

The jury, independent of the above range of similar verdicts, awarded J.L. an award in line with other verdicts in this state and across the country. The award is reasonable based on the facts of this case, the evidence in the record, and applicable legal precedent.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff J.L. urges the Court to uphold the jury's $3 million verdict on his NIED claim.

DATED: August 20, 2025

BALLARD SPAHR LLP

By:  *s/ Hari Kumar*
Hari Kumar, WSBA No. 53597
Angela Chen, WSBA No. 61683
Dailey Koga, WSBA No. 58683
Kenneth Davis, WSBA No. 21928
Ballard Spahr LLP
1301 Second Avenue, Suite 2800
Seattle, Washington 98101
Telephone: 206.223.7000
kumarh@ballardspahr.com
chenak@ballardspahr.com
kogad@ballardspahr.com
daviskr@ballardspahr.com

---

[3] Massillamany Jeter & Carson, *DCS settles for $1.375M with couple who claimed children were wrongfully removed from home*, https://www.mjcattorneys.com/media/2023/february/dcs-settles-for-1-375m-with-couple-who-claimed-c/ (Feb. 7, 2023).

PLAINTIFF J.L.'S SUPPLEMENTAL BRIEF PURSUANT TO COURT ORDER, DOCKET NO. 500 - 11
CASE NO. 2:16-cv-01877-JLR

BALLARD SPAHR LLP
RUSSELL INVESTMENTS CENTER
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

| | |
|---|---|
| 1 | |
| 2 | OLIVAREZ MADRUGA LAW ORGANIZATION LLP |
| 3 | By: *s/ Lisa Elliott* |
| 4 | Lisa M. Elliot, WSBA No. 41803 |
| | 11120 NE 2nd Street, Suite 100 |
| 5 | Bellevue, WA 98004 |
| | Telephone: 253.514.7866 |
| 6 | lmarieroybal@gmail.com |
| 7 | *Attorneys for Plaintiff J.L.* |

**PLAINTIFF J.L.'S SUPPLEMENTAL BRIEF PURSUANT TO COURT ORDER, DOCKET NO. 500** - 12
CASE NO. 2:16-cv-01877-JLR

**BALLARD SPAHR LLP**
RUSSELL INVESTMENTS CENTER
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107